**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:

SSA BONDS ANTITRUST LITIGATION

1:16-cv-03711-ER

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENTS WITH BANK OF AMERICA AND DEUTSCHE BANK**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

CURRENT SUMMARY OF THE ACTION ....................................................................... 2

SUMMARY OF THE SETTLEMENTS ............................................................................. 4

REQUESTED PROCEDURES AND TIMETABLE .......................................................... 7

ARGUMENT ....................................................................................................................... 8

I.     THE SETTLEMENTS MEET THE STANDARD FOR PRELIMINARY
APPROVAL ............................................................................................................... 8

    A.    The Settlements Are Procedurally Fair .......................................................... 9

    B.    The Settlements Are Substantively Fair ......................................................... 10

        1.    Complexity, Expense, and Likely Duration of the Litigation .................. 11

        2.    Reaction of the Class to the Settlements .................................................. 11

        3.    Stage of the Proceedings .......................................................................... 11

        4.    Risks of Establishing Liability and Damages ........................................... 13

        5.    Risks of Maintaining a Class Action Through Trial ................................. 15

        6.    Ability of the Settling Defendants to Withstand a Greater
Judgment ................................................................................................... 15

        7.    Reasonableness of the Settlements in Light of the Best Possible
Recovery and Attendant Litigation Risks ................................................ 16

II.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ........................ 18

    A.    The Requirements of Rule 23(a) Are Satisfied .............................................. 18

        1.    Numerosity ................................................................................................ 19

        2.    Common Questions of Law or Fact ......................................................... 19

        3.    Typicality .................................................................................................. 19

        4.    Adequacy .................................................................................................. 20

    B.    The Requirements of Rule 23(b)(3) Are Satisfied ......................................... 21

III.   RELATED RELIEF ................................................................................................... 22

CONCLUSION .................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

## CASES

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987) ........................ 8, 16

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ................................................................. 20

*Allen v. Dairy Farmers of Am., Inc.*,
   2011 WL 1706778 (D. Vt. May 4, 2011) ........................................................................ 8

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012) ......................................................................................... 18

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) .................................................................................................... 21

*In re AOL Time Warner, Inc.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .............................................................. 12, 17

*In re Austrian and German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................................................................ 9

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................................. 12

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ........................................................................................ 11

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) .......................................................................................... 19

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007) .......................................................................................... 19

*In re Corrugated Container Antitrust Litig.*,
   1981 WL 2093 (S.D. Tex. June 4, 1981), *aff'd*, 659 F.2d 1322 (5th Cir. 1981) ............. 18

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) ....................................................................................... 13

*In re Currency Conversion Fee Antitrust Litig.*,
   2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) .................................................................. 8

*In re Currency Conversion Fee Antitrust Litig.*,
   224 F.R.D. 555 (S.D.N.Y. 2004) ................................................................................. 22

*In re Currency Conversion Fee Antitrust Litig.*,
    264 F.R.D. 100 (S.D.N.Y. 2010) ................................................................ 20

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ......................................................................... 9

*Dial Corp. v. News Corp.*,
    2015 WL 4104624 (S.D.N.Y. June 18, 2015) ........................................... 22

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009) ......................................................................... 20

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) .............................................................. 16

*In re Global Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................... 13

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ......................................................................... 11

*In re High-Tech Employee Antitrust Litig.*,
    2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) ........................................... 14

*Karvaly v. eBay, Inc.*,
    245 F.R.D. 71 (E.D.N.Y. 2007) ................................................................. 11

*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003) ........................................................ 14

*Menkes v. Stolt-Nielsen S.A.*,
    270 F.R.D. 80 (D. Conn. 2010) .................................................................. 10

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) ......................................................... 11

*In re Michael Milken and Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ................................................................. 10

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ....................................................... 9

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ...................................................... 8, 14, 15

*In re Nat. Gas Commodities Litig.*,
    231 F.R.D. 171 (S.D.N.Y. 2005) ............................................................... 22

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ....................................................................... 16

*In re Nissan Radiator/Transmission Cooler Litig.*,
    2013 WL 4080946 (S.D.N.Y. May 30, 2013) ........................................... 12

*In re Packaged Ice Antitrust Litig.*,
    2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ............................................................ 12

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................ 10, 17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    986 F. Supp. 2d 207 (E.D.N.Y. 2013) ........................................................ 14

*In re Platinum and Palladium Commodities Litig.*,
    2014 WL 3500655 (S.D.N.Y. July 15, 2014) ................................................ 9

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    584 F. Supp. 2d 697 (M.D. Pa. 2008) ........................................................ 16

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) ................................................................ 11

*Richburg v. Palisades Collection LLC*,
    247 F.R.D. 457 (E.D. Pa. 2008) ................................................................ 19

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015) ..................................................................... 21

*In re Sinus Buster Products Consumer Litig.*,
    2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ............................................ 12

*In re Stock Exchanges Options Trading Antitrust Litig.*,
    2005 WL 1635158 (S.D.N.Y. July 8, 2005) ................................................ 8

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ..................................................................... 22

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274, 284 (S.D.N.Y. 1999) ........................................................ 22

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
    283 F.R.D. 199 (S.D.N.Y. 2012) .............................................................. 20

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
    257 F.3d 256 (2d Cir. 2001) ..................................................................... 11

*In re Vitamin C Antitrust Litig.*,
    2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ............................................ 11

*Wallace v. IntraLinks*,
    302 F.R.D. 310 (S.D.N.Y. 2014) .............................................................. 19

