UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>SSA BONDS ANTITRUST LITIGATION<br><br>*This Document Relates To All Actions* | Case No.: 16-CV-3711-ER |

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR LEAVE TO FILE
CONSOLIDATED AMENDED CLASS-ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..............................................................................................................................2

LEGAL STANDARD......................................................................................................................3

ARGUMENT ...................................................................................................................................4

I.      AMENDMENT WOULD FACILITATE THE PURPOSE OF RULE 15 ..........................4

II.     THERE IS NO UNDUE DELAY, BAD FAITH, OR DILATORY MOTIVE ...................5

III.    ALLOWING AMENDMENT WOULD NOT UNDULY PREJUDICE
DEFENDANTS—BUT DENYING AMENDMENT WOULD GREATLY
PREJUDICE PLAINTIFFS ................................................................................................6

IV.    THERE HAVE BEEN NO "REPEATED FAILURE[S] TO CURE
DEFICIENCIES," AND THE PROPOSED AMENDMENT IS NOT FUTILE ................8

        A.    The CAC Will Be Fully Tested On Subsequent Motions To Dismiss, So
             The Court Need Not Resolve Defendants' Defenses On This Motion ....................8

        B.    Amendment Is Not Futile As To Plausibility Or Standing ......................................9

        C.    Amendment Is Not Futile As To Personal Jurisdiction Or Venue.........................11

CONCLUSION ..............................................................................................................................13

# TABLE OF AUTHORITIES

**Page**

## Cases

*A.V. by Versace, Inc. v. Gianni Versace S.p.A.*,
   87 F. Supp. 2d 281 (S.D.N.Y. 2000) ......................................................................... 6

*Agerbrink v. Model Serv. LLC*,
   155 F. Supp. 3d 448 (S.D.N.Y. 2016) .................................................................... 6-7

*Allgaier v. Peterson*,
   2015 WL 5459808 (S.D.N.Y. Aug. 13, 2015) ........................................................... 4

*Block v. First Blood Assocs.*,
   988 F.2d 344, 350 (2d Cir. 1993) .............................................................................. 4

*Cummins, Inc. v. New York Life Ins.*,
   2012 WL 3870308 (S.D.N.Y. Sep. 6, 2012) .............................................................. 6

*Foman v. Davis*,
   371 U.S. 178 (1962) .................................................................................................. 4

*In re Commodity Exchange, Inc., Gold Futures and Options Trading Litig.*,
   No. 14-md-2548, Dkt. 258 (S.D.N.Y. June 8, 2017) ................................................. 7

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015) ................................................................................... 3-4

*McGuire v. Warren*,
   490 F. Supp. 2d 331 (S.D.N.Y. 2007) ....................................................................... 5

*Monahan v. N.Y.C. Dep't of Corr.*,
   214 F.3d 275, 284 (2d Cir. 2000) .............................................................................. 6

*Pangburn v. Culbertson*,
   200 F.3d 65 (2d Cir. 1999) ........................................................................................ 9

*Slayton v. Am. Express*,
   460 F.3d 215, 228 (2d Cir. 2006) .............................................................................. 4

*US Airways, Inc. v. Sabre Holdings Corp.*,
   2015 WL 8335119 (S.D.N.Y. Dec. 8, 2015) ........................................................ 4, 6

## Rules

Fed. R. Civ. P. 15(a) ........................................................................................................ 1, 3

Pursuant to Federal Rule of Civil Procedure 15(a) and this Court's order from its August 18, 2017 pre-motion conference, Dkt. 292 ("Hr'g Tr."), Plaintiffs respectfully submit this memorandum of law in support of their motion for leave to file the proposed Consolidated Amended Class Action Complaint ("CAC"). The CAC is attached hereto as Exhibit A to the Declaration of Daniel L. Brockett.

## PRELIMINARY STATEMENT

Until recently, few details were known about Defendants' misconduct. In late 2015 came the first news reports that the U.S. Department of Justice had launched an investigation into possible collusion in the supranational, sovereign, and agency ("SSA") bonds market, focusing on activity by London-based traders. Later reports indicated that investigations had also been opened by the U.K. Financial Conduct Authority and the European Commission. In February 2017, Bloomberg reported these investigations were "escalating," and that U.S. prosecutors had "obtained transcripts of online chat-room conversations indicating possible misconduct." Yet for all this smoke, the finer contours of the conspiracy were still unknown.

