**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:

SSA BONDS ANTITRUST LITIGATION

*This Document Relates To All Actions*

1:16-cv-03711-ER

ORAL ARGUMENT REQUESTED


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GARY McDONALD'S**
**MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION**
**COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION, LACK OF**
**PERSONAL JURISDICTION, AND FAILURE TO STATE A CLAIM**


**REDACTED – PUBLIC VERSION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS SPECIFIC TO MR. MCDONALD ..................................... 2

    A.    Mr. McDonald Was Not a Member of ███████████ .............................. 2

    B.    There Are No Allegations That Mr. McDonald Entered Into Any
        Agreement With ████████ About Anything. ...................................... 3

        1.    Most of the Alleged Conversations Between ████████ and Mr.
                McDonald Described in the Amended Complaint Concern What
                Had Already Occurred in the Marketplace. ................................. 3

        2.    ███████████████████████████████████████
                ██████████████████████████████████████████
                ██████████ ................................. 4

        3.    ███████████████████████████████████████
                ██████████████████████████████████████████
                ████████ ................................. 7

        4.    ███████████████████████████████████████
                ███████████ ................................. 7

         5.    ███████████████████████████████████████
                ███████████████ ................................. 8

    C.    Mr. McDonald Is No Longer on the FCA Register Because He Is No
        Longer Legally Required to Be.................................................................. 9

    D.    There Are No Facts Connecting Mr. McDonald to New York.......................... 9

ARGUMENT ............................................................................................................ 10

I.    PLAINTIFFS HAVE FAILED TO PLEAD A VIABLE SECTION 1 CLAIM
    AGAINST MR. MCDONALD................................................................................ 10

    A.    Plaintiffs Have Failed to Allege That Mr. McDonald Entered Into Any
        "Agreement". ............................................................................................ 10

    B.    Plaintiffs Have Failed To Allege That Mr. McDonald Engaged In Any
        Anticompetitive Conduct. ........................................................................ 14

II.    THIS COURT LACKS PERSONAL JURISDICTION OVER MR.
    MCDONALD. ....................................................................................................... 17

III.    PLAINTIFFS HAVE FAILED TO PLEAD ANY INJURY TRACEABLE TO
    MR. MCDONALD'S ALLEGED CONVERSATIONS WITH ██████████ ............ 20

## TABLE OF CONTENTS
(continued)

CONCLUSION....................................................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AD/SAT v. AP*,
   181 F.3d 216 (2d Cir. 1999) ........................................................................................ 10

*In re Aluminum Warehousing Antitrust Litig.*,
   No. 13-md-2481 (KBF), 2014 U.S. Dist. LEXIS 121435 (S.D.N.Y. Aug. 29,
   2014) .............................................................................................................................. 15

*Apex Oil Co. v. Di Mauro*,
   822 F.2d 246 (2d Cir. 1987) ........................................................................................ 11

*Beach v. Citigroup Alternative Invs. LLC*,
   No. 12 Civ. 7717 (PKC), 2014 U.S. Dist. LEXIS 30032 (S.D.N.Y. Mar. 7,
   2014) .............................................................................................................................. 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................... 10

*Blomkest Fertilizer, Inc. v. Potash Corp. of Sask.*,
   203 F.3d 1028 (8th Cir. 2000) ..................................................................................... 14

*Bristol-Myers Squibb Co. v. Superior Court*,
   137 S. Ct. 1773 (2017) ................................................................................................. 19

*Clamp-All Corp. v. Cast Iron Soil Pipe Inst.*,
   851 F.2d 478 (1st Cir. 1988) ........................................................................................ 13

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) ................................................................................................... 17

*deBruyne v. Clay*,
   No. 94 Civ. 4704 (JSM), 1997 U.S. Dist. LEXIS 8928 (S.D.N.Y. June 24,
   1997) .............................................................................................................................. 17

*Ehrenfeld v. Bin Mahfouz*,
   9 N.Y.3d 501 (N.Y. 2007) ........................................................................................... 19

*Fagan v. Republic of Aus.*,
   No. 08-civ-6715, 2011 U.S. Dist. LEXIS 32058 (S.D.N.Y. Mar. 25, 2011) ............. 20

*Galerie Gmurzynska v. Hutton*,
   257 F. Supp. 2d 621 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206 (2d Cir. 2004) ............... 19

