**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>SSA BONDS ANTITRUST LITIGATION<br><br>*This Document Relates To All Actions* | 1:16-cv-03711-ER<br><br>ORAL ARGUMENT REQUESTED |

**ROYAL BANK OF CANADA, RBC CAPITAL MARKETS, LLC,
AND RBC EUROPE LIMITED'S SUPPLEMENTAL
MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

**PRELIMINARY STATEMENT**

Plaintiffs' claims depend entirely on a series of alleged communications among a small group of traders in London, but Plaintiffs nowhere allege that anyone at Royal Bank of Canada, RBC Capital Markets, LLC, or RBC Europe Limited ("RBC Defendants") participated in *any* of those communications. Nor do Plaintiffs plead any other fact that plausibly could be read to connect the RBC Defendants to any purported conspiracy.[1] But what is even more remarkable is that the CAC *admits* its failure to state a claim against the RBC Defendants. In a single footnote buried within the 149 pages of the CAC, Plaintiffs concede that they are unable to plead any facts to support their claims against the RBC Defendants, and ask the Court to excuse their pleading burden by speculating that the RBC Defendants must have been involved in the alleged conspiracy. (*See* CAC ¶ 79 n.19 (hypothesizing that it is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[2] notwithstanding that Plaintiffs have not identified *any* facts supporting that theory).) That concession alone warrants dismissal of Plaintiffs' claims against the RBC Defendants. Indeed, Plaintiffs' hope that "[f]uture discovery will likely yield substantial additional evidence of RBC's role in the conspiracy" (*see id.*) is no substitute for well-pled factual allegations. Because Plaintiffs' allegations as to the RBC Defendants fail to rise above the "speculative level," *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007), Plaintiffs' claims against the RBC Defendants should be dismissed.

---

[1] The RBC Defendants join the motions to dismiss the Consolidated Amended Complaint ("CAC") and supporting briefs submitted jointly on behalf of all Dealer Defendants. The RBC Defendants respectfully submit this supplemental memorandum of law specifically to address Plaintiffs' failure to state any facts whatsoever that plausibly could be read to state a claim against them.

[2] The CAC inappropriately lumps together all three RBC Defendants—Royal Bank of Canada, RBC Capital Markets, LLC, and RBC Europe Limited—using the defined term "RBC," and makes allegations against only "RBC" without any requisite specification. (CAC ¶ 80.)

**ARGUMENT**

To state a claim under Section 1 of the Sherman Act, a complaint must "allege enough facts to support the inference that a conspiracy actually existed." *Mayor & City Council of Baltimore, Md.* v. *Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013). Further, the allegations must "*plausibly* suggest that *each Defendant* participated in the alleged conspiracy." *Hinds Cnty., Miss.* v. *Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 513 (S.D.N.Y. 2009) (emphasis added) (citation omitted). Factual allegations that raise only "a sheer possibility that a defendant has acted unlawfully" are not enough. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs' allegations against the RBC Defendants come nowhere close to plausibly alleging that the RBC Defendants participated in any price-fixing conspiracy. The CAC purports to describe "a brazen conspiracy by Defendants to fix prices and restrain competition in the market for U.S. dollar-denominated ('USD') supranational, sovereign, and agency bonds ('SSA bonds')," carried out by a small group of traders in London. (CAC ¶¶ 1, 6, 28-29, 124.) In an attempt to support those allegations, Plaintiffs rely on alleged sporadic communications among a handful of traders, which Plaintiffs cherry-pick to suggest that certain discrete transactions were price-fixed. But not one of the alleged price-fixing communications involves the RBC Defendants or even makes reference to them (*id.* ¶¶ 179-223), nor is any RBC Defendant alleged to be a participant in *any* of the other allegedly improper communications cited in the CAC (*id.* ¶¶ 135-178, 224-98, 337-94). Further, Plaintiffs do not allege that the RBC Defendants were ever subject to any investigations relating to SSA bonds, or that the RBC Defendants terminated or disciplined any employees for any supposed conduct related to SSA bonds. (*See id.* ¶¶ 313-20.)

The RBC Defendants' only supposed connection to this case is that "RBC" allegedly employed individual defendant Shailen Pau from December 2001 through May 2009, and non-defendant ███████████████████████████████. (CAC ¶¶ 124-25.) Plaintiffs allege that Pau left RBC to join Crédit Agricole in July 2009 and then joined Credit Suisse in March 2010. (*Id.* ¶ 124(b).) Plaintiffs allege that ████████████████████████ ███████████████████████████████████████████████████████████. (*Id.* ¶ 124(i).) Plaintiffs assert that ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████ Such speculation that, "if it happened there, it could have happened here" is no substitute for well-pled allegations of direct or circumstantial evidence of conspiratorial conduct. *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007).

