# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
|  | : |  |
|  | : |  |
| **In re SSA Bonds Antitrust Litigation** | : | 1:16-cv-03711 |
|  | : |  |
|  | : | ORAL ARGUMENT |
|  | : | REQUESTED |
|  | : |  |

# DEFENDANT SHAILEN PAU'S MEMORANDUM OF LAW
## IN SUPPORT OF HIS MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR LACK OF PERSONAL JURISDICTION

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................2

DISCUSSION ...........................................................................................................................4

I.    NEW YORK'S LONG-ARM STATUTE DOES NOT PERMIT THE
COURT TO EXERCISE JURISDICTION OVER MR. PAU ........................................5

    a.    Mr. Pau Did Not Transact Business in New York................................6

    b.    The Plaintiffs' Cause of Action Does Not "Arise From" Mr. Pau's Alleged
Contacts with New York ........................................................7

II.    THE EXERCISE OF PERSONAL JURISDICTION OVER MR. PAU
WOULD NOT BE COMPATIBLE WITH DUE PROCESS...........................................11

    a.    Mr. Pau Does Not Have "Minimum Contacts" with New York
Sufficient to Support the Exercise of Jurisdiction ................................11

    b.    Traditional Notions of Fair Play and Substantial Justice Require
This Court to Conclude Personal Jurisdiction Is Unreasonable...........................18

III.    PLAINTIFFS' CONSPIRACY ALLEGATIONS DO NOT ESTABLISH
JURISDICTION OVER MR. PAU ..............................................................................20

IV.    CONCLUSION..............................................................................................................23

**TABLE OF AUTHORITIES**

## Cases                                                        Page(s)

*7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*,
    No. 13 Civ. 981 (PGG), 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ............... 15-16, 18

*In re Aluminum Warehouse Antitrust Litig.*,
    90 F. Supp. 3d 219 (S.D.N.Y. 2015) .............................................................. 21

*Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*,
    480 U.S. 102 (1987) ...................................................................................... 19, 20

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    171 F.3d 779 (2d Cir. 1999) ......................................................................... 4

*Beach v. Citigroup Alternative Invs. LLC*,
    No. 12 Civ. 7717 PKC, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014) ................ 11, 17

*Beacon Enters., Inc. v. Menzies*,
    715 F.2d 757 (2d Cir. 1983) ......................................................................... 8

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007) ......................................................................... 5, 11

*In re Braskem S.A. Sec. Litig.*,
    No. 15 Civ. 5132 (PAE), 2017 WL 1216592 (S.D.N.Y. Mar. 30, 2017) ......................... 14

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*,
    137 S. Ct. 1773 (2017) .................................................................................. 13, 17

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ...................................................................................... 11, 12

*Calder v. Jones*,
    465 U.S. 783 (1984) ...................................................................................... 4, 13

*In re Dental Supplies Antitrust Litig.*,
    No. 16 Civ. 696 (BMC), 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ........... 8, 9, 11, 21

*Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*,
    7 N.Y.3d 65 (2006) ....................................................................................... 7

*DirecTV Latin Am., LLC v. Park 610, LLC*,
    691 F. Supp. 2d 405 (S.D.N.Y. 2010) ........................................................... 6, 7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)................................................................................12, 14

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)..........................................................................11, 12, 19

*Jazini v. Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998)...............................................................5, 6, 14

*Jordan v. Bayer Corp.*,
    No. 17-CV-865 (CEJ), 2017 WL 3006993 (E.D. Mo. July 14, 2017) .............17

*Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
    No. 12 Civ. 3419 (GBD), 2017 WL 1113080 (S.D.N.Y. Mar. 10, 2017) .......15

*Laydon v. Mizuho Bank Ltd.*,
    No. 12 Civ. 3419 (GBD), 2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) ........21

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MDL 2262 NRB, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ..............12-13, 21

*Megna v. Biocomp Labs Inc.*,
    166 F. Supp. 3d 493 (S.D.N.Y 2016)................................................................14

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)..........................................................................18, 19, 20

*Paterno v. Laser Spine Inst.*,
    24 N.Y.3d 370 (2014) ...................................................................................6, 7

*In re Platinum & Palladium Antitrust Litig.*,
    No. 14-cv-9391-GHW, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) .........18

*Rush v. Savchuk*,
    444 U.S. 320 (1980)...........................................................................................4

*Selman v. Harvard Med. Sch.*,
    494 F. Supp. 603 (S.D.N.Y. 1980) ...............................................................10

*Spratley v. FCA US LLC*,
    No. 17-CV-0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ..................17

*Sullivan v. Barclays PLC*,
    No. 13-cv-2811 (PKC), 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ............18

*SPV OSUS Ltd. v. UBS AG,*
    114 F. Supp. 3d 161 (S.D.N.Y. 2015)...............................................................5

*In re Terrorist Attacks on Sept. 11, 2001,*
    349 F. Supp. 2d 765 (S.D.N.Y. 2005)..........................................................22

*In re Terrorist Attacks on Sept. 11, 2001,*
    714 F.3d 659 (2d Cir. 2013)..............................................................12, 13, 14