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ............................................................................ 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ........................................................................ 9

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) ................................................................. 15

*Weber v. Gov't Emps. Ins. Co.*,
  262 F.R.D. 431 (D.N.J. 2009) ......................................................................... 16

*Yim v. Carey Limousine NY, Inc.*,
  2016 WL 1389598 (E.D.N.Y. Apr. 7, 2016) ................................................... 17

## RULES AND REGULATIONS

Fed. R. Civ. P. 23(a) ............................................................................. 18, 21, 22

Fed. R. Civ. P. 23(b) ............................................................................ 18, 21, 22

Fed. R. Civ. P. 23(e) ........................................................................................ 8

Fed. R. Civ. P. 23(g) ...................................................................................... 21

## PRELIMINARY STATEMENT

Plaintiffs have negotiated and executed settlement agreements with Bank of America Corporation, Bank of America, N.A., Merrill Lynch International, Bank of America Merrill Lynch International Limited, and Merrill Lynch, Pierce, Fenner & Smith Incorporated (collectively, "Bank of America") and Deutsche Bank AG and Deutsche Bank Securities Inc. (collectively, "Deutsche Bank"). These settlements provide for the payment of a total of $65,500,000 in monetary compensation for the benefit of members of the proposed class of investors in sub-sovereign, supranational, and agency ("SSA") bonds in this matter.

Just as importantly, Bank of America and Deutsche Bank have also agreed to provide substantial and meaningful cooperation to the class. Among other things, they have agreed to provide substantial evidence to Interim Co-Lead Counsel, including hundreds of electronic "chats" among the alleged conspirators, which Plaintiffs believe they can use against the remaining Defendants both at the pleading stage and later in the case. Cooperation evidence, initially from Bank of America, has already played a central role in Plaintiffs' ability to file a Consolidated Complaint on April 11, 2017, which Plaintiffs contend contains substantial evidence supporting their claims.

For the reasons set forth below, Interim Co-Lead Counsel and Plaintiffs believe that the Settlement Agreements with Bank of America and Deutsche Bank are well within the range of fairness, adequacy, and reasonableness warranting preliminary approval. Plaintiffs therefore respectfully request the Court to enter the Preliminary Approval Orders for Bank of America and Deutsche Bank, filed as Exhibit A to their respective Settlement Agreements. *See* Brockett Decl. Ex. 1 & Ex. 2.

1

## CURRENT SUMMARY OF THE ACTION

The first complaints in this action were filed in May 2016.  Dkt. No. 1, at 1.  By stipulation dated August 19, 2016, so ordered by the Court on August 22, 2016 (Dkt. No. 36), nine related individual actions alleging a conspiracy to manipulate the prices of SSA bonds were consolidated under this docket and captioned as "In re SSA Bonds Antitrust Litigation."  After entry of the Stipulation and Consolidation Order, five related actions were filed and thereafter consolidated with the nine prior actions as Subsequent Actions under paragraph 3 of the Stipulation and Consolidation Order (for a total of fourteen filed actions).  Dkt. Nos. 52, 69, 76, 87, 106 (cases consolidated with lead action).  The Court appointed the undersigned firms as Interim Co-Lead Counsel on December 22, 2016.  Dkt. No. 88, at 1.

After the actions were consolidated, Plaintiffs approached certain Defendants seeking to secure both monetary compensation and, just as importantly, cooperation obligations that would strengthen future complaints by including what Plaintiffs contend is specific evidence of Defendants' wrongdoing.  Plaintiffs reached precisely that type of settlement agreement with Bank of America in early March.  Bank of America agreed to pay $17,000,000 to resolve the class's claims and, in addition, quickly provided Plaintiffs a substantial collection of useful evidence, including hundreds of electronic chats that Plaintiffs believe reflect collusion among the Defendants during the relevant period.

Shortly thereafter, Deutsche Bank approached Plaintiffs seeking a settlement, also indicating that it was in a position to provide useful evidence.  After due diligence about the size of Deutsche Bank's participation in the U.S. dollar-denominated SSA bonds market, Plaintiffs reached an agreement in principle to settle with Deutsche Bank for $48,500,000 and going-forward cooperation in the form of helpful evidence.

The cooperation evidence provided to Plaintiffs contributed greatly to the weight of the allegations in the Consolidated Class Action Complaint on April 11, 2017 (Dkt. No. 130) ("Consolidated Complaint" or "CC").  There, Plaintiffs allege that Defendants colluded to manipulate the market for U.S. dollar-denominated SSA bonds.  CC ¶ 1.  Defendants are traders and banks that work as "market makers" in the market for U.S. dollar-denominated SSA bonds.  CC ¶¶ 3-6.  SSA bonds are bonds issued by certain large, multilateral institutions that often have global economic mandates (supranational bond issuers), sovereign and sub-sovereign government entities (sovereign bond issuers), as well as subdivisions of sovereign states and certain institutions that perform tasks on behalf of a governing sovereign ("agency bond issuers").  CC ¶¶ 66-68.

Plaintiffs allege that Defendants colluded and often secretly functioned as a unitary "super-desk" that greatly diminished overall competition in the market and enabled the conspirators to exert influence over the SSA bond market that would be impossible if they had been acting independently.  CC ¶ 1.  Defendants allegedly undermined competition by engaging in numerous anticompetitive activities, including (a) fixing bond prices offered to investors; (b) strategically coordinating bids to avoid competing with one another; and (c) colluding to share sensitive competitive information with each other.  CC ¶¶ 107-69.  The Consolidated Complaint alleges that this conspiracy was documented in "hundreds" of electronic chat transcripts covering over 300 trading days during the Class Period (January 1, 2005 to August 31, 2015).  CC ¶¶ 2, 196.  Based on this conduct, Plaintiffs bring federal antitrust claims and state law claims against defendant for unjust enrichment.  CC ¶¶ 205-15.