The smoke began to clear in March 2017, when Plaintiffs reached a settlement agreement in principle with Defendant Bank of America, pursuant to which Plaintiffs obtained hundreds of "chats" between traders at Bank of America and other Defendants. Plaintiffs analyzed and incorporated as much of the cooperation material as possible into the first Consolidated Complaint, which Plaintiffs filed in early April 2017. *See* Dkt. 123 ("CC"). The CC represented Plaintiffs' effort to plead as many specific facts as possible based on the time and the amount of cooperation material that was then available. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

██ Nonetheless, Defendants argued in their motions to dismiss that Plaintiffs failed to

1

plausibly allege the existence of an antitrust conspiracy, casting the CC as a pleading limited to only 19 "Targeted Bonds," based on chats Defendants spun as innocuous exchanges of "market color." *See, e.g.*, Dkt. 229 at 6, 16.

The CAC lays waste to such arguments. After filing the CC, Plaintiffs entered into a settlement agreement with Deutsche Bank, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Plaintiffs satisfy all of the requirements for amendment. Plaintiffs informed the Court of their intention to seek leave to amend upon reaching a settlement agreement with Deutsche Bank. This motion thus is not unduly delayed, and the CAC would not significantly delay the litigation. The motion is not made in bad faith; rather, it is prompted entirely by new evidence obtained as a result of Plaintiffs' settlement. The CAC is Plaintiffs' first amendment of the consolidated pleadings in this case. Defendants would not be prejudiced by the CAC, as discovery has not yet begun, the CAC adds no new claims, and Defendants are fully aware of the evidence referenced in the CAC. And the proposed amendment is anything but futile. There has been no finding of any deficiency in the CC, and the new evidence pleaded in the CAC bolsters every aspect of the CC's core allegations.

For all the reasons set forth herein, Plaintiffs' motion for leave should be granted.

## BACKGROUND

The first complaints in this action were filed in May 2016. Dkt. 1 at 1. By stipulation that was so-ordered, Dkt. 36, nine related individual actions alleging a conspiracy to manipulate

the prices of SSA bonds were consolidated under this docket and captioned as "In re SSA Bonds Antitrust Litigation." After entry of the Stipulation and Consolidation Order, five related actions were filed and thereafter consolidated as well. Dkt. 52, 69, 76, 87, 106. The Court appointed the undersigned firms as Interim Co-Lead Counsel in December 2016. Dkt. 88 at 1.

In March 2017, Plaintiffs reached a settlement agreement with Bank of America. *See* Dkt. 290 at 8. Pursuant to the settlement, Bank of America ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs analyzed this evidence and incorporated as much of it as possible into the CC, which Plaintiffs filed shortly thereafter, on April 7, 2017.

In July 2017, the non-settling Defendants filed their motions to dismiss the CC. *See* Dkt. 225-66.

In August 2017, after months of negotiation that began well before Defendants' motions were filed, Plaintiffs entered into a second settlement agreement, this time with Deutsche Bank. *See* Dkt. 290 at 1. As part of the settlement agreement, Deutsche Bank agreed to provide significant cooperation. Plaintiffs informed the Court that they intended to seek leave to file an amended complaint that incorporated cooperation materials once received from Deutsche Bank. At the pre-motion conference held that same month, the Court granted Plaintiffs leave to file the instant motion for leave to amend the CC. *See* Aug. 18, 2007 Hr'g Tr. at 27:4-28:14.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend a complaint] when justice so requires." The Second Circuit "hew[s] to the liberal standard set forth in Rule 15." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). In the absence of problems like "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

3

previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment, etc.— the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The burden of showing futility, bad faith, or undue prejudice" as to warrant denial of leave to amend "is on the non-moving party." *Allgaier v. Peterson*, 2015 WL 5459808, at *4 (S.D.N.Y. Aug. 13, 2015) (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).

**ARGUMENT**

**I.    AMENDMENT WOULD FACILITATE THE PURPOSE OF RULE 15**

The "purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Slayton v. Am. Express*, 460 F.3d 215, 228 (2d Cir. 2006); *see also Loreley Fin.*, 797 F.3d at 190 (Rule 15's "permissive standard is consistent with our strong preference for resolving disputes on the merits"). As the Supreme Court has stated, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182; *US Airways, Inc. v. Sabre Holdings Corp.*, 2015 WL 8335119, at *3 (S.D.N.Y. Dec. 8, 2015) (liberal standard for granting leave "is consistent with the 'strong preference for resolving disputes on the merits'").

The overriding purpose of this amendment is so that this case can proceed through the motion to dismiss stage, and then on to the merits, with a complaint reflecting the facts actually now known to the litigants. Plaintiffs now have obtained two settlements, ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ Plaintiffs have diligently analyzed this evidence, and now are in the position to file a 150-page amended pleading that is significantly more robust than the initial CC in every respect. Plaintiffs have the opportunity to put their best complaint forward at a still-early stage

4

of the case. To deny Plaintiffs this opportunity would undermine the fundamental purpose of Rule 15.