*Jarrow Formulas, Inc. v. Int'l Nutrition Co.*,
    175 F. Supp. 2d 296 (D. Conn. 2001) .................................................................... 17

*Jonas v. Estate of Leven*,
    116 F. Supp. 3d 314 (S.D.N.Y. 2015) .................................................................... 20

*Keeton* v. *Hustler Mag., Inc.*,
    465 U.S. 770 (1984) .............................................................................................. 17

*King Cty. v. IKB Deutsche Industriebank AG*,
    769 F. Supp. 2d 309 (S.D.N.Y. 2011) ............................................................ 18, 19

*Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
    No. 12 Civ. 3419 (GBD), 2017 U.S. Dist. LEXIS 38271 (S.D.N.Y. Mar. 10,
    2017) ...................................................................................................................... 19

*Mayor & Council of Balt. v. Citigroup, Inc.*,
    709 F.3d 129 (2d Cir. 2013) .................................................................................. 11

*Mooney v. AXA Advisors, L.L.C.*,
    19 F. Supp. 3d 486 (S.D.N.Y. 2014) ..................................................................... 17

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010) .................................................................................... 17

*Pyramyd Stone Int'l Corp. v. Crosman Corp.*,
    No. 95 Civ. 6665 (JFK), 1997 U.S. Dist. LEXIS 1610 (S.D.N.Y. Feb. 14,
    1997) ...................................................................................................................... 18

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*,
    No. 1:15-cv-00871 (SHS), 2017 U.S. Dist. LEXIS 156425 (S.D.N.Y. Sep. 25,
    2017) ...................................................................................................................... 13

*In re Terrorist Attacks on Sept. 11, 2001*,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) ................................................................... 17

*Ulrich v. Moody's Corp.*,
    No. 13-Civ-0008, 2014 U.S. Dist. LEXIS 145898 (S.D.N.Y. Mar. 31, 2014) ...... 16

*United States* v. *U.S. Gypsum Co.*,
    438 U.S. 422 (1978) .............................................................................................. 16

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) .......................................................................................... 20

**Statutes**

N.Y. C.P.L.R. ...................................................................................................................
    302(a)(1) ........................................................................................................18
    302(a)(2) ........................................................................................................17
    302(a)(4) ........................................................................................................17

**Other Authorities**

Fed. R. Civ. P. 4(k)(1)(A) .............................................................................17

Areeda & Hovenkamp, <u>Antitrust Law</u> (3d ed.) ..........................................16

Defendant Gary McDonald respectfully submits this memorandum of law in support of his motion to dismiss the Consolidated Amended Class Action Complaint (Dkt. 306) (the "Amended Complaint") for lack of subject matter jurisdiction, lack of personal jurisdiction, and for failure to state a claim pursuant to Rules 12(b)(1), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. In addition, Mr. McDonald fully joins the Memorandum of Law in Support of Dealer Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim ("Joint Merits Br.").

## INTRODUCTION

This Court should reject Plaintiffs' attempt to drag Mr. McDonald, a British citizen working in London and residing in the United Kingdom, into a putative antitrust class action in New York. First, Plaintiffs have failed to state a cognizable claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, against Mr. McDonald. The conversations Plaintiffs allege that Mr. McDonald had ▮▮▮▮▮▮▮▮ (and no other defendant) over a period of four years do not support any inference that Mr. McDonald agreed to engage in any anticompetitive activity. To the contrary, the facts alleged by Plaintiffs support the opposite conclusion—the alleged conversations were benign observations of what had occurred or was occurring in the marketplace. Second, this Court lacks personal jurisdiction over Mr. McDonald because there are no factual allegations in the Amended Complaint even suggesting that Mr. McDonald has had contacts with New York related to the alleged conspiracy to "manipulate" a vaguely defined market for "SSA" bonds. Third, and finally, Plaintiffs lack standing to assert any claim against Mr. McDonald because they do not allege how any of the purported conversations ▮▮▮▮▮▮ ▮▮▮▮ had any relationship, or resulted in any injury, to Plaintiffs. Dismissal of the Complaint as to Mr. McDonald is therefore warranted.