Plaintiffs try to explain away the absence of factual allegations connecting the RBC Defendants to the alleged conspiracy by asserting that ███████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████ But one or more alleged "cartel participants"—including Gudka, McDonald, ███████████████—were at some point employed by either Bank of America or Deutsche Bank during the *entire* period that Pau and ████ were allegedly employed by the RBC Defendants. (*See id.* ¶ 125.) Given the more than decade-long class period, the dearth of allegations regarding the RBC Defendants is telling.

**Shailen Pau:** Plaintiffs' allegations regarding Pau are completely deficient. The CAC does not allege a single fact regarding *any* purported misconduct by *any* Defendant prior to July

-3-

2009—several months *after* Pau allegedly left his employment with the RBC Defendants. As a result, there are no factual allegations whatsoever tying the RBC Defendants to any alleged conspiracy through Pau.

██████████ Plaintiffs' allegations regarding ████ fare no better. Despite that Plaintiffs have ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████ (CAC ¶¶ 284-85, 389.) And neither of these allegations plausibly demonstrates ██████ involvement in any price-fixing conspiracy.

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████ As a result, Plaintiffs fail to plausibly allege that ████ engaged in any relevant conduct—let alone misconduct—██████████████

Plaintiffs also allege that, ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ is plainly insufficient to show ████ involvement

in any conspiracy while employed by the RBC Defendants. █████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████

██████████████████████ Thus, Plaintiffs' allegations regarding ███████████ also come nowhere close to supporting claims against any RBC Defendant.

Conceding that the CAC fails plausibly to allege that ██████ participated in any supposed conspiracy while at RBC, Plaintiffs assert ████████████████████████████████ ████████████████████████████████████████ (CAC ¶ 79 n.19.) Even setting aside the faulty premise of that argument (that the CAC adequately alleges that ███████████ █████████████████████████████, which it does not), other allegations in the CAC contradict it. According to the CAC, "[s]tarting in late 2013," following investigations into chatroom activities by "[g]overnmental regulators," Defendants "began to impose increased restrictions on traders using chat rooms (especially with other banks)." (*Id.* ¶ 290.) Of course, ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████. Thus, even if the CAC plausibly alleged that ████████████████████████████████████████████████████████, Plaintiffs' hypothesis that ████████████████████████████████████████ should be rejected.[3]

Finally, Plaintiffs cannot salvage their failed claims against the RBC Defendants by relying on improper group pleading and making undifferentiated allegations against "Defendants" as a whole. (*See* Joint Merits Br. § I.C.) Plaintiffs fail to plead facts concerning

---

[3] *See DPWN Holdings (USA), Inc.* v. *United Air Lines, Inc.*, 747 F.3d 145, 151-52 (2d Cir. 2014) (citation omitted) (general allegations that are "contradicted by more specific allegations in the Complaint" need not be credited).

how the RBC Defendants are "alleged to have conspired, with whom and for what purpose." *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016). Accordingly, their antitrust claims against the RBC Defendants should be dismissed.[4]

Dated: December 12, 2017
New York, New York

Respectfully submitted,

/s/ Alexander J. Willscher
Alexander J. Willscher
Matthew J. Porpora
Stephen H. O. Clarke
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Fax: (212) 558-3588
willschera@sullcrom.com
porporam@sullcrom.com
clarkest@sullcrom.com

*Counsel for Defendants Royal Bank of Canada, RBC Capital Markets, LLC, and RBC Europe Limited*

---

[4] *See, e.g.*, *In re London Silver Fixing, Ltd., Antitrust Litig.*, 213 F. Supp. 3d 530, 575 (S.D.N.Y. 2016) (dismissing antitrust claim against a single defendant where plaintiffs "fail[ed] to identify a single communication between [that defendant] and the [alleged members of the conspiracy] suggestive of manipulative conduct"); *Hinds Cnty.*, 620 F. Supp. 2d at 512 (dismissing claims as to defendants about which the complaint "makes no specific allegations"); *In re Platinum & Palladium Antitrust Litig.*, 2017 WL 1169626, at *51 (S.D.N.Y. Mar. 28, 2017) (same).