*Walden v. Fiore,*
    134 S. Ct. 1115 (2014)......................................................................13, 14, 21

*World–Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980).........................................................................................12

## **Statutes and Rules**

Fed. R. Civ. P. 4(k)(2)................................................................................15, 16

Fed. R. Civ. P. 12(b)(2)........................................................................................1

N.Y. C.P.L.R. § 302(a)(1).........................................................................*passim*

Defendant Shailen Pau respectfully submits this Memorandum of Law in support of his Motion to Dismiss the Consolidated Amended Class Action Complaint for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Mr. Pau also joins in the Dealer Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim and in the supporting Memorandum of Law (the "Merits Brief"), and in the arguments advanced in those portions of the Foreign Dealer Defendants' Memorandum of Law in Support of Their Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (the "Foreign Dealer Defendants' Brief") that are applicable to Mr. Pau (namely, Sections II, III, and VI).

## PRELIMINARY STATEMENT

Plaintiffs exceed the bounds of personal jurisdiction in attempting to assert claims against Mr. Pau, a foreign national residing in the United Kingdom, based on alleged acts committed in the United Kingdom and involving the trading of bonds issued and traded primarily by actors located outside of the United States. The Consolidated Amended Class Action Complaint, although more than double the length of the complaint that preceded it, fails to advance any non-conclusory allegations sufficient to link Mr. Pau's alleged misconduct to this forum, let alone to Plaintiffs' claims. Significantly, Plaintiffs fail to allege any misconduct by Mr. Pau in or connected to New York or, indeed, to the United States, and fail to connect any trade made by any named Plaintiff with any trade by Mr. Pau, let alone a trade related to any alleged misconduct on his part. Rather, Plaintiffs seek to rely upon generic and conclusory allegations of a global conspiracy affecting the entire market—but these sweeping allegations do not suffice to establish that Mr. Pau has sufficient contacts with this forum to warrant the exercise of personal

jurisdiction. The Court thus lacks personal jurisdiction over Mr. Pau and the claims against him should be dismissed with prejudice.

**BACKGROUND**[1]

The Consolidated Amended Class Action Complaint (the "Complaint" or "CAC") purports to allege a conspiracy to manipulate the market for U.S. dollar-denominated supranational, sovereign, and agency ("SSA") bonds. (CAC ¶ 1.) According to Plaintiffs,[2] the Defendants[3] engaged in collusive and anti-competitive conduct, such as agreeing on prices quoted to customers, orchestrating responses to inquiries from customers, and sharing confidential and sensitive customer information. (*See, e.g., id.* ¶¶ 13, 15.) As discussed in the Merits Brief and at pages 8-9 and 16, *infra*, the specific conduct alleged does not constitute improper collusion but rather the appropriate exchange of market information and sourcing of liquidity among market makers for the bonds in question. And significantly, Plaintiffs' claims, and the alleged conduct attributed to Mr. Pau, have no connection whatsoever to this jurisdiction or to the named Plaintiffs.

The Complaint alleges that the supposed conspiracy to manipulate the SSA bond market was carried out primarily by a group of SSA bond traders (including Mr. Pau) employed by

---

[1] The allegations set forth in the Complaint are reviewed elsewhere at length. *See* Merits Brief. For purposes of the instant motion, only those allegations relevant to this Court's exercise of personal jurisdiction over Mr. Pau are summarized here.

[2] Plaintiffs are two entities: the Iron Workers Pension Plan of Western Pennsylvania, headquartered in Pittsburgh, Pennsylvania ("Iron Workers"), and the Sheet Metal Workers Pension Plan of Northern California, headquartered in Pleasanton, California ("Sheet Metal Workers"). (CAC ¶¶ 28-29.) The Plaintiffs are alleged to have traded U.S. dollar-denominated SSA bonds directly with certain of the Dealer Defendants during the relevant time period. (*Id.*)

[3] The Complaint divides the Defendants into two categories: corporations and other business entities, referred to by Plaintiffs as the "Dealer Defendants," and individual traders, referred to by Plaintiffs as the "Individual Defendants." (CAC ¶ 3.)

Dealer Defendants, all of whom, like Mr. Pau, were based in the United Kingdom, some of whom have been named as defendants in this action (the "Individual Defendants"). (*Id.* ¶¶ 88-94, 124.) The majority of Plaintiffs' sparse jurisdictional allegations as to Mr. Pau consist of broad, conclusory allegations, asserted as to all Defendants as a group. Plaintiffs claim, for example, that this Court may properly exercise personal jurisdiction over Mr. Pau because "each Defendant . . . transacted business throughout the United States, including in this District," had "substantial contacts with the United States, including in this District," and "repeatedly targeted U.S. investors throughout the Class Period, including in this District." (*Id.* ¶¶ 24-25.) Plaintiffs further allege, in the most general of terms, that each Individual Defendant, including Mr. Pau, "traveled to New York to visit with his New York accounts, promote his USD SSA bond trading services, and maintain relationships with his New York-based customers" (*id.* ¶¶ 89-93), "engaged in trades of USD SSA bonds with members of the Class in . . . New York at artificial prices due to the conspiracy" (*id.* ¶¶ 90, 92-93), "periodically visit[ed] New York to meet with U.S.-based investors" (*id.* ¶ 327), and "[d]uring the regular trips . . . to New York, . . . committed acts in furtherance of the conspiracy" (*id.* ¶ 330).