Since Plaintiffs entered into settlement negotiations with Bank of America and Deutsche Bank, the Non-Settling Defendants have filed motions to dismiss and supporting memoranda and

declarations.  *See* Dkt. Nos. 225-266.  A pre-motion conference is set for August 18, 2017.  Dkt. No. 276.  The cooperation secured by the settlements will be useful in responding to the arguments made by the Non-Settling Defendants as well.

<u>**SUMMARY OF THE SETTLEMENTS**</u>

The key terms of the Settlement Agreements are substantially identical, allowing for an omnibus motion for preliminary approval of the two Settlements and a single notice to the Settlement Class.  As discussed below, the agreements differ in the settlement amount and in the level of future cooperation but otherwise are identical in substance.

**Settlement Amount.**  The Settlement Agreements provide for Bank of America to pay $17,000,000 and Deutsche Bank to pay $48,500,000 as settlement compensation to members of the proposed class.  As explained above, Bank of America settled first, provided a substantial number of cooperation materials early on, and presented the opportunity to transform the data-driven initial complaint into a consolidated complaint filled with what Plaintiffs believe is "smoking gun" evidence of collusion.  Deutsche Bank has provided some cooperation to date, with the additional materials to be produced now that the settlement has been executed.

**Cooperation.**  The cooperation provisions for the two agreements are facially different, but not materially.  Under these provisions, Bank of America agrees, generally, to provide "contemporaneous transactional records and electronic communications" that were "produced to any government enforcement authority in connection with an investigation of the SSA bonds market as of the date of production."  Bank of America Stip. ¶ 13.1.  Deutsche Bank agrees to produce "(i) transaction data, and (ii) communications, chats and other documents, maintained by the Settling Defendant involving or concerning the Released Claims from the Settlement

Class Period," as well as materials produced to regulatory or enforcement agencies and bodies. Deutsche Bank Stip. ¶ 13.4(a)-(b).

Bank of America has already provided some chat transcripts, and will be producing additional documents at the start of discovery (Bank of America Stip. ¶ 13.1), while Deutsche Bank will begin producing documents and engaging in further cooperation as soon as practicable now that the settlement has been executed.  Deutsche Bank Stip. ¶ 13.4.  In addition, Deutsche Bank has agreed to make available for witness interviews (and trial testimony) up to five current and former employees, to the extent those employees are within Deutsche Bank's custody and control.  Deutsche Bank Stip. ¶ 13.4(d)(3).

**Settlement Class Definition.**  The Settlement Class is defined as follows, in both agreements:

> All persons or entities who, from January 1, 2005 to the date of the Preliminary Approval Order, entered into an SSA bond transaction with a Defendant; a direct or indirect parent, subsidiary, affiliate, or division of a Defendant; a Released Party; or an alleged co-conspirator, where such Persons were either domiciled in the United States or its territories or, if domiciled outside of the United States or its territories, entered into an SSA bond transaction in the United States or its territories or that otherwise involved United States trade or commerce. Excluded from the Settlement Class are Defendants, their co-conspirators identified herein, and their officers, directors, management, employees, current subsidiaries or affiliates, and all federal governmental entities; provided, however, that Investment Vehicles shall not be excluded from the definition of the Settlement Class.

*See* Bank of America Stip ¶ 5.1; Deutsche Bank Stip. ¶ 5.1.

The Settlement Class comprises a slightly longer class period than that listed in the Consolidated Complaint, ending on the date of the Preliminary Approval Order rather than on August 31, 2015.  *See* CC ¶ 196.  The Settlement Class also states that "Investment Vehicles shall not be excluded from the definition of the Settlement Class," a clause that is not in the Consolidated Complaint's class definition, but which serves mainly to clarify—rather than to

limit—the scope of the Settlement Class. *Compare* Bank of America Stip ¶ 5.1 and Deutsche

Bank Stip. ¶ 5.1 *with* CC ¶ 196.

      **Released Class Claims.**  In consideration for the benefits of the Settlement described

above, Plaintiffs and members of the Settlement Class that do not exclude themselves, as well as

Releasing Parties, will give up their rights to sue Bank of America and/or Deutsche Bank, as well

as Released Bank of America and/or Deutsche Bank Parties, for Released Class Claims.  Bank of

America Stip. ¶¶ 1.28, 1.29, 1.35; Deutsche Bank Stip. ¶¶ 1.28, 1.29, 1.35.  The Settlement

Agreements each provide for a release of claims "that arise from or relate to the factual predicate

of the Action or any amended complaint or pleading therein."  Bank of America Stip. ¶ 1.28;

Deutsche Bank Stip. ¶ 1.28.

      **Termination Provisions.**  If the persons or entities who have filed requests for exclusion

reach a number that represents a "material portion" of the transactions that would be eligible for

compensation under a Settlement Agreement, as determined by a jointly-selected Mediator, then

each Settling Defendant has the option either to seek a reduction remedy or terminate the

Settlement Agreement.  The Mediator will have sole discretion to determine what remedy is

appropriate.  In the event the Mediator determines that some reduction is appropriate, the amount

of the reduction will be paid back to the Settling Defendant; provided, however, that the

Mediator may not reduce the Settlement Amount by more than what the persons who have filed

requests for exclusion likely would have been eligible to receive collectively (but for their

exclusion) from the Settlement Fund (assuming all putative class members submitted claims).