Neither the parties nor the Court would be well-served if the Court were to disregard the CAC and instead proceed to analyze Defendants' previously pending motions to dismiss the CC. An adverse ruling on the CC would in all likelihood leave the parties where they are right now: a motion for leave to amend. It is much more efficient to permit Plaintiffs to amend their pleading now, rather than to have the Court decide motions attacking pleadings that have been superseded by post-filing events.

It is also worth noting that the CAC is not just more robust; in some respects, it is more refined. Based on Plaintiffs' further analysis facilitated by the cooperation materials, Plaintiffs have chosen *not* to name in the CAC certain defendant affiliates that were named in the CC.[1] The CAC also removes the unjust enrichment claim. These changes further reinforce the conclusion that amendment should be granted so the pleading stage proceeds most efficiently.

## II.  THERE IS NO UNDUE DELAY, BAD FAITH, OR DILATORY MOTIVE

Defendants cannot hope to show undue delay. Indeed, "mere delay alone, absent a showing of bad faith or prejudice, is not grounds for denial of leave to amend." *McGuire v. Warren*, 490 F. Supp. 2d 331, 337 (S.D.N.Y. 2007). Here, Plaintiffs promptly requested the right to amend upon completion of settlement negotiations with Deutsche Bank. They can hardly be blamed for not reaching a settlement agreement even earlier than they did— particularly as Plaintiffs' negotiations with Deutsche Bank began long before Defendants' motions to dismiss were filed.

---

[1] The following Defendants have been dropped from the proposed CAC: Bank of America Corporation; Credit Suisse Group AG; Crédit Agricole S.A.; HSBC Bank USA, N.A.; HSBC Holdings plc; Nomura Holdings, Inc.; and TD Bank, N.A.

5

For the same reason, there has been no bad faith or dilatory motive. There is no "hidden agenda to delay the proceedings" here. *US Airways*, 2015 WL 8335119, at *4. Plaintiffs have filed this motion because they have received materials that are highly relevant to the case, and Plaintiffs first raised their intention to file this motion when the months-long negotiations with Deutsche Bank concluded. Plaintiffs have not filed this motion with any improper motive, and thus "the leave sought [here] should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182.

### III. ALLOWING AMENDMENT WOULD NOT UNDULY PREJUDICE DEFENDANTS—BUT DENYING AMENDMENT WOULD GREATLY PREJUDICE PLAINTIFFS

In deciding whether undue prejudice exists, "courts evaluate whether the amendment would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)). No such prejudice exists here. No discovery has been taken, no trial date has been set, and Plaintiffs do not seek to add any new claims or allegations unrelated to those set forth in the CC. *See, e.g.*, *Cummins, Inc. v. New York Life Ins.*, 2012 WL 3870308, at *4 (S.D.N.Y. Sept. 6, 2012) (granting leave to amend where "discovery has not commenced and the case is still in the preliminary stages"); *A.V. By Versace, Inc. v. Gianni Versace, S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000). To the contrary, the additional factual allegations presented in the CAC are directly related to pre-existing allegations about Defendants' conspiracy set forth in the CC.

It is true that adding new factual allegations to the same underlying antitrust theory might make it even harder (indeed, in Plaintiffs' view, impossible) for Defendants to prevail on their

6

motions to dismiss. But that is not a valid reason to deny a motion to amend. *See generally id.* at 299 ("prejudice alone is insufficient to justify a denial of leave to amend; rather, the necessary showing is *undue* prejudice"). And while it may be unfortunate the Deutsche Bank settlement was not finalized until after Defendants had submitted their motions to dismiss, the marginal increase in litigation cost that will come from re-briefing is not a basis to deny this motion, either. *See In re Commodity Exchange, Inc., Gold Futures and Options Trading Litig.*, No. 14-md-2548, Dkt. 258 (S.D.N.Y. June 8, 2017) (granting leave to amend to include allegations arising out of pre-discovery cooperation materials because it was "not an instance in which the parties have put a great deal of time and expense into discovery only for plaintiffs to make a last minute radical realignment in their allegations"); *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 101 (S.D.N.Y. 2010) ("Defendants assert that if plaintiffs' proposed amendments are permitted, they will need to make dispositive motions on one or more of Sewer's claims and re-brief the issue of class certification in addition to conducting new discovery. However, the fact that an amendment will require a party to invest additional resources in litigation is not sufficient grounds for its denial.").[2]