## STATEMENT OF FACTS SPECIFIC TO MR. McDONALD

**A.     Mr. McDonald Was Not a Member of** ████████████████

Plaintiffs allege that "Defendants' conspiracy was carried out by *at least*" eleven different individuals over a more than ten-year time period.  (Am. Compl. ¶ 124 (emphasis in original).) Plaintiffs then repeatedly lump together all of these eleven individuals and indiscriminately refer to them as members of ████████ (*see, e.g., id.* at ¶ 5).  Plaintiffs' own allegations, however, undermine any suggestion that Mr. McDonald was a member of this group.  For example, although Plaintiffs claim that ███████████████████████████ (*Id.* ¶ 9), the only facts that support these allegations are that ████████████████████████████████ ████████████████████ (*Id.* ¶ 295.)  There are no facts alleged suggesting that Mr. McDonald ever socialized with any of the other alleged ██████████ let alone ████████████████████████ Similarly, although Plaintiffs describe several "group" chats between ████████████████████████████████████████████ ████████████████████ (*see, e.g., id.* ¶¶ 274, 276[1], 279, 293), Mr. McDonald is not alleged to have participated in those, or any other, group chats.  (*Id.*)

In fact, the only allegations purportedly tying Mr. McDonald to anyone in the so-called ██████ are that:  1) Mr. McDonald ████████████████████████ at Bank of America from December 2001 through November 2007 (*id.* ¶ 124); 2) ████████████████████ ████████████████████████████████████████████ ████████████████████ (*id.* ¶¶ 10, 163, 168, 184-86, 208-09, 234-35, 236-38, 246-48, 266-68, 277-78, 351-53, 390-94); and 3) ████████████████████████

---

[1] Here, Plaintiffs try to get around their original pleading, which made clear that ████████████████ ████████████████████████████████████████ (*See* Consolidated Class Action Complaint ¶¶ 135-136, Dkt. 130.)

████████████████████████████████████████████████████

██████████████████████████████ (*id*. ¶¶ 266-67, 351).

Indeed, despite having access to ████████████████████████████

████████████ (*id*. ¶ 5), ***Plaintiffs never allege that Mr. McDonald interacted with any***

***of the other*** ████████████, either one-on-one or in any "group" chats, telephone calls,

or any other conversations. And there is not a single allegation in the Amended Complaint

suggesting that Mr. McDonald personally knew any of the other members of ████████.

    **B.** **There Are No Allegations That Mr. McDonald Entered Into Any Agreement With ████████ About Anything.**

        **1.** **Most of the Alleged Conversations Between ████████ and Mr. McDonald Described in the Amended Complaint Concern What Had Already Occurred in the Marketplace.**

According to Plaintiffs, there is "no post-trade price transparency" for SSA bonds. (*See*

*id*. ¶ 114.) Plaintiffs then allege that when ████████ and Mr. McDonald allegedly spoke, they

largely discussed past trading activity of SSA bonds. For example, ████████████

████████████████████████████████████████████████

████ ██████████████████████████████████. (*Id*. ¶ 234 (emphasis

added).) Plaintiffs also allege that ████████████████████████

████████████████████████████████████████ (*id*. ¶ 390

(emphasis added)) and ████ ████████████████████████████

████ (*Id*. ¶ 237 (emphasis added).) In fact, on more than half of ████████████

████████████████████████████, their purported conversations

focused on trades ***that had already occurred***. (*See id*. ¶ 391 ████████████████

████████; ¶ 247 ████████████████████████████

████████; ¶ 393 ████████████████; ¶ 394 ████████████████████



; ¶ 168 ( ); ¶ 351 ); ¶ 278 )

Because those trading activities had occurred in the past, Plaintiffs cannot credibly allege (and do not try to allege) that the discussion of information about what had occurred, after it occurred, could have somehow affected the prices for those transactions. Plaintiffs do not allege that ███ and Mr. McDonald ever discussed future prices for any of these bonds. Indeed, Plaintiffs never allege that, after discussing past trading activity, either ███ or Mr. McDonald subsequently even traded any of the same bonds at the same prices that they had discussed. In fact, the opposite is true. (*See, e.g., id.* ¶¶ 246-248 ( ) (emphasis added).) Further, although Plaintiffs claim that ███ (*see id.* ¶¶ 236, 238), Plaintiffs do not allege any facts suggesting that ███.

**2.** ███

Plaintiffs assert that "there is no open, anonymous exchange" for any SSA bonds and that there is "no transparency into trading volumes or prices." (*See id.* ¶¶ 109, 114.) Plaintiffs then

allege that ██████████████████████████████████████████████████████████
████████████████████. (*See id.* ¶¶ 184-186, 392, 266-267, 208-209.)