The few allegations Plaintiffs advance relating to Mr. Pau's specific contacts with the forum undercut rather than support any assertion of jurisdiction over Mr. Pau. Plaintiffs allege that Mr. Pau: ██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ These allegations establish that Mr.

Pau's sporadic activities in and connected to New York were mundane and innocuous and that

Mr. Pau and his supposed co-conspirators engaged not in collusive and manipulative conduct but in conduct entirely suited to their roles as market makers, such as sourcing liquidity and exchanging market information.

Plaintiffs conspicuously do not identify *any* trade between a named Plaintiff and Mr. Pau, let alone a trade between a named Plaintiff and Mr. Pau affected by the supposed conspiracy at the heart of their Complaint, or a trade between a named Plaintiff and Mr. Pau with any connection to New York. Lacking any connection between their claims and Mr. Pau's alleged contacts with the forum, Plaintiffs resort to the assertion that the Defendants' supposed manipulation of the SSA bond market affected the price of *every* transaction entered into by the Defendants over a more than 10-year period (*id.* ¶¶ 20, 298, 299, 404), but do not plead any facts to support this implausible assertion. *See* Merits Brief.

Accordingly, the Complaint's scant, general, and conclusory allegations do not satisfy the Plaintiffs' obligation to make a *prima facie* showing that Mr. Pau is subject to this Court's jurisdiction and the claims against him should, accordingly, be dismissed.

## DISCUSSION

A plaintiff bears the burden of establishing that the court has jurisdiction over each defendant against whom the plaintiff seeks to bring suit. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999); *see also Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("The requirements of *International Shoe* . . . must be met as to each defendant over whom a state court exercises jurisdiction."). Group pleading—pleading jurisdictional facts broadly applicable to multiple defendants—is not sufficient: "[e]ach defendant's contacts with the forum [s]tate must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). In order to survive a motion to dismiss for lack of personal jurisdiction, the plaintiff must make a

prima facie showing that jurisdiction exists by alleging facts that, if true, would suffice to establish that (i) New York's long-arm statute provides for personal jurisdiction and (ii) the exercise of jurisdiction comports with the Due Process Clause of the United States Constitution. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242, 244-45 (2d Cir. 2007).

In assessing the sufficiency of a plaintiff's jurisdictional allegations, courts must construe all pleadings and affidavits in the light most favorable to the plaintiff, but are "not bound to accept as true a legal conclusion couched as a factual allegation." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998); *see also SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) (Rakoff, J.) ("[R]esolving all doubts in the plaintiff's favor is not the same as blindly crediting all allegations regardless of their factual support.") (internal citation and quotation marks omitted).

## I. NEW YORK'S LONG-ARM STATUTE DOES NOT PERMIT THE COURT TO EXERCISE JURISDICTION OVER MR. PAU

Plaintiffs invoke Section 302(a)(1) of New York's long-arm statute as the jurisdictional basis over Mr. Pau. (CAC ¶ 27 ("The Court also has jurisdiction over Defendants pursuant to New York's C.P.L.R. § 302, because Defendants . . . transact business in New York State. . . .").) Under Section 302(a)(1), "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state," if the cause of action "aris[es]" from the non-domiciliary's transaction of business in the state. Here, then, the Court may exercise personal jurisdiction over Mr. Pau under Section 302(a)(1) only if it determines that (1) Plaintiffs have adequately alleged that Mr. Pau "transacts any business" in New York and (2) Plaintiffs' cause of action "aris[es] from" such transactions. N.Y. C.P.L.R. § 302(a)(1); *see also Best Van Lines*,

490 F.3d at 246. The Plaintiffs' allegations with respect to Mr. Pau fail to satisfy either part of this two-part test.

### a. Mr. Pau Did Not Transact Business in New York

A defendant "transacts business" within the meaning of Section 302(a)(1) only if he actively and "on his own initiative . . . project[s] himself into New York to engage in a sustained and substantial transaction of business" such that he can be said to have "purposefully avail[ed] himself of the privilege of conducting activities within New York." *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 417, 420 (S.D.N.Y. 2010) (Marrero, J.) (internal citation, quotation marks and alterations omitted); *see also Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014) ("[W]here the non-domiciliary seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship, [he] can be said to transact business within the meaning of CPLR 302(a)(1)."). None of the allegations set forth in the Complaint satisfy this standard. Most of the allegations regarding Mr. Pau's supposed contacts with New York are general, conclusory, and leveled against all Defendants or Individual Defendants as a group. *See* page 3, *supra*. Such conclusory allegations with no supporting facts cannot sustain a finding of personal jurisdiction, *Jazini*, 148 F.3d at 184-85—and the absence of any supporting facts is particularly striking in this case, ████████████████████████████████ ████████████████████████████████████████████████████████████████

The few specific factual allegations relating to Mr. Pau's supposed contacts with New York also fall far short. ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████ Such incidental contact with New York does

not demonstrate purposeful availment of the privilege of conducting activities in the state. *See*

*DirecTV*, 691 F. Supp. 2d at 419-21 (holding that foreign defendant's communications with a

New York-based employee of the plaintiff, a Delaware corporation, to discuss a proposed joint

venture whose "center of gravity" was outside New York did not establish purposeful

availment).