Bank of America Stip. ¶ 10.2; Deutsche Bank Stip. ¶ 10.2.

      **Attorneys' Fees, Expenses, and Service Awards.**  The Settlement Agreements reserve

Plaintiffs' right to request interim attorneys' fees, reimbursement of expenses or charges in

connection with prosecuting the Action, and/or class representative service awards.  Bank of America Stip. ¶¶ 7.1-7.3; Deutsche Bank Stip. ¶¶ 7.1-7.3.  The Settlement Class would be given notice of any such application or applications, which also would be subject to Court approval.

## REQUESTED PROCEDURES AND TIMETABLE

Because of the willingness of these Defendants to settle at an early point in the litigation, Plaintiffs believe it is possible that other Defendants may seek to settle with the class in the coming months.  For this reason, and because of the nature of antitrust conspiracy class claims (where liability rests jointly on multiple Defendants for conduct that damages many), Plaintiffs submit that it is in the interests of the class and judicial economy to issue one notice with as many settling Defendants as possible.  As such, rather than submit a notice plan that will need to be amended (or require an additional, but substantially similar second notice of any subsequent settlement), Plaintiffs are not presently seeking approval of the form of the notice to be issued and will file the appropriate motion at a later date.  If and when the Court approved the Notice Motion, which would include a Plan of Distribution, notice would go out to the Settlement Class.

Currently, Plaintiffs are also seeking and the Settling Defendants are preparing to produce data and Counterparty Lists which could be used to notify class members and to help develop a plan for distributing settlement proceeds to qualified claimants.  *See* Bank of America Stip. ¶ 8.6; Deutsche Bank Stip. ¶ 8.6.  After Plaintiffs receive and analyze this information, and depending on whether or not Plaintiffs are engaged in settlement discussions with additional Defendants, Plaintiffs may seek approval of the Court at that time to send out notice.  In any event, Plaintiffs will provide the Court an update on the anticipated timing of issuing notice to the Class no later than 180 days from entry of an order granting this motion, if granted.  Similar

two-step preliminary approval processes have been adopted in several recent class action

settlements.[1]

## ARGUMENT

## I.    THE SETTLEMENTS MEET THE STANDARD FOR PRELIMINARY APPROVAL

"Rule 23(e) requires court approval of a class action settlement."  *In re Currency

Conversion Fee Antitrust Litig.*, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006).  "In

determining whether to grant preliminary approval, the court starts with the proposition that

'there is an overriding public interest in settling and quieting litigation, and this is particularly

true in class actions." *Allen v. Dairy Farmers of Am., Inc.*, 2011 WL 1706778, at *2 (D. Vt. May

4, 2011); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005)

("The compromise of complex litigation is encouraged by the courts and favored by public

policy.").

"Preliminary approval is generally the first step in a two-step process before a class-

action settlement is approved."  *In re Stock Exchanges Options Trading Antitrust Litig.*, 2005

WL 1635158, at *4 (S.D.N.Y. July 8, 2005).  "In considering preliminary approval, courts make

a preliminary evaluation of the fairness of the settlement, prior to notice."  *In re Nasdaq Mkt.-

Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Nasdaq II").  "The second step is

---

[1]   *See, e.g., Alaska Electrical Pension Fund v. Bank of America Corp. et al*, No. 14-cv-7126, Dkt. No. 228
¶¶ 8-10 (preliminary approval of $324 million in settlements and ordering notice plan and plan of distribution to be
submitted for approval at a later time); *In re Commodity Exchange, Inc. Gold Futures and Options Trading Litig.*,
No. 14-md-2548, Dkt. No. 187 ¶¶ 9-11 (preliminary approval of $60 million in settlements and ordering notice plan
and plan of distribution to be submitted for approval at a later time); *In re Foreign Exchange Benchmark Rates
Antitrust Litig.*, No. 13-cv-7789, Dkt. No. 536 ¶¶ 8, 9 (S.D.N.Y.  Dec. 15, 2015) (preliminary approval of $2 billion
settlements and ordering notice plan and plan of distribution to be submitted for approval at a later time); *Precision
Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, 2013 WL 4525323, at *6 (E.D.N.Y. Aug. 27, 2013)
(separate orders granting preliminary approval of $112 million settlements and approving a notice program); *see
also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 480 (S.D.N.Y. 1998) (noting that "it is
appropriate, and often prudent, in massive class actions" to defer consideration of the plan of distribution); *In re
"Agent Orange" Prod. Liab. Litig.*, MDL No. 381, 818 F.2d 145, 170 (2d Cir. 1987) (approving procedure where
plan of distribution followed final approval and stating that "[t]he formulation of the plan in a case such as this is a
difficult, time-consuming process").

to give notice to class members and to hold a hearing to determine whether final approval of the settlement should be given." *Stock Exchanges*, 2005 WL 1635158, at *5. In conducting a preliminary approval inquiry, a court considers both the "'negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness.'" *In re Platinum and Palladium Commodities Litig.*, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014).

Preliminary approval is appropriate where a settlement "is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . and where the settlement appears to fall within the range of possible approval." *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010).