On the other hand, if leave to amend were denied, Plaintiffs would be substantially prejudiced. *See Agerbrink*, 155 F. Supp. 3d at 454 ("This 'inquiry [of determining prejudice] involves a balancing process,' weighing any potential prejudice to the opposing party against the prejudice that the moving party would experience if the amendment were denied."). Absent amendment, Plaintiff will be deprived of the opportunity to integrate recently received cooperation materials—a fact that the Court itself recognized at the August 2017 pre-motion

---

[2] *See also United States v. Cont'l Illinois Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989) (reversing denial of motion to amend based on defendant's assertion of "vastly increased discovery" resulting from proposed new defense); *DiFilippo v. Barclays Capital, Inc.*, 2006 WL 1716860 (S.D.N.Y. June 20, 2006) ("adverse party's burden of undertaking discovery" arising out of amendment not alone sufficient to warrant denial of amendment).

conference. Aug. 18, 2017 Hr'g Tr. 22:2-:10. Denying Plaintiffs the opportunity to amend would be a denial of a fair opportunity to litigate the merits of this action.

### IV. THERE HAVE BEEN NO "REPEATED FAILURE[S] TO CURE DEFICIENCIES," AND THE PROPOSED AMENDMENT IS NOT FUTILE

#### A. The CAC Will Be Fully Tested On Subsequent Motions To Dismiss, So The Court Need Not Resolve Defendants' Defenses On This Motion

Nor can Defendants bear their burden of showing the final factors under Rule 15 warrant denial of this motion. Indeed, the "futility" analysis usually only comes into play after there has been a finding of some deficiency in the operative pleading—this is why courts ask if there have been *repeated failures* to cure an *identified* defect. Here, there are no such failures for the simple reason that no defects have ever been identified. The Court has never ruled that the CC is deficient in any way, and Plaintiffs strongly believe it is not.

However, the CAC strengthens every aspect of Plaintiffs' case. It would be a waste of judicial resources for the Court to adjudicate Defendants' motions to dismiss based on the facts that existed prior to the Deutsche Bank settlement. Rather, the most efficient way forward is to grant the current motion and then decide the merits of Defendants' varied arguments against the claims through fulsome motion practice under Rule 12. *See, e.g.*, *Alaska Electrical Pension Fund v. Bank of Am. Corp.*, No. 14-cv-7126, Dkt. 379 (S.D.N.Y. Feb. 1, 2017) (allowing amendment where "Defendants' futility arguments go largely—if not entirely—to the merits rendering them inappropriate for resolution on a motion for leave to amend"); *Guideone Specialty Mutual Ins. Co. v. Hapletah*, 2006 WL 1455468, at *1 (E.D.N.Y. May 24, 2006) (granting leave to amend and finding it "inappropriate" to address defenses involving factual disputes "in the context of a motion to amend"); *Cantone & Co. v. Seafrigo*, 2010 WL 1488014, at *4 (S.D.N.Y. April 12, 2010) (permitting amendment and deferring factual determinations); *Cinelli v. Oppenheim-Ephratah Cent. Sch. Dist.*, 2008 WL 111174, at *1 (N.D.N.Y. Jan. 7,

2008) ("When amendments raise colorable claims, especially where they are based upon disputed facts, they should be allowed, and a comprehensive legal analysis deferred to subsequent motions to dismiss or for summary judgment.").

The reason for such deferral is obvious: Because the amended pleading will be fully tested under the rules governing motions to dismiss, there is little point in essentially litigating the issues twice by pausing long on the "futility" factor on an amendment request. Motions to amend are thus denied based on the claims' supposed lack of merit only in extreme cases, particularly in a procedural setting like this one: "[W]hile 'futility' is a valid reason for denying a motion to amend, this is true only where it is 'beyond doubt that the plaintiff can prove no set of facts in support' of his amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999).

A simple review of the 150-page CAC and the hundreds of pages of materials filed in connection with Defendants' prior motions to dismiss are all one needs to do to conclude this is not a "beyond doubt" situation. However, in anticipation that Defendants might try (in vain) to get two bites at the apple by opposing this amendment on grounds of futility, below Plaintiffs explain how Defendants' primary defenses have been negated by the CAC.

### B. Amendment Is Not Futile As To Plausibility Or Standing

Defendants argued that the CC failed to plausibly allege the existence of an antitrust conspiracy or any injury to the class that was "fairly traceable" to Defendants. *See* Dkt. 229 at 10-39. This relied heavily on Defendants' casting of the CC as presenting a damages theory arising out of the "ripple" effects from just 19 "Targeted Bond" transactions. *See id.* at 6.