2 ████████████████████████████████████████████████████████████
████████████████████████████ (*Id.* ¶¶ 185-186.)

3 ████████████████████████████████████████████████████████████
████████████████████████ (*Id.* ¶ 248.)



ny-1305334



3.

4.

5.



ny-1305334

███████████████████████████████████████

██████████████████████████████████

### C. Mr. McDonald Is No Longer on the FCA Register Because He Is No Longer Legally Required to Be.

Plaintiffs insinuate that there is some significance to the fact that Mr. McDonald has "been inactive on the FCA register for traders since March 2016." (Am. Compl. ¶ 314 n.45.) That allegation is meritless. Beginning on March 7, 2016, traders at financial institutions in the City of London were no longer required to register with the FCA; instead, under the new Senior Managers Regime and Certification Regime financial institutions are accountable for their employees' fitness and propriety. (*See* Roberts Decl. ¶ 5, Ex. A (Financial Services (Banking Reform) Act 2013, ch. 33, s. 29 (Eng.), *amending* Financial Services and Markets Act 2000, ch. 8, s. 63E & s. 63F (Eng.).)

### D. There Are No Facts Connecting Mr. McDonald to New York.

Mr. McDonald is a citizen of the United Kingdom who lives year-round in a suburb of London, England; he does not own any property in New York. (Am. Compl. ¶ 92; McDonald Decl. ¶¶ 1, 12.) Mr. McDonald has worked for Citigroup Global Markets Limited ("CGML")— a U.K. company—in its London office since September 2010. (McDonald Decl. ¶¶ 2, 3; *see also* Am. Compl. ¶ 52.) Before joining CGML, Mr. McDonald worked for TD Bank in London from December 2007 to July 2010. (McDonald Decl. ¶¶ 7, 8; *see also* Am. Compl. ¶ 84.)

The only person with whom Mr. McDonald is alleged to have directly communicated—████████—is also a resident of and works in the United Kingdom. (Am. Compl. ¶ 88.) Plaintiffs do not allege—because they cannot—that Mr. McDonald had any direct communications with any clients or counterparties in New York or even in the United States. (McDonald Decl. ¶¶ 6, 11.) At best, ████████████████████████████

9

█████████████████████████████████████████████████████

███████████████ (Am. Compl. ¶¶ 351, 353) and make conclusory allegations that

█████████████████████████████████████████████████████

██████████████████████████ (*id.* ¶¶ 390-391).  Even if Mr.

McDonald had traded SSA bonds with "U.S. counterparties," however, those customers'

inquiries would have been directed ***out*** of the United States to London, as Plaintiffs themselves

admit.  (*See id.* ¶ 110; *see also* McDonald Decl. ¶¶ 5, 9.)  Regardless, the overwhelming majority

of Mr. McDonald's business at CGML and TD Bank has been with clients and counterparties

based in Europe and Asia.  (McDonald Decl. ¶¶ 4, 11.)

In sum, there are no allegations in the Amended Complaint that Mr. McDonald ever

directly traded USD SSA bonds with any individuals or entities in New York or the United

States, let alone that Mr. McDonald entered into any transactions with Plaintiffs.

## ARGUMENT

**I.     PLAINTIFFS HAVE FAILED TO PLEAD A VIABLE SECTION 1 CLAIM AGAINST MR. MCDONALD.**

**A.     Plaintiffs Have Failed to Allege That Mr. McDonald Entered Into Any "Agreement".**

To survive a motion to dismiss, a Section 1 claim "requires a complaint with enough

factual matter (taken as true) to suggest that an ***agreement*** was made."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 556 (2007) (emphasis added).  Further, the Second Circuit "require[s] a

factual showing that ***each defendant*** conspired in violation of the antitrust laws."  *See AD/SAT v.*

*AP*, 181 F.3d 216, 234 (2d Cir. 1999) (emphasis added).  Here, however, Plaintiffs have pleaded

no facts plausibly suggesting that Mr. McDonald entered an agreement with anyone about

anything.