Likewise, ████████████████████████████████████████

██████████████████████████ does not establish that he "transacted business" in New

York within the meaning of Section 302(a)(1) absent any allegation that Mr. Pau himself

initiated such trades and negotiations. *See Paterno,* 24 N.Y.3d at 378 (rejecting the application

of the long-arm statute where the New York-based plaintiff initiated contact with the out-of-state

defendant, and the defendant's contacts with the plaintiff were merely "responsive in nature");

*c.f. Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71-72 (2006) (concluding that

defendant "transacted business" in New York where its Montana-based employee "knowingly

initiat[ed] and pursu[ed]" a transaction with a New York counterparty, reaching out to the

plaintiff's New York-based employee to propose the trade, and thus projected himself into New

York).

**b. The Plaintiffs' Cause of Action Does Not "Arise From" Mr. Pau's Alleged Contacts with New York**

Plaintiffs even more plainly fail to satisfy the second part of the long-arm statute's two-

part test: they fail to plead that their antitrust claims "arise from" Mr. Pau's New York contacts.

Under New York's long-arm statute, a cause of action arises from the defendant's contacts with

New York only if the defendant's actions "'bear a substantial relationship to the transaction out of which the instant cause of action arose[,]'" that is, where there is a "'strong nexus' or a 'direct relation' between plaintiff's claim and the defendant's New York conduct." *See In re Dental Supplies Antitrust Litig.*, 16 Civ. 696 (BMC), 2017 WL 4217115, at *6 (E.D.N.Y. Sept. 20, 2017) (quoting *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir. 1983)).

Mr. Pau's alleged contacts with New York, *see* pages 3-4, *supra*, are disconnected from Plaintiffs' antitrust cause of action. Plaintiffs do not allege that Mr. Pau engaged in any misconduct

[REDACTED] Mr. Pau's alleged contacts with New York thus reflect benign and appropriate activities by a market maker, not anti-competitive or manipulative activity, and do not, then, relate to Plaintiffs' antitrust claims.

Mr. Pau's alleged New York-based activity fails to establish a basis for jurisdiction under New York's long-arm statute for another reason: none of his alleged New York conduct concerns either of the named Plaintiffs. *See In re Dental Supplies Antitrust Litig.*, 2017 WL

4217115, at *6 ("[P]laintiffs' claim cannot arise from [the defendant's] sales to New York dentists because [the defendant] did not make any sales to any named plaintiff in New York."). Indeed, Plaintiffs not only fail to allege that they engaged in any transactions in or connected to New York with Mr. Pau, they fail to allege that they engaged in any transactions with Mr. Pau *at all*.

Despite the fact that, of all the parties to this litigation, Plaintiffs are best positioned to identify their own SSA bond transactions with the Defendants, Plaintiffs identify just one: █

████████████████████████████████████████████████████████████████

Plaintiffs do not, however, allege that this trade was negotiated with or effected through Mr. Pau, and in fact, elsewhere in the Complaint Plaintiffs specifically allege that they traded with Defendants only after making "inquiries . . . with *U.S.-based* salespeople working at the Dealer Defendants"—thus eliminating any plausible inference that Mr. Pau, a London-based trader, priced the June 2, 2011 transaction. [4] (*Id.* ¶¶ 28-29 (emphasis added).) ████████████████

████████████████████████████████████████████████████████████

████████████████████████

As courts in the Second Circuit have long recognized, the mere fact that *others* may have been injured by a defendant's activities in the forum does not confer jurisdiction under New York State's long-arm statute over plaintiffs whose claims have no connection to the forum. *See Selman v. Harvard Med. Sch.*, 494 F. Supp. 603, 613 n.6 (S.D.N.Y. 1980) (Duffy, J.), *aff'd*, 636 F.2d 1204 (2d Cir. 1980) ("Plaintiff contends that injuries to and facts relevant to other members of the class should be used in determining jurisdiction. This argument can be summarily

---

[4] ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

disposed of. . . . [T]he named class representative himself must satisfy all jurisdictional prerequisites before the action can go forward."); *In re Dental Supplies Antitrust Litig.,* 2017 WL 4217115, at *6; *Beach v. Citigroup Alternative Invs. LLC*, No. 12 Civ. 7717 PKC, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014) (Castel, J.) ("Contacts with unnamed class members may not be used as a jurisdictional basis.").

Plaintiffs' failure to allege any suit-related activity by Mr. Pau in this forum, and that they ever transacted with—let alone were injured by—Mr. Pau, in the forum or anywhere else, is fatal to their attempt to establish jurisdiction over Mr. Pau under N.Y. C.P.L.R. § 302(a)(1).