### A.      The Settlements Are Procedurally Fair

"To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012). Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

Here, the Settlement Agreements are the product of arm's-length settlement negotiations that took place over the course of many months among experienced counsel. Discussions began in February and March 2017 and consisted of a series of face-to-face meetings and phone calls. The negotiations with each Settling Defendant were hard-fought, contentious, and always at arm's-length.

Interim Co-Lead Counsel believe Plaintiffs' claims have substantial merit, but acknowledge the expense and uncertainty of continued litigation against the Settling Defendants.

In recommending that the Court approve the Settlements, Interim Co-Lead Counsel have taken into account the uncertain outcome and risks of further litigation and believe the Settlements confer significant benefits on the Settlement Class in light of the circumstances here. Importantly, the settlements should also be viewed in the light of the risks as they appeared at the time the settlements were entered into.  As noted above, Plaintiffs faced potential risks at the pleading stage if they were forced to respond to a series of motions to dismiss without the benefit of what Plaintiffs believe to be the concrete evidence of wrongdoing provided by the cooperation materials.

Based on these considerations, there is "a strong initial presumption that the compromise is fair and reasonable."  *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("great weight" given to advice of experienced counsel).

### B.     The Settlements Are Substantively Fair

"In terms of the overall fairness, adequacy, and reasonableness of the settlement, a full fairness analysis is unnecessary at this stage; preliminary approval is appropriate where a proposed settlement is merely within the range of possible approval."  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006); *see also Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007) ("In the context of a motion for preliminary approval of a class action settlement, the standards are not so stringent as those applied when the parties seek final approval.").  Nevertheless, some courts have analyzed the *Grinnell* factors in assessing whether a proposed settlement falls within the range of possible approval.  *See, e.g.*, *Reade-Alvarez*, 237 F.R.D. at 34.  The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of

establishing damages, (6) the risks of maintaining the class action through the
trial, (7) the ability of the defendants to withstand a greater judgment, (8) the
range of reasonableness of the settlement fund in light of the best possible
recovery, and (9) the range of reasonableness of the settlement fund to a possible
recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds*

by *Goldberger v. Integrated Res., Inc*., 209 F.3d 43 (2d Cir. 2000).  Each of the *Grinnell* factors

supports preliminary approval of the Settlements.

### 1.        Complexity, Expense, and Likely Duration of the Litigation

"Antitrust class actions 'are notoriously complex, protracted, and bitterly fought."

*Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015); *see also Virgin Atl.*

*Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual

complexities of antitrust cases"); *In re Vitamin C Antitrust Litig*., 2012 WL 5289514, at *4

(E.D.N.Y. Oct. 23, 2012) ("[F]ederal antitrust cases are complicated, lengthy . . . bitterly fought,

as well as costly.").

This case is especially complex given the global nature and size of the SSA bond market.

CC ¶¶ 66-73.  As noted above, the cooperation materials secured by the settlements have been

crucial to allowing Plaintiffs to penetrate the complexity of the market and to identify what the

Plaintiffs contend are the precise ways in which Defendants allegedly conspired.  This factor

weighs in favor of preliminary approval.

### 2.        Reaction of the Class to the Settlements

In the event objections are received after notice is disseminated, Interim Co-Lead

Counsel will address them in connection with the motion for final approval.

### 3.        Stage of the Proceedings

"[C]ourts encourage early settlement of class actions, when warranted, because early

settlement allows class members to recover without unnecessary delay and allows the judicial

system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013). The relevant inquiry for this factor, therefore, is "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc*., 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *In re Global Crossing Sec. and ERISA Litig*., 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("[T]he question is whether the parties had adequate information about their claims.").

This factor does not require extensive discovery, or indeed any discovery at all, "as long as '[class counsel] have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the settlement.'" *AOL Time Warner*, 2006 WL 903236, at *10.[2] If extensive discovery was required for settlement approval, class action plaintiffs would be deprived of securing an "ice breaker" settlement, which is often used in multi-party cases, as it was here, to "'break the ice' and bring other defendants to the point of serious negotiations." *In re Linerboard Antitrust Litig*., 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *see also In re High-Tech Employee Antitrust Litig*., 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (stating that ice breaker settlements apply pressure on the non-settling defendants because they "remain jointly and severally liable for all damages caused by the conspiracy, including damages from [settling defendant's] conduct").

---

[2] *See also In re Nissan Radiator/Transmission Cooler Litig*., 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (stating that "[a]lthough the parties have not engaged in extensive discovery, . . . the plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement"); *In re Sinus Buster Products Consumer Litig*., 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014) (finding that the litigants had "conducted meaningful pre-trial discovery," which included "an 'extensive' investigation" prior to filing the consolidated class complaint); *In re Packaged Ice Antitrust Litig*., 2010 WL 3070161, at *6 (E.D. Mich. Aug. 2, 2010) (stating that "'[t]he overriding theme of our caselaw is that formal discovery is not necessary'" so long as the class is not prejudiced and there is a factual basis for the settlement); *In re Corrugated Container Antitrust Litig*., 643 F.2d 195, 211 (5th Cir. 1981) (stating that "formal discovery was [not] a necessary ticket to the bargaining table").

As discussed above, the Bank of America settlement was not just a "break the ice" strategic settlement, but also one that secured valuable assistance at the pleading stage, providing the class with evidence that developed the nature of the conspiracy alleged in the Consolidated Complaint.