The CAC demonstrates the disingenuousness of Defendants' arguments even more clearly than the CC did, by confirming beyond a doubt that this case is about Defendants' continuous refusal to compete with each other. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████ *See, e.g., id.* ¶¶ 14, 132. ███████████████████████████████████

█████████████████████████████████████

████████████████████ *See, e.g.*, Dkt. 229 at 16-19. ███████████

████████████████████████████████

█████████████████████████████████████ *See* CAC ¶¶ 224-85. ████████████████████████████████

████████████████████████ *See* CAC ¶¶ 17, 228-29.

    The CAC also moots Defendants' "standing" argument, as that argument was largely based on Defendants' miscasting of the CC as a pleading focused only on 19 "Targeted Bonds."

████████████████████████████████████

███████████████████████████████████████ *See* CAC ¶¶ 28-29, 32-94. ████

████████████████████████████████████████████████████████████████

████████████████████████████████████ *See* CAC § V.  The CAC also includes, for the first time, citations to academic literature explaining and confirming that when competition decreases—which is exactly what happened when Defendants took pains to stay out of each others' way as alleged here—consumers are hurt.  *Id.* § VIII.

It also explains how Defendants' attempt to segregate their U.S. sales activities from the mostly London-based Individual Defendants is unavailing, because of how they sold and priced SSA bonds in the U.S.  *Id.* § VII.B.  ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ *Id.* ¶¶ 263-65.

### C. Amendment Is Not Futile As To Personal Jurisdiction Or Venue

Nor is amendment futile as to personal jurisdiction or venue.  In their motions to dismiss, the Defendants argued that the CC failed to sufficiently allege that they participated in any wrongful conduct within or directed at New York or the United States, and the CC's jurisdictional and venue allegations were "boilerplate."  *See, e.g.*, Dkt. 230 at 5.  The CAC addresses this by laying out, for each Defendant individually, the role that Defendant played in the conspiracy; which Individual Defendant acted on its behalf; what that specific Defendant did to direct its activities into the U.S. and into New York; and what business that specific Defendant conducted in New York.  *See generally* CAC ¶¶ 32-94.

The CAC further builds upon the CC in laying out more expressly how the alleged conspiracy was targeted at, and had ties to, the United States and New York.  For instance, it includes allegations regarding why U.S. investors are naturally targeted for *USD* SSA bonds.

11

*See id.* § VII.A.  The CAC also explains how the Defendants' SSA trading activities were carried out through a process that included the London desks providing "runs" and "axes" to U.S. salespeople, who would then market U.S. investors.  When an investor wanted to transact, the U.S. salespeople would then turn to the London conspirators, who would tell them what price to quote, knowing that quote was for a specific transaction being contemplated in the U.S.  *See, e.g., id.* ¶ 324.

   Finally, the CAC uses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g.*, CAC ¶¶ 88-94. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶¶ 335-36. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶¶ 5-6, 224-85, 335-36.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for leave to file the proposed Consolidated Amended Class Action Complaint.

DATED:   New York, New York
         October 6, 2017

| | |
|---|---|
| **ROBBINS GELLER RUDMAN & DOWD LLP** | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** |
| By: /s/ David W. Mitchell | By: /s/ Dan Brockett |
| David W. Mitchell<br>Brian O. O'Mara<br>Carmen A. Medici<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Telephone: (619) 231-1058<br>Fax: (619) 231-7423<br>davidm@rgrdlaw.com<br>bomara@rgrdlaw.com<br>cmedici@rgrdlaw.com<br><br>Samuel H. Rudman<br>58 South Service Road, Suite 200<br>Melville, NY 11747<br>Telephone: (631) 367-7100<br>Fax: (631) 367-1173<br>srudman@rgrdlaw.com | Daniel L. Brockett<br>Sascha N. Rand<br>Steig D. Olson<br>Thomas J. Lepri<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Telephone: (212) 849-7000<br>Fax: (212) 849-7100<br>danbrockett@quinnemanuel.com<br>sascharand@quinnemanuel.com<br>steigolson@quinnemanuel.com<br>thomaslepri@quinnemanuel.com<br><br>Jeremy D. Andersen<br>Adam B. Wolfson<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017<br>Telephone: (213) 443-3000<br>Fax: (213) 443-3100<br>jeremyandersen@quinnemanuel.com<br>adamwolfson@quinnemanuel.com<br><br>*Interim Co-Lead Class Counsel and Counsel for Plaintiffs Sheet Metal Workers Pension Plan of Northern California and Iron Workers Pension Plan of Western Pennsylvania and the Proposed Class* |