Although Plaintiffs claim to ███████████████████████████ Plaintiffs describe only that ███████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████. (Am. Compl. ¶¶ 10, 163, 168, 184-86, 208-09, 234-35, 236-38, 246-48, 266-68, 277-78, 351-53, 390-94)) Sharing information, however, does not give rise to an actionable antitrust conspiracy. *See Apex Oil Co. v. Di Mauro*, 822 F.2d 246, 257-58 (2d Cir. 1987) ("evidence of the mere exchange of information by competitors cannot establish a [Section 1] conspiracy"). Instead, it was perfectly rational and consistent with basic economic theory to share information regarding SSA bonds given that, as Plaintiffs allege, "there is no open, anonymous exchange" for any SSA bonds and that there is "no transparency into trading volumes or prices." (Am. Compl. ¶¶ 109, 114); *see Mayor & Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 138 (2d Cir. 2013) (affirming dismissal of Section 1 claim because Plaintiffs only alleged rational economic actions that "made perfect business sense").

Importantly, even according to Plaintiffs' own allegations, Mr. McDonald never entered into any agreement with ██████ about the price of any particular bond or engaged in any other concerted action with him. This is fatal to their claims. As discussed above, most of the allegations relate to discussions about trades that had already occurred. There can be no plausible theory under which discussions about what had already occurred could possibly have influenced what actually occurred. Instead, the discussions simply related to historical facts and could not have resulted in any agreement between ██████ and Mr. McDonald. Moreover, in none of these situations do the Plaintiffs allege that these discussions resulted in any agreement between ██████ and Mr. McDonald about any future trades.

Plaintiffs also allege that ████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████. (*See* Am. Compl. ¶¶ 208-209.)  This

belies any alleged agreement.  Similarly, Plaintiffs make the conclusory claim that ████████

██████████████████████████████████████████████████████████

██████████████████ (*Id.* ¶ 209.)  Again, no facts are pled that would support any inference of

agreement.  Instead, all that is pled is a speculative conclusion that lacks any factual basis.  These

are exactly the types of allegations that fail under *Twombly*.

Plaintiffs' assertion that ████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████ (*Id.* ¶ 163)  In addition,

there are no allegations █████████████████████████████████████

██████████████████████████████████████████████████

████████████████████.  Indeed, there is no factual basis alleged that Mr. McDonald

was a competitor or potential competitor of ██████████ for this particular trade.  Indeed the facts

pled in the Amended Complaint suggest otherwise; ████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████.  (*See id.* ¶¶ 277-

278.)

Plaintiffs' other allegations are similarly defective.  (*See* Am. Compl. ¶ 184 (███████

██████████████████████████████████████████████████████████████

████); ¶ 185 ███████████████████████████████████████████████████

██████████████████████████████████, ¶¶ 246-248 ██████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████.)  In other words,

Plaintiffs allege only ***unilateral*** conduct by █████████.  But that is not enough to state a viable

Section 1 claim.  *See Clamp-All Corp. v. Cast Iron Soil Pipe Inst.*, 851 F.2d 478, 484 (1st Cir.

1988) ("Courts have noted that the Sherman Act prohibits *agreements,* and they have almost

uniformly held, at least in the pricing area, that such individual pricing decisions (even when

each firm rests its own decision upon its belief that competitors will do the same) do *not*

constitute an unlawful agreement under section 1 of the Sherman Act.") (emphasis in original).

Moreover, there are no factual allegations that Mr. McDonald was a competitor or potential

competitor for any of these trades.

Finally, Mr. McDonald could not have entered into any agreement with ████████

████████████ because there are no allegations that Mr. McDonald ever spoke to, or even

knew, any of them.  *See, e.g., Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, No.

1:15-cv-00871 (SHS), 2017 U.S. Dist. LEXIS 156425, at *60 (S.D.N.Y. Sep. 25, 2017)

("reject[ing] plaintiffs' attempts to shoehorn each of defendants into a broad-based antitrust

conspiracy even in the absence of detailed allegations of collusion [because *inter alia*] plaintiffs

13

assert Count Two against UBS and the Credit Suisse Defendants without a single communication indicating that they conspired with another defendant"). And Plaintiffs cannot survive a motion to dismiss by "lumping" eleven different traders together and calling them ███ without describing their alleged individual conduct. (*See* Joint Merits Br. Section I.C.)

The Amended Complaint therefore falls far short of pleading an antitrust conspiracy involving Mr. McDonald and should be dismissed accordingly. (*See also* Joint Merits Br. Sections I.B.1 – I.B.3.)