## II. THE EXERCISE OF PERSONAL JURISDICTION OVER MR. PAU WOULD NOT BE COMPATIBLE WITH DUE PROCESS

Even if the Court were to find personal jurisdiction under New York's long-arm statute, dismissal would nevertheless be required, because it would offend traditional notions of due process to force Mr. Pau, a European national and resident, to defend claims in New York relating to his work in the United Kingdom and brought by out-of-state plaintiffs as to whom he is not alleged to have transacted business, let alone caused harm. *See Best Van Lines*, 490 F.3d at 243-44 (because New York's long-arm statute is not co-extensive with the Due Process Clause of the United States Constitution, a court sitting in New York must conduct "two separate inquiries, one statutory and one constitutional").

### a. Mr. Pau Does Not Have "Minimum Contacts" with New York Sufficient to Support the Exercise of Jurisdiction

The Due Process Clause of the United States Constitution "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). A state may thus authorize its courts to exercise personal jurisdiction over an out-of-state defendant

only if "the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe*, 326 U.S. at 316). Stated differently, due process requires that a defendant's "conduct and connection with the forum [s]tate [must be] such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

When considering whether a defendant's contacts with the forum state are such that he should expect to be subject to the state's jurisdiction, courts draw a distinction between general, or "all-purpose," jurisdiction, and specific, or "case-linked," jurisdiction. *Goodyear*, 564 U.S. at 919; *see also In re Terrorist Attacks on Sept. 11, 2001,* 714 F.3d 659, 673-74 (2d Cir. 2013) ("To determine whether a defendant has the necessary 'minimum contacts,' a distinction is made between 'specific' and 'general' personal jurisdiction."). A court may assert general jurisdiction over a defendant whose contacts with the state are so "continuous and systematic" as to render the defendant "essentially at home in the forum [s]tate." *Goodyear*, 564 U.S. at 919. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* at 924. If the defendant is subject to the court's general jurisdiction, the court may adjudicate any cause of action against the defendant, even a cause of action unrelated to the defendant's contacts with the forum state. *In re Terrorist Attacks*, 714 F.3d at 674.

Specific jurisdiction, on the other hand, arises from the events giving rise to the suit. *Id.* at 673-74. It exists when the defendant has "'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *In re Terrorist Attacks*, 714 F.3d at 674 (quoting *Burger King*, 471 U.S. at 472-73). In the Second Circuit, litigation is said to "arise out of or relate to" the defendant's forum-

directed activities only if there is a "'but for' connection between the . . . forum-directed activities and [the plaintiff's] claim." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *27-28 (S.D.N.Y. Oct. 20, 2015) (Buchwald, J.). The fact that harm in the forum state may be foreseeable to the defendant when he engages in the conduct alleged does not suffice to establish specific personal jurisdiction: the defendant's suit-related conduct must be "'expressly aimed'" at the forum state. *In re Terrorist Attacks*, 714 F.3d at 674 (quoting *Calder*, 465 U.S. at 789). In recent years, the Supreme Court has emphasized the stringent requirements for finding specific jurisdiction, and has consistently restricted the circumstances under which courts may exercise case-linked jurisdiction consistent with the Constitution's due process requirements. *See Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1781-82 (2017) (holding that California courts lacked specific jurisdiction over the claims of nonresident plaintiffs whose claims did not arise from any activities by the defendants or injury to the plaintiffs in the state, and rejecting California's so-called "sliding scale approach" to specific jurisdiction); *Walden v. Fiore*, 134 S. Ct. 1115, 1126 (2014) (holding that Nevada courts lacked specific jurisdiction over out-of-state defendant who knew that his allegedly tortious conduct would have an impact on plaintiffs in Nevada, but had no other contacts with the state).

Here, Plaintiffs' meager and conclusory allegations relating to Mr. Pau's contacts with New York are wholly inadequate to satisfy their burden of establishing that this Court's assertion of jurisdiction over Mr. Pau would comport with due process. As an initial matter, Mr. Pau is not subject to the Court's general jurisdiction. Plaintiffs concede that Mr. Pau resides in London, United Kingdom (CAC ¶ 93), and allege no facts indicating that Mr. Pau has had such

"continuous and systematic" contacts with New York so as to render him "essentially at home" in New York. *See Goodyear*, 564 U.S. at 919.