Interim Co-Lead Counsel also conducted an extensive pre-suit investigation and engaged in extensive preparation for settlement negotiations, briefing, and trial strategizing to inform their views on the strength of Plaintiffs' claims and the defenses to liability.  Interim Co-Lead Counsel retained several economists and industry experts who performed analyses of trading patterns and SSA bond market submissions, as well as obtained other evidence that could be used to advance Plaintiffs' claims.  The expert analysis has also informed Interim Co-Lead Counsel's views on how the SSA bonds could be manipulated and what transactions may have been affected.  In connection with settlement negotiations, Interim Co-Lead Counsel also engaged experts to conduct damages analyses for the purpose of assessing Deutsche Bank's potential exposure in addition to analyzing market share and transaction volume evidence proffered by the Settling Defendants.

As to defenses, the Non-Settling Defendants have raised multiple defenses to liability in their motions to dismiss, filed on July 14, 2017.  Had the Settling Defendants not settled and the litigation proceeded against them, Plaintiffs were likely to face these arguments and likely much, much more given Plaintiffs would have been forced to prove a years-long conspiracy without the benefit of the cooperation evidence.  Accordingly, Interim Co-Lead Counsel's well-informed views of the strength of claims and likely defenses weigh in favor of preliminary approval.

### 4.    Risks of Establishing Liability and Damages

In assessing this factor, "the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation."

13

*Payment Card*, 986 F. Supp. 2d at 224 (emphasis in original).  Because Plaintiffs continue to litigate against the Non-Settling Defendants, Interim Co-Lead Counsel must be circumspect in discussing potential risks in establishing liability, damages, and maintaining a class action through trial, but provide the following analysis for settlement purposes only.

Again, in the absence of the settlements with Bank of America, which provided valuable cooperation, and Deutsche Bank, which has provided additional information, Plaintiffs would likely have been forced to file a consolidated complaint that did not contain "smoking gun" evidence like what is included in the Consolidated Complaint.  As noted above, the Non-Settling Defendants filed a motion to dismiss on July 14, 2017, arguing, among other things, that the Consolidated Complaint: (i) failed to plausibly allege a violation of Section 1 of the Sherman Act; (ii) failed to adequately allege injury-in-fact and damages as to all claims; (iii) failed to adequately plead their unjust enrichment claims; (iv) failed to adequately plead their pre-July 2009 allegations; and (v) failed to allege facts sufficient to warrant the exercise of personal jurisdiction and venue over the defendants.  Dkt. Nos. 225-66.

Although, in Interim Co-Lead Counsel's view, the Court should properly reject those arguments, had the Settling Defendants not agreed to settle, they were prepared to vigorously contest liability and damages on these grounds *in addition to* likely additional arguments about how econometric evidence did not alone persuasively show that the pricing behaviors seen in the data were the result of collusion.  In other words, the settlements gave Plaintiffs evidence that they believe took a major defense off the table.

Even if liability were established, at trial, Plaintiffs would face the complexities inherent in proving class damages to a jury in an antitrust case.  There is no doubt that at trial the issue inevitably would involve a "battle of the experts."  *Nasdaq*, 187 F.R.D. at 476.  "In this 'battle of

experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ."  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985).  Thus, there is a substantial risk that a jury might accept one or more of the Settling Defendants' damages arguments and award nothing at all or award less than the $65,500,000 that, if approved, would be available to the Settlement Class under these Settlements.  "Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal."  *Nasdaq*, 187 F.R.D. at 476.  This factor, therefore, weighs in favor of preliminary approval.

### 5.    Risks of Maintaining a Class Action Through Trial

While Plaintiffs believe that the Court will certify a litigation class, the Settling Defendants would have vigorously opposed the motion.  Class certification in this action would likewise raise complex legal and factual issues.  Further, even if the Court were to certify a litigation class, certification can be reviewed and modified at any time.  And, as noted above, it can reasonably be expected that the losing party on class certification would appeal the certification order.  Thus, there is a risk that the action, or particular claims, might not be maintained as a class action through trial.  *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory").  The risks associated with class certification weigh in favor of approving the Settlement Agreements.

### 6.    Ability of the Settling Defendants to Withstand a Greater Judgment

"[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this

fact alone does not undermine the reasonableness of the instant settlement." *Weber v. Gov't Emps. Ins. Co*., 262 F.R.D. 431, 447 (D.N.J. 2009).  Moreover, "the benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment." *In re Pressure Sensitive Labelstock Antitrust Litig*., 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008).  Here, the financial obligations the Settlements impose on the Settling Defendants are substantial, and the benefits to the class in buttressing the complaint at a key point in time are also substantial.  Further, the Settling Defendants have agreed to provide confirmatory discovery, including discovery that will be useful to Plaintiffs in pursuing their case against Non-Settling Defendants.  Therefore, whether or not the Settling Defendants might be able to withstand a greater judgment, that does not undermine the reasonableness of the Settlements here.

### 7.    Reasonableness of the Settlements in Light of the Best Possible Recovery and Attendant Litigation Risks

The range of reasonableness factor weighs the relief provided in the settlement against the strength of the plaintiff's case, including the likelihood of obtaining a recovery at trial. This factor "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  In applying this factor, "[d]ollar amounts [in class action settlement agreements] are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig*., 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987).  At preliminary approval, the range of reasonableness factor is satisfied when, as here, there are no obvious doubts as to the adequacy of the settlement amount. *See, e.g.*, *Yim v. Carey Limousine NY, Inc*., 2016 WL 1389598, at *4 (E.D.N.Y. Apr. 7, 2016)

16

(granting preliminary approval of settlement without submission of "a specific number as [plaintiffs'] best possible recovery, particularly at this stage of preliminary approval, where the level of inquiry is more lenient than at final approval").