**B.     Plaintiffs Have Failed To Allege That Mr. McDonald Engaged In Any Anticompetitive Conduct.**

Even if Plaintiffs had pleaded the existence of an "agreement" involving Mr. McDonald—and they have not—Plaintiffs do not even attempt to explain how Mr. McDonald's alleged conversations with ███████████████████ had any impact on the pricing for any particular bonds, let alone the entire vaguely-defined alleged "market" for "U.S. dollar-denominated SSA bonds" (assuming such a market even exists, and it does not (*see* Joint Merits Br. Section I.B.4). Nor could they: none of these conversations even remotely suggest that Mr. McDonald engaged in any anticompetitive conduct.

The majority of the alleged conversations between ███████ and Mr. McDonald focused on *past* trading activity. (*See* Am. Compl. ¶¶ 114, 168, 234, 236-238, 246-248, 278, 351, 390-391.) Plaintiffs, however, do not—because they cannot—explain how any of this historical information had any anticompetitive effect, or potential effect, on trading in any specific bond. (*See id.*); *Blomkest Fertilizer, Inc. v. Potash Corp. of Sask.*, 203 F.3d 1028, 1033-35 (8th Cir. 2000) (holding that sharing price information about completed sales could not support a Section 1 claim). Indeed, as Plaintiffs admit, there is "no post-trade price transparency" for sales of SSA bonds (*see* Am. Compl. ¶ 114.), and thus what they describe is

14

the exact type of information sharing that is ***economically rational***.  *See, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (KBF), 2014 U.S. Dist. LEXIS 121435, at *106 (S.D.N.Y. Aug. 29, 2014) (rejecting Section 1 conspiracy claim because "the allegations tell a story consistent with market-driven behavior.")

Plaintiffs also fail to allege any facts that 

. (*See* Am. Compl. ¶¶ 392, 266.)

. (*See id.* ¶¶ 184-186.)

. (*See id.* ¶ 208.)

. (*Id.* ¶¶ 184-186, 208.))

Regardless, because Plaintiffs admit that "there is often no transparency into trading volumes or prices," it is ***necessary and procompetitive*** for traders to discuss that information

15

because it is "the only reasonable method for determining" what the market price for any given

bond should be.  *See* Areeda & Hovenkamp, <u>Antitrust Law</u>, ¶ 2113 (3d ed.) (interseller

verification can be necessary "when the market price is in fact unknown and inquiry of another

seller is the only reasonable method for determining it"); *see also United States* v. *U.S. Gypsum

Co.*, 438 U.S. 422, 441 n.16 (1978) ("The exchange of price data and other information among

competitors does not invariably have anticompetitive effects; indeed such practices can in certain

circumstances increase economic efficiency and render markets more, rather than less,

competitive.")



(Am. Compl. ¶ 278),

(*See* Am.

Compl. ¶ 163.)

. (*Id.* ¶ 10)

"[A]dverse effect on competition is a requirement that must be alleged at the pleading

stage, and thus [P]laintiff[s'] failure to plausibly allege an adverse effect on competition dooms

[their] Sherman Act claim." *Ulrich v. Moody's Corp.*, No. 13-Civ-0008, 2014 U.S. Dist. LEXIS

145898, at *92 (S.D.N.Y. Mar. 31, 2014). Plaintiffs' Section 1 claim must be dismissed as to

Mr. McDonald accordingly. *Mooney v. AXA Advisors, L.L.C.*, 19 F. Supp. 3d 486, 503

(S.D.N.Y. 2014) (dismissing antitrust claims for failing to plead anticompetitive effects).

## II.    THIS COURT LACKS PERSONAL JURISDICTION OVER MR. MCDONALD.

Plaintiffs "bear[] the burden of demonstrating personal jurisdiction over" Mr. McDonald.

*See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010); *see also Keeton* v.

*Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984) ("Each defendant's contacts with the forum

State must be assessed individually."). Accordingly, Plaintiffs must plead facts establishing that

Mr. McDonald's contacts with New York satisfy both New York's long-arm statute, N.Y.

C.P.L.R. 302(a), and Constitutional due process requirements. *See* Fed. R. Civ. P. 4(k)(1)(A); *In*

*re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 804 (S.D.N.Y. 2005).[4] Plaintiffs

have failed to meet their burden.