Plaintiffs' allegations fall far short of establishing a basis for specific jurisdiction as well. Plaintiffs fail to allege facts that, if true, would establish that Mr. Pau "purposefully directed" or "expressly aimed" any suit-related activity at residents of New York. *In re Terrorist Attacks*, 714 F.3d at 674; *Walden*, 134 S. Ct. at 1121. As set forth above, most of the allegations in the Complaint that purport to connect Mr. Pau to the state of New York are impermissibly general, conclusory, and asserted as to all Defendants collectively. *See page 3, supra.* Courts in this district regularly conclude that such allegations "lack the factual specificity necessary to confer jurisdiction." *Jazini*, 148 F.3d at 184-85; *see In re Braskem S.A. Sec. Litig.*, 15 Civ. 5132 (PAE), 2017 WL 1216592, at *26-*27 (S.D.N.Y. Mar. 30, 2017) (Engelmayer, J.) (concluding that the plaintiffs' "attempt[s] to tie" the foreign defendant to "U.S. filings" through allegations that the defendant "had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the dissemination" of the U.S. filings, were too "sweeping and conclusory" to support personal jurisdiction); *Megna v. Biocomp Labs Inc.*, 166 F. Supp. 3d 493, 500 (S.D.N.Y 2016) (Marrero, J.) (plaintiffs' allegation that the defendant "direct[ed] substantial and continuous activities at the residents of New York" was a "conclusory assertion . . . [and] not sufficient to establish personal jurisdiction").

As for the Plaintiffs' few specific factual allegations purporting to connect Mr. Pau to New York, discussed at pages 3-4 and 8-9, *supra*, they fail to give rise to specific jurisdiction for the same reason they fail to establish jurisdiction under New York's long-arm statute. Mr. Pau is not alleged to have "purposefully directed" any "suit-related" activities—that is, the alleged collusive and anti-competitive activities that gave rise to Plaintiffs' claims—at New York. Mr.

Pau's alleged trips to New York do not suffice to confer jurisdiction in the absence of any factual

allegations that the trips were used to plan or effectuate the alleged conspiracy. *See Laydon v.*

*Bank of Tokyo-Mitsubishi UFJ, Ltd.,* No. 12 Civ. 3419 (GBD), 2017 WL 1113080, at *4

(S.D.N.Y. Mar. 10, 2017) (Daniels, J.) (allegation that defendant spent a long weekend in Las

Vegas with an alleged co-conspirator did not suffice to confer jurisdiction where plaintiffs "plead

no facts to support their allegation that the trip was used to 'plan [the defendants'] manipulation"

of Yen LIBOR and Euroyen LIBOR). ███████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████ Accordingly, Mr.

Pau's alleged contacts with New York cannot provide a constitutionally sufficient basis for the

Court to exercise specific jurisdiction over Mr. Pau.

Nor do Plaintiffs' allegations that Mr. Pau aimed activities at *the United States* generally

provide a basis for personal jurisdiction. To the extent Plaintiffs seek to assert a fallback basis for

jurisdiction predicated on Federal Rule of Civil Procedure 4(k)(2), such an attempt would fail.

Plaintiffs do not satisfy the first prerequisite for application of Rule 4(k)(2) because they fail to

certify that Mr. Pau is not subject to jurisdiction in any state's courts, and in fact explicitly plead

the opposite: that Mr. Pau is subject to jurisdiction in New York's courts. *See* Fed. R. Civ. P.

4(k)(2) (providing for jurisdiction over a defendant who is not subject to jurisdiction in any

state's courts of general jurisdiction but whose contacts with the United States render the

assertion of jurisdiction compatible with due process). As courts in this district have held, a

plaintiff seeking the application of Rule 4(k)(2) bears the burden of "certify[ying] that [the]

[d]efendants are not subject to jurisdiction in any other state." *7 W. 57th St. Realty Co., LLC* v.

*Citigroup, Inc.*, No. 13 Civ. 981 (PGG), 2015 WL 1514539, at *13 (S.D.N.Y. Mar. 31, 2015)

(Gardephe, J.) (declining to apply Rule 4(k)(2) where plaintiffs failed to "certif[y] that Defendants are not subject to jurisdiction in any other state" and thus failed to "allege[] all of the elements required for the exercise of personal jurisdiction under Rule 4(k)(2)"); *Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 731 (S.D.N.Y. 2010) (Keenan, J.) (holding that, "although the Court ha[d] already found that Defendants [were] not subject to personal jurisdiction in New York, Plaintiffs [had] not certified that Defendants [were] not subject to jurisdiction in any other state" and thus were not entitled to the application Rule 4(k)(2)).

Indeed, Plaintiffs did not invoke Rule 4(k)(2) for good reason, because they would fare no better trying to establish jurisdiction over Mr. Pau based on his alleged contacts with the United States than they do trying to establish jurisdiction based on his alleged contacts with New York. ██████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████ In short, nothing in the Complaint

reflects that Mr. Pau "purposefully directed" suit-related—that is, manipulative—conduct at the United States.