Interim Co-Lead Counsel believe that, even aside from the cooperation secured by the settlements, the $65,500,000 aggregate settlement fund is an excellent result for the Settlement Class. *PaineWebber*, 171 F.R.D. at 125 (stating "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation"). Interim Co-Lead Counsel believe that, even if no other settlements are reached or judgments achieved, $65,500,000 will still yield meaningful settlement payments to many class members. If the Court preliminarily approves the Settlements, the funds will be paid into the Escrow Account and will begin earning interest and will be available to distribute to class members earlier than a post-trial recovery. *See AOL Time Warner*, 2006 WL 903236, at *13 (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

Moreover, the settlements increase the chance of large future settlements and judgments against the remaining defendants. As to the antitrust claims, Plaintiffs may recover the entire amount of damages against the Non-Settling Defendants (after an offset post-trebling for the settlement amounts) under joint and several liability. *See In re Corrugated Container Antitrust Litig.*, 1981 WL 2093, at *17 (S.D. Tex. June 4, 1981), *aff'd*, 659 F.2d 1322 (5th Cir. 1981) (noting that partial settlements preserved plaintiffs' ability to seek the entire amount of damages from non-settling defendants weighed in favor of settling approval). And the cooperation materials have enabled Co-Lead Interim Counsel to identify what Plaintiffs contend are

additional co-conspirators, beyond those that Interim Co-Lead Counsel knew about before the cooperation, which will also likely expand the damages pool for the class's benefit.

When evaluating the Settlements, the Court should also consider the value of the Settling Defendants' cooperation. As the first defendant to seek settlement, Bank of America's willingness to provide a large initial tranche of cooperation evidence to Plaintiffs was critical to substantially strengthening Plaintiffs' case prior to filing the Consolidated Complaint. Deutsche Bank has also supplied cooperation evidence. The provision of such assistance (in addition to continuing and future assistance) is a substantial benefit to the Settlement Class and weighs in favor of approval of the Settlement Agreements. *See Precision Assocs.*, 2013 WL 4525323, at *9 (defendant's "cooperation adds considerable value to the Settlement and must be factored into an analysis of the overall reasonableness of the agreement").

## II.       THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

Certification of a settlement class must satisfy the requirements of Rule 23(a), as well as at least one of the provisions of 23(b). *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012). As demonstrated below, the proposed Settlement Class meets these requirements.

### A.       The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) permits an action to be maintained as a class action if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### 1.     Numerosity

In cases like this one involving widely traded instruments, numerosity is readily satisfied. *See Wallace v. IntraLinks*, 302 F.R.D. 310, 315 (S.D.N.Y. 2014) ("common sense assumptions . . . suffice to demonstrate numerosity"); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity presumed if a class has over 40 members).

### 2.     Common Questions of Law or Fact

The commonality requirement is easily met because it is satisfied by a single common question of law or fact.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011); *see also Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc*., 502 F.3d 91, 105 (2d Cir. 2007) ("allegations of the existence of . . . conspiracy are susceptible to common proof").  The nature of antitrust claims brought under Section 1 of the Sherman Act has led courts to routinely, and almost uniformly, find that commonality exists.  *See also Richburg v. Palisades Collection LLC*, 247 F.R.D. 457, 462 (E.D. Pa. 2008) ("'Antitrust, price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy.'").

This case is no different.  Proof of Defendants' alleged conspiracy to manipulate the U.S. dollar-denominated SSA bond market will be the heart of this case at trial and is crucial to the claims of all members of the Settlement Class.  Each member of the Settlement Class has a common interest in proving the existence, scope, effectiveness, and impact of the alleged conspiracy.

### 3.     Typicality

The typicality standard is satisfied when "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the

defendant's liability.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 208 (S.D.N.Y. 2012) (typicality requirement '"not demanding'").

Here, Plaintiffs' claims are typical because they arise from the same events or course of conduct that gives rise to the claims of the Settlement Class, namely, Defendants' alleged participation in an unlawful conspiracy to manipulate U.S. dollar-denominated SSA bond prices. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at *31 (E.D.N.Y. Oct. 15, 2014) ("Because the representative plaintiffs will seek to prove that they were harmed by the same overall course of conduct and in the same way as the remainder of the class, their claims are by all appearances typical of the class."). All members of the Settlement Class, including Plaintiffs, seek redress for the impact that Defendants' manipulation of the U.S. dollar-denominated SSA bonds had on their investments.

Because these are the same elements that both Plaintiffs and the other members of the Settlement Class would have to prove separately if they brought individual actions, the typicality requirement is satisfied.

### 4.    Adequacy

Adequacy is met if the class representatives do not have interests that are antagonistic to those of the class and their chosen counsel is qualified, experienced, and able to conduct the litigation. *See In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111-12 (S.D.N.Y. 2010).

Plaintiffs Iron Workers Pension Plan of Western Pennsylvania, Sheet Metal Workers Pension Plan of Northern California, and KBC Asset Management NV are adequate representatives of the Settlement Class and should be appointed as class representatives for settlement purposes. There are no conflicts between Plaintiffs and members of the Settlement

Class concerning the subject matter of this litigation.  All Plaintiffs purchased SSA bonds affected by Defendants' conduct.  The same is true of the other members of the Settlement Class. Thus, Plaintiffs' interest in proving liability and damages is entirely aligned with that of the Settlement Class.