Two of the four possible bases for long-arm jurisdiction under N.Y. C.P.L.R. 302(a) are

clearly inapplicable because Plaintiffs do not allege that Mr. McDonald engaged in any allegedly

tortious conduct while physically present in New York (*id*. at 302(a)(2)) or that he owns property

in New York (*id*. at 302(a)(4)). Nor could they. (*See* McDonald Decl. ¶¶ 3, 8, 12.) Moreover,

because Plaintiffs do not allege that **they** were injured in New York as a result of **any** defendant's

conduct—let alone that they suffered an injury in New York as a result of Mr. McDonald's

---

[4] Because Mr. McDonald is a British citizen residing in London, United Kingdom, there is no basis for general jurisdiction over Mr. McDonald in New York. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."); *deBruyne v. Clay*, No. 94 Civ. 4704 (JSM), 1997 U.S. Dist. LEXIS 8928, at *8 (S.D.N.Y. June 24, 1997) (finding no general jurisdiction over British citizen living in the United Kingdom). Further, Plaintiffs cannot establish jurisdiction over Mr. McDonald pursuant to 15 U.S.C. § 22 because that statutory jurisdictional provision applies only to corporations, not individuals. *See, e.g., Jarrow Formulas, Inc. v. Int'l Nutrition Co.*, 175 F. Supp. 2d 296, 304 (D. Conn. 2001). And even if 15 U.S.C. § 22 does apply to individuals—and it does not—Plaintiffs' allegations are still insufficient. (*See* Memorandum of Law in Support of Foreign Dealer Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint for Lack of Personal Jurisdiction and Improper Venue ("Joint Juris. Br.") Section V.)

purported conversations with ███████—Plaintiffs cannot establish jurisdiction under N.Y.

C.P.L.R. 302(a)(3).  Thus, long-arm jurisdiction over Mr. McDonald is appropriate **only if**

Plaintiffs can demonstrate that Mr. McDonald "transacted business" in New York.  *See* N.Y.

C.P.L.R. 302(a)(1).  But Plaintiffs have not, and cannot, make such a showing:  the Amended

Complaint contains **no** factual allegations that, even if true, suggest **any** connection between Mr.

McDonald and New York.

At best, Plaintiffs have alleged that Mr. McDonald:  1) resides and works in the United

Kingdom and spoke with ███████, another individual living and working in the United

Kingdom, ████████████████; (*see* Am. Compl. ¶¶ 10, 163, 168, 184-86, 208-09,

234-35, 236-38, 246-48, 266-68, 277-78, 351-53, 390-94); 2) ██████████████████

████████████████████████████ (*id*. ¶¶ 351, 353); and 3)

███████████████████████████████████████████████████

███████ (*id*. ¶¶ 390-391).  These allegations fall far short of establishing that Mr. McDonald

"transacted business" in New York.

First, Mr. McDonald's ███████████████████ in the United Kingdom

obviously have no connection to New York and therefore are jurisdictionally irrelevant.  *See*

*King Cty. v. IKB Deutsche Industriebank AG*, 769 F. Supp. 2d 309, 315 (S.D.N.Y. 2011) (finding

no personal jurisdiction where the "transactions or activities [] occurred, or were directed

outside, of the forum.")  Second, Plaintiffs' speculation that █████████████████████

███████████████████████████████ is legally deficient.  *See*

*Pyramyd Stone Int'l Corp. v. Crosman Corp.*, No. 95 Civ. 6665 (JFK), 1997 U.S. Dist. LEXIS

1610, at *31 (S.D.N.Y. Feb. 14, 1997) ("conclusory and speculative allegations are not enough

for § 302(a)(1) jurisdiction").  Third, that Mr. McDonald allegedly traded with counterparties

18

located in some unspecified place in the **United States** does not establish the requisite connection to **New York**. *See Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (N.Y. 2007) ("[ t]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities **within** [New York]." (emphasis added) (citations omitted)).[5] And the Court should reject out of hand Plaintiffs' attempt to rely on conclusory allegations that ███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████ (Am. Compl. ¶ 92). *See Galerie Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 625 (S.D.N.Y. 2003) ("conclusory allegations are not enough to establish personal jurisdiction") (citations omitted), *aff'd*, 355 F.3d 206 (2d Cir. 2004); *Beach v. Citigroup Alternative Invs. LLC*, No. 12 Civ. 7717 (PKC), 2014 U.S. Dist. LEXIS 30032, at *17 (S.D.N.Y. Mar. 7, 2014) ("Contacts with unnamed class members may not be used as a jurisdictional basis[.]").