Finally, even if Mr. Pau's alleged contacts with New York or the United States amounted to "suit-related" conduct—and they do not—the Court would still lack specific jurisdiction over Mr. Pau, because Plaintiffs do not allege that they were injured by any conduct in which Mr. Pau is alleged to have engaged. In *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, a mass tort suit involving claims by both in-state and out-of-state plaintiffs, the Supreme Court held that the mere fact that *others* may have been injured by the defendants' activities in the forum state did not allow the state to assert specific jurisdiction over plaintiffs whose claims had no connection to the forum, and thus dismissed the non-resident plaintiffs' claims. 137 S. Ct. at 1781-82; *see also Beach*, 2014 WL 904650, at *6; *Spratley v. FCA US LLC*, No. 17-CV-0062, 2017 WL 4023348, at *6-7 (N.D.N.Y. Sept. 12, 2017) (concluding that *Bristol-Myers* compelled the dismissal of out-of-state plaintiffs' claims that had no connection to the defendant's contacts with New York); *Jordan v. Bayer Corp.*, No. 17-CV-865 (CEJ), 2017 WL 3006993 (E.D. Mo. July 14, 2017) (relying on *Bristol-Myers* to dismiss the claims of non-Missouri plaintiffs who did not allege any injury in Missouri, and rejecting the argument that the defendant's "general exercise of business activities in the state [could] create an adequate link between the claims and the Missouri forum"). The Supreme Court's holding in *Bristol-Myers* is equally applicable here, where Plaintiffs do not identify a single manipulated trade between a named Plaintiff and Mr. Pau—or any other Defendant—and thus fail to identify any injury in New York or anywhere in the United States.

Unable to allege that Mr. Pau "purposefully directed" any "suit-related" activity at New York or the United States, Plaintiffs fall back on generic allegations that his misconduct affected

financial instruments traded in the United States.  Judges in this District have repeatedly rejected the exercise of personal jurisdiction over foreign defendants on the basis of similarly broad and non-specific allegations of misconduct with supposed effects on global markets.  *See, e.g., In re Platinum & Palladium Antitrust Litig.*, No. 14-cv-9391-GHW, 2017 WL 1169626, at *44 (S.D.N.Y. Mar. 28, 2017) (Woods, J.) (concluding that the exercise of personal jurisdiction was not warranted where plaintiffs alleged that foreign defendants' supposed manipulation had "harmful effects on U.S.-based exchanges" but failed to make a showing that the defendants "expressly aimed" conduct at the United States); *Sullivan v. Barclays PLC*, No. 13-cv-2811 (PKC), 2017 WL 685570, at *43-*48 (S.D.N.Y. Feb. 21, 2017) (Castel, J.) (holding that the alleged presence of U.S. victims was insufficient to confer jurisdiction where plaintiffs failed to allege that defendants' scheme to manipulate the Euribor was aimed at the United States); *7 W. 57th St. Realty Co.*, 2015 WL 1514539, at *10-*11 (concluding that the exercise of personal jurisdiction was not warranted where plaintiffs alleged that harm to U.S.-based plaintiffs was a foreseeable result of the foreign defendants' supposed LIBOR manipulation but failed to allege that the defendants "expressly aimed" their conduct at New York or its municipal bond markets).

Plaintiffs have thus failed to allege that Mr. Pau has sufficient minimum contacts with the state of New York or the United States such that the maintenance of a suit against him in this Court would be compatible with due process.

### b. Traditional Notions of Fair Play and Substantial Justice Require This Court to Conclude Personal Jurisdiction Is Unreasonable

Even if a defendant has "minimum contacts" with the forum state sufficient to justify the court's exercise of general or specific jurisdiction, the court separately must determine whether the exercise of jurisdiction is consistent with "'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of the particular case." *Metro.*

*Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (quoting *Int'l Shoe*, 326 U.S. at 316). Here, for the reasons set out in Sections I and II.a, *supra*, the Plaintiffs have failed to establish that jurisdiction over Mr. Pau is permissible under New York's long arm statute or the minimum contacts analysis of the Due Process Clause of the United States Constitution. But even if the Court were to find that New York's long-arm statute provides for jurisdiction over Mr. Pau, and that sufficient minimum contacts exist to satisfy the first prong of the due process analysis, the exercise of jurisdiction would nevertheless not be reasonable in this case.

When conducting a "reasonableness" inquiry, the Court must "consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. It must also weigh . . . 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several [s]tates in furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 113 (1987) (quotation marks and citations omitted). Furthermore, "the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing [on minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Metro. Life Ins. Co.*, 84 F.3d at 569 (internal quotation marks and citation omitted). Thus, where, as here, the defendant is a foreign national residing and working in the United Kingdom with no discernible connection to the United States, the equitable factors set forth in *Asahi* are given great weight—and in this case, they militate decisively against the exercise of jurisdiction.

First, litigation in a foreign legal system would impose a significant hardship on Mr. Pau. This "burden . . . should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114. Second, New

York State does not have a significant interest in adjudicating the Plaintiffs' claims against Mr. Pau: neither of the Plaintiffs are New York residents (CAC ¶¶ 28-29), the Plaintiffs' claims involve the trading of bonds issued and traded primarily by international actors (*id.* ¶¶ 96-99), and Plaintiffs do not allege that any of the conduct that serves as the basis for their claims occurred in this state. *See Metro. Life Ins. Co.*, 84 F.3d at 574 (concluding that this factor "weigh[ed] heavily against the reasonableness of the court's exercise of . . . jurisdiction" where the plaintiff was incorporated in and had its principal place of business in another state, and the acts and omissions that served as the bases for the suit occurred in other states).