Interim Co-Lead Counsel appointed by the Court are experienced in class and antitrust litigation and have served in leadership roles in numerous major antitrust and other class actions in courts throughout the United States.  *See* Dkt. No. 88 at 5-6 (discussing Interim Co-Lead Counsel's qualifications).  Interim Co-Lead Counsel have diligently represented the interests of the Settlement Class in this litigation and will continue to do so.  Accordingly, the requirements of Rule 23(a)(4), as well as the requirements of Rule 23(g) relating to the qualifications of Interim Co-Lead Counsel , are satisfied.

## B.       The Requirements of Rule 23(b)(3) Are Satisfied

Once it is determined that the proposed class satisfies Rule 23(a), a class should be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Here, questions of law or fact common to the Settlement Class predominate over any individualized questions, and a class action is manifestly the superior method of adjudicating the controversy.

Predominance exists where the questions that are capable of common proof are "'more substantial than the issues subject only to individualized proof.'"  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015).  Predominance is a "test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).

21

Here, proof of an unlawful agreement will consist of class-wide, common evidence that will "focus on [Defendants'] conduct, not on the actions of putative class members." *Dial Corp. v. News Corp.*, 2015 WL 4104624, at *5 (S.D.N.Y. June 18, 2015). In addition, predominance is demonstrated, as in this case, where the impact of the asserted antitrust violation, as well as the damages arising out of the misconduct, can be shown on a class-wide basis. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 338 (3d Cir. 2011) ("All plaintiffs here claim injury that by reason of defendants' conduct . . . has caused a common and measurable form of economic damage . . . All claims arise out of the same course of defendants' conduct; all share a common nucleus of operative fact, supplying the necessary cohesion."). The predominance element is satisfied in this case.

Finally, as numerous courts have held, a class action is a superior method of adjudicating claims in cases like this one. *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004); *In re Nat. Gas Commodities Litig.*, 231 F.R.D. 171, 185 (S.D.N.Y. 2005); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 279, 284 (S.D.N.Y. 1999). Consequently, courts have consistently certified class actions in such cases.

Accordingly, because the requirements of Rules 23(a) and 23(b)(3) are readily satisfied in this matter, it is appropriate for the Court to certify the Settlement Class for purposes of settlement.

## III.    RELATED RELIEF

Finally, Plaintiffs also seek authority to pay out of the settlement funds up to $500,000 per Settling Defendant in Class Notice and Administration Expenses, Taxes, and Tax Expenses without further approval by the Court. *See* Preliminary Approval Order ¶ 14; Bank of America Stip. ¶ 8.1; Deutsche Bank Stip. ¶ 8.1. If a Settlement Agreement is terminated or otherwise fails to close, the Settling Defendants have no right to seek reimbursement for any expenses actually

incurred or owing for Class Notice and Administration Expenses, Taxes, or Tax Expenses, up to

$500,000.  Bank of America Stip. ¶¶ 8.1-8.2; Deutsche Bank Stip. ¶¶ 8.1-8.2.

## CONCLUSION

On the basis of the foregoing, Plaintiffs respectfully request that the Court grant

Plaintiffs' Motion for Preliminary Approval of Settlement Agreements with Bank of America

and Deutsche Bank, and enter the Bank of America and Deutsche Bank Preliminary Approval

Orders.


Respectfully submitted,

DATED:     New York, New York
                  August 17, 2017

**ROBBINS GELLER RUDMAN  &**
**    DOWD LLP**


By:  /s/ David W. Mitchell_____

David W. Mitchell
Brian O. O'Mara
Carmen A. Medici
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Fax: (619) 231-7423
davidm@rgrdlaw.com
bomara@rgrdlaw.com
cmedici@rgrdlaw.com

Samuel H. Rudman
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  (631) 367-7100
Fax:  (631) 367-1173
srudman@rgrdlaw.com

**QUINN EMANUEL URQUHART &**
**    SULLIVAN, LLP**


By:  /s/ Daniel L. Brockett_____

Daniel L. Brockett
Sascha N. Rand
Steig D. Olson
Thomas J. Lepri
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Fax:  (212) 849-7100
danbrockett@quinnemanuel.com
sascharand@quinnemanuel.com
steigolson@quinnemanuel.com
thomaslepri@quinnemanuel.com

Jeremy D. Andersen
Adam B. Wolfson
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
jeremyandersen@quinnemanuel.com

adamwolfson@quinnemanuel.com

*Interim Co-Lead Class Counsel and Counsel for Plaintiffs Sheet Metal Workers Pension Plan of Northern California and Iron Workers Pension Plan of Western Pennsylvania and the Proposed Class*

**MOTLEY RICE LLC**
Michael M. Buchman
600 Third Avenue, Suite 2101
New York, NY 10016
Telephone: (212) 577-0040
Fax: (212) 577-0054
mbuchman@motleyrice.com

Ann K. Ritter
Christopher F. Moriarty
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:  (843) 216-9000
Fax:  (843) 216-9450
aritter@motleyrice.com
cmoriarty@motleyrice.com

*Counsel for Plaintiff KBC Asset Management NV and Additional Counsel for the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 17, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

   */s/* Daniel L. Brockett           
Daniel L. Brockett
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010-1601
Telephone: 212-849-7000
Facsimile: 212-849-7100
danbrockett@quinnemanuel.com