In any event, there is no basis for jurisdiction under N.Y. C.P.L.R. 302(a)(1) because, despite having access to ███████████████████████████████, "[**P]laintiffs do not offer particularized facts to demonstrate that [Mr. McDonald's] activities in New York had an articulable nexus, much less a substantial relationship to the underlying cause of action.**" *See King Cty.*, 769 F. Supp. 2d at 316 (emphasis added) (citations and quotations omitted); *see also Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017) (where there is no connection "between the forum and the underlying controversy . . . . specific jurisdiction is

---

[5] Regardless, that ███████████████████████████████████████████ is insufficient to establish the "minimum contacts" necessary to satisfy due process. *Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 12 Civ. 3419 (GBD), 2017 U.S. Dist. LEXIS 38271, at *18 (S.D.N.Y. Mar. 10, 2017) ("The fact that some of Lloyds' counterparties in derivatives transactions involving LIBOR or TIBOR were located in the United States is insufficient to establish minimum contacts with the United States.")

lacking regardless of the extent of a defendant's unconnected activities in the State") (citations and quotations omitte).  Thus, this Court lacks personal jurisdiction over Mr. McDonald under New York's long-arm statute.  *See, e.g.*, *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 333 (S.D.N.Y. 2015) (dismissing complaint against foreign individuals for lack of personal jurisdiction under New York's long-arm statute).

Finally, because Plaintiffs have failed to establish personal jurisdiction over Mr. McDonald under New York's long-arm statute, the Court "need not conduct a due process analysis."  *See Fagan v. Republic of Aus.*, No. 08-civ-6715, 2011 U.S. Dist. LEXIS 32058, at *40 (S.D.N.Y. Mar. 25, 2011) (citations omitted).  But even if the Court were to conduct that analysis, exercising personal jurisdiction over Mr. McDonald would violate due process because the Complaint does not allege any facts that plausibly suggest the necessary "minimum contacts" between Mr. McDonald and New York—or even the United States—related to the claims at issue in this case.  *See Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014) (to satisfy due process, "the defendant's ***suit-related conduct*** must create ***a substantial connection*** with the forum State") (emphasis added) (*see also* Joint Juris. Br. Section II.B.)[6]  The Complaint therefore must be dismissed as to Mr. McDonald for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## III.  PLAINTIFFS HAVE FAILED TO PLEAD ANY INJURY TRACEABLE TO MR. MCDONALD'S ALLEGED CONVERSATIONS ███████████████.

Plaintiffs do not plead any facts that plausibly explain how Mr. McDonald's alleged conversations with ███████████████████████████████ (over approximately

---

[6] Similarly, there is no basis for personal jurisdiction over Mr. McDonald under a conspiracy theory based on his alleged conversations with ████████ (*See* Joint Juris. Br. Section III.B. (citing, *inter alia*, *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) (rejecting vicarious conspiracy jurisdiction as inconsistent with due process)); *see supra* Section III.)

1,460 days) resulted in any injury to any participant in any relevant market, let alone that these conversations injured Plaintiffs or somehow adversely impacted the prices of the unspecified bonds that Plaintiffs purportedly bought or sold. (*See* Am. Compl. ¶¶ 10, 163, 168, 184-86, 208-09, 234-35, 236-38, 246-48, 266-68, 277-78, 351-53, 390-94.) Nor can they: Plaintiffs never allege that they traded any bonds with Mr. McDonald or that they even bought or sold the same bonds that Mr. McDonald was allegedly trading. (*See id.* ¶¶ 28, 29.) Plaintiffs therefore lack standing to assert any claims against Mr. McDonald. (*See* Joint Merits Br. Section I.A.1.)

## CONCLUSION

For the reasons set forth above, Defendant Gary McDonald respectfully requests that the Court dismiss the Amended Complaint in its entirety with prejudice.

Dated: December 12, 2017
New York, New York

MORRISON & FOERSTER LLP

Adam J. Hunt
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email: AdamHunt@mofo.com

Bradley S. Lui (*pro hac vice*)
2000 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 887-1500
Facsimile: (202) 887-0763
Email: BLui@mofo.com

*Attorneys for Defendant Gary McDonald*

21

## CERTIFICATE OF SERVICE

  I hereby certify that on December 12, 2017, I caused to be served a true and correct copy of Defendant Gary McDonald's Memorandum of Law in Support of His Motion to Dismiss the Consolidated Amended Class Action Complaint via ECF and electronic mail on counsel of record for Plaintiffs.

Dated: New York, New York
    December 12, 2017

                Adam J. Hunt

ny-1305334