Finally, in evaluating the interstate judicial system's interest in obtaining the most efficient resolution, courts consider where witnesses and evidence are likely to be located. *Id.* at 574-75. Here, no allegation suggests that witnesses or other evidence are located in New York. Accordingly, "[c]onsidering the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum State, the exercise of personal jurisdiction by a [New York] court over [Mr. Pau] in this instance would be unreasonable and unfair." *Asahi*, 480 U.S. at 116; *see also id.* at 115 ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.") (internal quotation marks and citation omitted).

## III. PLAINTIFFS' CONSPIRACY ALLEGATIONS DO NOT ESTABLISH JURISDICTION OVER MR. PAU

Any effort to establish jurisdiction over Mr. Pau based on his supposed involvement with the alleged conspiracy must also fail. As an initial matter, allegations of conspiracy do not supplant or alter the due process requirements for the assertion of jurisdiction. A doctrine of "conspiracy jurisdiction" that would permit the exercise of personal jurisdiction over a defendant based solely on the conduct of a third party, including a co-conspirator, is inconsistent with long-

standing Second Circuit precedent[5] and the Supreme Court's admonition in *Walden v. Fiore* that jurisdiction is proper only when "the defendant *himself*" creates contacts with the forum state. *Walden*, 134 S. Ct. at 1122 (internal quotation marks and citation omitted); *see also id.* at 1123 ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). Consequently, following the Supreme Court's tightening of personal jurisdiction standards, *see* page 13, *supra,* courts in this district have reaffirmed that "conspiracy jurisdiction" does not provide a basis for conferring personal jurisdiction when it would not otherwise comport with due process. *See In re Aluminum Warehouse Antitrust Litig.*, 90 F. Supp. 3d 219, 227, 232 (S.D.N.Y. 2015) (Forrest, J.) ("A due process inquiry is always required."); *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *7 ("[I]t is highly unlikely that any concept of conspiracy jurisdiction survived the Supreme Court's ruling in *Walden v. Fiore.*"); *Laydon v. Mizuho Bank Ltd.*, No. 12 Civ. 3419 (GBD), 2015 WL 1515358, at *3 (S.D.N.Y. Mar. 31, 2015) (Daniels, J.) ("Courts have been increasingly reluctant to extend this [conspiracy] theory of jurisdiction beyond the context of New York's long-arm statute.").

Separate and apart from the due process deficiencies in their conspiracy theory, Plaintiffs fail to meet the basic pleading requirements necessary to establish personal jurisdiction based on a conspiracy theory under New York law. "[A] bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough," and "the mere presence of one conspirator . . . [does not] confer personal jurisdiction over another alleged conspirator." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6243526, at *29 (internal quotation marks and citation omitted). Rather, acts committed in New York by the co-

---

[5] *See, e.g., Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1341 n.11, 1343 (2d Cir. 1972), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010).

conspirator of an out-of-state defendant can subject the out-of-state defendant to jurisdiction under New York's long-arm statute only if the plaintiff: (1) "make[s] a prima facie showing of conspiracy"; (2) "allege[s] specific facts warranting the inference that the defendant was a member of the conspiracy"; and (3) "show[s] that the defendant's co-conspirator committed a tort in New York." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 805 (S.D.N.Y. 2005) (Casey, J.). With respect to the second of these three requirements, "[t]o warrant the inference that a defendant was a member of the conspiracy, Plaintiffs must show that (a) the defendant had an awareness of the effects in New York of [the co-conspirators'] activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control or at the request of or on behalf of" the out-of-state defendant." *Id.* (internal quotation marks and citations omitted).

Here, the Plaintiffs have failed to allege facts sufficient to satisfy any of the three requirements necessary to establish personal jurisdiction on a conspiracy theory. With respect to the first and third of the requirements, as demonstrated in the Merits Brief, the Complaint does not make out a prima facie showing of a conspiracy to manipulate the U.S.-dollar denominated SSA bond market, *or* adequately allege that any co-conspirator committed a tort in New York. As for the second requirement, because Plaintiffs have failed adequately to allege that any of the Defendants—or any non-Defendant co-conspirator—engaged in activity in New York at Mr. Pau's direction or on his behalf, they have plainly failed to allege facts sufficient to warrant the inference that Mr. Pau was a member of a conspiracy under New York law. The allegations of conspiracy thus do not provide a jurisdictional hook with which Plaintiffs may drag Mr. Pau into a lawsuit in this forum.

## <u>CONCLUSION</u>

For the foregoing reasons the Complaint should be dismissed with prejudice as against

Mr. Pau.

Dated: New York, New York
      December 12, 2017

Respectfully Submitted,

**MORVILLO ABRAMOWITZ GRAND IASON
& ANELLO P.C.**

**By:**   /s/ Judith L. Mogul
      Judith L. Mogul
      Richard F. Albert
      Ashley C. Burns
      Nicole L. Buseman

      565 Fifth Avenue
      New York, New York 10017
      Tel. 212.856.9600
      Fax. 212.856.9494
      jmogul@maglaw.com
      ralbert@maglaw.com
      aburns@maglaw.com
      nbuseman@maglaw.com

      *Attorneys for Defendant Shailen Pau*