**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------x

IN RE:

SSA BONDS ANTITRUST LITIGATION        1:16-cv-03711-ER

*This Document Relates To All Actions*        ORAL ARGUMENT
REQUEST

---------------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT AMANDEEP SINGH MANKU'S MOTION TO DISMISS

# TABLE OF CONTENTS

Preliminary Statement ................................................................................................. 1

Background ...................................................................................................................... 2

Legal Standard ............................................................................................................... 4

Argument ......................................................................................................................... 5

   I.    Manku Is Not Subject to General Jurisdiction. ................................................... 5

  II.   Manku Is Not Subject to Specific Jurisdiction ................................................... 6

     A. New York Law Supplies the Only Available Statutory Basis for Exercising Specific Jurisdiction over Manku ....................................................................... 6

     B. Plaintiffs Have Not Alleged Facts to Support Specific Jurisdiction Under New York Law. ................................................................................................................ 7

     C.   Exercising Specific Jurisdiction Would Violate Due Process ................................... 15

  III.   Plaintiffs' Claim Should Be Dismissed with Prejudice. ............................................ 24

Conclusion ...................................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*7 W. 57th St. Realty Co., v. Citigroup, Inc.,*
  No. 13-cv-0981, 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ............................... 2, 6, 14, 20

*In re Aluminum Warehousing Antitrust Litig.*,
  90 F. Supp. 3d 219 (S.D.N.Y 2015) ....................................................................................... 22

*AmTrust Fin. Servs., Inc. v. Lacchini*,
  No. 16-cv-2575, 2017 WL 728262 (S.D.N.Y. Feb. 23, 2017) .................................... 4, 6, 15, 20

*Asahi Metal Industry Co., Ltd.,*
  480 U.S. 102, 115 (1987) ................................................................................................ 23, 24

*Beach v. Citigroup Alternative Investments LLC*,
  No. 12-cv-7717, 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) ...................................... 11, 16, 18

*Beatie & Osborn LLP v. Patriot Scientific Corp.*,
  431 F. Supp. 2d 367 (S.D.N.Y. 2006) ...................................................................................... 8

*Bensusan Rest. Corp. v. King,*
  126 F.3d 25 (2d Cir. 1997) ................................................................................................... 12

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007) ................................................................................................... 8

*Biz2Credit, Inc. v. Kular*,
  No. 14-cv-8223, 2015 WL 2445076 (S.D.N.Y. May 21, 2015) ...................................... 7, 12, 14

*Bracken v. MH Pillars Inc.,*
  No. 15-cv-7302, 2016 WL 7496735 (S.D.N.Y. Dec. 29, 2016) ............................................... 12

*In re Braskem S.A. Sec. Litig.,*
  246 F. Supp. 2d 731, 769 (S.D.N.Y. 2017) .............................................................................. 19

*Bristol-Myers Squibb Co. v. Superior Court of California,*
  137 S. Ct. 1773 (2017) ............................................................................................... 16, 17, 18

*Chew* v. *Dietrich*,
  143 F.3d 24 (2d Cir. 1998) ................................................................................................... 19

*In re Dental Supplies Antitrust Litig.*,
  No. 16-cv-0696, 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) .................................. 10, 13, 23

*DirecTV Latin Am., LLC v. Park 610, LLC*,

   691 F. Supp. 2d 405 (S.D.N.Y. 2010) ................................................................................. 11

*Ehrenfield v. Bin Mahfouz*,

   No. 04-cv-9641, 2006 WL 1096816 (S.D.N.Y. Apr. 26, 2006) ............................................. 24

*E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co.*,

   No. 00-cv-8670, 2003 WL 22064259 (S.D.N.Y. Sept. 5, 2003) ............................................. 9

*FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.,,*

   No. 16-cv-5263, 2017 WL 3600425 (S.D.N.Y. Aug. 18, 2017) .............................. 2, 17, 20, 22

*Hau Yin To v. HSBC Holdings, PLC*,

   700 F. App'x 66 (2d Cir. 2017) ............................................................................................. 10

*Hill v. HSBC Bank plc*,

   207 F. Supp. 3d 333 (S.D.N.Y. 2016) .............................................................................. 11, 12

*Hood v. Ascent Med. Corp.*,

   691 F. App'x 8, (2d Cir. 2017) ......................................................................................... 11, 12

*Hood v. Ascent Med. Corp.*,

   No. 13-cv-628, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd*, 691 F. App'x 8 (2d Cir.

   2017) ...................................................................................................................................... 14

*Indelible Media Corp. v. Meat & Potatoes, Inc.*,

   No. 12-cv-0978, 2012 WL 3893523 (S.D.N.Y. Sept. 7, 2012) ............................................. 14

*Jazini* v. *Nissan Motor Co.*,

   148 F.3d 181 (2d Cir. 1998) .............................................................................................. 4, 24

*Keeton* v. *Hustler Magazine, Inc.*,

   104 S. Ct. 1473 (1984) .......................................................................................................... 16

*King Cnty., Wash. v. IKB Deutsche Industriebank, AG*,

   769 F. Supp. 2d 309 (S.D.N.Y. 2011) ................................................................................ 9, 24

*Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.,*

   No. 12-cv-3419, 2017 WL 1113080 (S.D.N.Y. Mar. 10, 2017) ........................................ 17, 22

*Laydon* v. *Mizuho Bank, Ltd.*,

   No. 12-cv-3419, 2015 WL 1515358, at *2 (S.D.N.Y. Mar. 31, 2015) ................................. 2, 20

*In re LIBOR-Based Financial Instruments Antitrust Litig.,*

   No. 11-mdl-2262, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) .................................. 2, 19, 20

*In re LIBOR-Based Financial Instruments Antitrust Litig.,*
  No. 11-mdl-2262, 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016) ........................................ 19, 22

*Licci ex rel. Licci v. Lebanese Canadian Bank,*
  732 F.3d 161 (2d Cir. 2013) ............................................................................................. 18, 23

*Martin* v. *Eide Bailly LLP*,
  No. 15-cv-1202, 2016 WL 4496570 (S.D. Ind. Aug. 26, 2016) ............................................ 21

*Metro Life Ins. Co.* v. *Robertson-Ceco Corp.,*
  84 F.3d 560 (2d Cir. 1996) ............................................................................................... 23, 24

*In re N. Sea Brent Crude Oil Futures Litig.,*
  No. 13-md-02475, 2017 WL 2535731 (S.D.N.Y. June 8, 2017) ............................................ 23

*Penguin Group (USA) Inc. v. Am. Buddha,*
  609 F.3d 30 (2d Cir. 2010) ................................................................................................... 4, 15

*In re Platinum & Palladium Antitrust Litig.,*
  No. 14-cv-9391, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) ........................................... 2, 20

*Paterno v. Laser Spine Inst.,*
  24 N.Y.3d 370 (N.Y. 2014) ........................................................................................................ 8

*Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*,
  721 F.3d 95, 112 (2d Cir. 2013) ...................................................................................... 11, 16

*Porina* v. *Marward Shipping Co.*,
  521 F.3d 122 (2d Cir. 2008) ...................................................................................................... 6

*Reich v. Lopez*,
  858 F.3d 55 (2d Cir. 2017) ........................................................................................................ 5

*RSM Prod. Corp. v. Fridman*,
  643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) ................. 4, 9, 12

*Sae Han Sheet Co. v. Eastman Chem. Corp.,*
  No. 17-cv-2734, 2017 WL 4769394, (S.D.N.Y. Oct. 19, 2017) ............................................ 17

*Selman v. Harvard Med. Sch.,*
  494 F. Supp. 603 (S.D.N.Y. 1980), aff'd, 636 F.2d 1204 (2d Cir. 1980) .......................... 11, 16

*In re Shulman Transport Enterprises Inc.,*
  744 F.2d 293 (2d Cir. 1984) ................................................................................................... 22

*Sonterra Capital Master Fund Ltd.* v. *Credit Suisse Group AG,*

2017 WL 4250480 (S.D.N.Y. Sept. 25, 2017) ........................................................................ 21

*SPV OSUS Ltd. v. UBS AG*,

114 F. Supp. 3d 161 (S.D.N.Y. 2015) ........................................................................ 5

*Sullivan v. Barclays PLC*,

No. 13-cv-2811, 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ................................ 2, 16, 20, 24

*Tamam v. Fransabank Sal*,

677 F. Supp. 2d 720 (S.D.N.Y. 2010) ........................................................................ 7

*In re Terrorist Attacks on September 11, 2001*,

349 F. Supp. 2d 765 (S.D.N.Y. 2005) ........................................................................ 13

*In re Terrorist Attacks on September 11, 2001*,

714 F.3d 659 (2d Cir. 2013) ........................................................................ 4, 5, 18

*Thackurdeen v. Duke Univ.*,,

130 F. Supp. 3d 792, 803 (S.D.N.Y. 2015), *aff'd,* 660 F. App'x 43 (2d Cir. 2016) ................ 10

*Walden* v. *Fiore*,

134 S. Ct. 1115 (2014) ........................................................................ *passim*

*Waldman* v. *Palestine Liberation Org.*,

835 F.3d 317 (2d Cir. 2016) ........................................................................ 2, 16, 17, 20

*Whitaker v. Am. Telecasting, Inc.*,

261 F.3d 196 (2d Cir. 2001) ........................................................................ 15

*World Skating Fed'n v. Int'l Skating Union*,

357 F. Supp. 2d 661 (S.D.N.Y. 2005) ........................................................................ 6

**Statutes**

15 U.S.C. § 22 ........................................................................ 5, 6

N.Y. C.P.L.R. § 302 ........................................................................ *passim*

**Rules**

Fed. R. Civ. P. Rule 4(k)(2) ........................................................................ *passim*

Fed. R. Civ. P. Rule 12(b)(2) ........................................................................ 1

Defendant Amandeep Singh Manku respectfully submits this memorandum in support of his Motion to Dismiss the Consolidated Amended Class Action Complaint ("Complaint" or "CAC") for lack of personal jurisdiction pursuant to Rule 12(b)(2).[1]

## PRELIMINARY STATEMENT

███████████████████████████████████████████████████████████████████

████████████████████████████ the Complaint, now in its third iteration, still fails to allege facts that would permit this Court to exercise personal jurisdiction over Manku. Among other critical flaws, the Complaint remains conspicuously devoid of any allegation that Manku entered into a single trade with either Iron Workers Pension Plan of Western Pennsylvania or Sheet Metal Workers Plan of Northern California (the "Named Plaintiffs" or "Plaintiffs"), let alone any trades with the Named Plaintiffs having any semblance of a connection to New York. It also fails to allege facts showing that any element of the Named Plaintiffs' antitrust claim against Manku arises from his sporadic and incidental contacts with this forum. These glaring omissions compel dismissal.

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████ Moreover, even if Plaintiffs' collective portrayal of the "London-based SSA bond traders"

---

[1] Manku also joins the arguments for dismissal advanced in the motions to dismiss for lack of subject matter jurisdiction and failure to state a claim made by the bank defendants and their affiliates (collectively, the "Dealer Defendants"). *See* Memorandum of Law in Support of Dealer Defendants' Motion to Dismiss the Consolidated Class Action Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Dkt. No. 347) ("Dealer Defendants' Merits Brief").

as "constantly receiving inquiries from and providing prices to traders and salespeople based in the U.S., including in New York," *id.* ¶ 332, were to be credited, the Complaint fails to allege any specific facts to support the necessary jurisdictional predicate that Manku engaged in suit-related conduct while in New York or otherwise made New York the "focal point" of alleged conspiratorial conduct. *Waldman v. Palestine Liberation Org.* ("*Waldman*"), 835 F.3d 317, 340 (2d Cir. 2016). These pleading deficiencies are fatal to Plaintiffs' claim.

Ultimately, after multiple amendments, the last of which followed a motion to dismiss previewing Manku's jurisdictional arguments, Plaintiffs' untenable theory of jurisdiction remains the same: Manku should be compelled to litigate in New York because it was foreseeable that his alleged "London-based" misconduct would impact absent class members in this forum. Yet judges in this District have time and again rejected efforts to premise personal jurisdiction over foreign defendants merely because their alleged overseas misconduct would have a foreseeable effect on those trading financial instruments here.[2] This Court should do the same. On these allegations, Manku could not have reasonably anticipated being haled into this Court for the overseas misconduct that Plaintiffs allege and the claim against him should be dismissed.

## BACKGROUND

Plaintiffs are investment funds headquartered in Pennsylvania and California, which purport to have transacted in SSA bonds with one or more Defendants. CAC ¶¶ 28-29. They

---

[2] *See FrontPoint Asian Event Driven Fund, L.P.* v. *Citibank, N.A.* ("*SIBOR*"), No. 16-cv-5263, 2017 WL 3600425, at *7 (S.D.N.Y. Aug. 18, 2017) (Hellerstein, J.); *In re Platinum & Palladium Antitrust Litig.*, No. 14-cv-9391, 2017 WL 1169626, at *42 (S.D.N.Y. Mar. 28, 2017) (Woods, J.); *Sullivan* v. *Barclays PLC* ("*Sullivan*"), No. 13-cv-2811, 2017 WL 685570, at *43-45 (S.D.N.Y. Feb. 21, 2017) (Castel, J.); *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR IV*"), No. 11-mdl-2262, 2015 WL 6243526, at *20 (S.D.N.Y. Oct. 20, 2015) (Buchwald, J.); *7 W. 57th St. Realty Co.* v. *Citigroup, Inc.*, ("*7 W. 57th St Realty*"), No. 13-cv-0981, 2015 WL 1514539, at *10-11 (S.D.N.Y. Mar. 31, 2015) (Gardephe, J.); *Laydon* v. *Mizuho Bank, Ltd.* ("*Laydon V*"), No. 12-cv-3419, 2015 WL 1515358, at *5-6 (S.D.N.Y. Mar. 31, 2015) (Daniels, J.).

allege a sweeping conspiracy to manipulate the price of SSA bonds against the Dealer Defendants and certain employee-traders, including Manku. *Id.* ¶¶ 32-94. In particular, the Complaint alleges that Manku and other London-based traders conspired continuously from 2005 to 2015 to manipulate the price of certain SSA bond transactions, and that the purported misconduct impacted the prices of all SSA bonds traded anywhere across the globe, including in the United States and New York. *Id.* ¶ 20. ███████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████

As for Manku specifically, the Complaint alleges that, while based in London, he "worked at HSBC from January 2002 to December 2009," "at Bank of America from January 2010 to October 2012," and at Crédit Agricole from "January 2013 … until December 2015," *id.* ¶ 124, and that he engaged ██████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████

The Complaint, however, does not specifically allege any trades between Manku and the Named Plaintiffs, or even any communications with them relating to SSA bond transactions in New York or anywhere else. Instead, the Complaint attempts to ground jurisdiction over Manku through vague and conclusory allegations that he (i) transacted business in and throughout the United States, including trading in allegedly manipulated SSA bonds, *see, e.g.*, CAC ¶ 24; (ii) committed acts in furtherance of the alleged conspiracy in the United States and New York, *see, e.g.*, *id.* ¶¶ 330-34; (iii) targeted the U.S. market for SSA bonds, *see, e.g.*, *id.* ¶¶ 24-25, 330-34;

and (iv) was a member of an alleged conspiracy, whose foreseeable effects were felt in the United States, *see, e.g.*, *id.* ¶¶ 24-25.

## LEGAL STANDARD

Plaintiffs bear the burden of establishing that the Court has personal jurisdiction over Manku. *Penguin Group (USA) Inc. v. American Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). Personal jurisdiction may be general (all-purpose) or specific (conduct-linked), *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673-74 (2d Cir. 2013), and must be assessed based on contacts Manku himself creates with the forum state. *Walden v. Fiore* ("*Walden*"), 134 S. Ct. 1115, 1122-23 (2014). "Each defendant's contacts with the forum must be assessed individually." *AmTrust Fin. Servs., Inc. v. Lacchini*, No. 16-cv-2575, 2017 WL 728262, at *5 (S.D.N.Y. Feb. 23, 2017) (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

To carry their burden, Plaintiffs must make a *prima facie* showing of a valid statutory basis for exercising personal jurisdiction, and that the exercise of personal jurisdiction comports with due process. *Penguin Group*, 609 F.3d at 34. The latter requires the Court to determine, first, whether Manku "has sufficient minimum contacts with the forum (the 'minimum contacts' inquiry); and if so, second, whether the exercise of personal jurisdiction would comport with 'traditional notions of fair play and substantial justice' (the 'reasonableness' inquiry)." *Lacchini*, 2017 WL 728262, at *7.

"[C]onclusory allegations lacking factual specificity do not satisfy this burden." *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 393 (S.D.N.Y. 2009), *aff'd*, 387 Fed. App'x 72 (2d Cir. 2010). Instead, Plaintiffs must make an "averment of facts that, if credited … would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks*, 714 F.3d 659 at 673. The Court, moreover, need not "accept as true a legal conclusion couched as factual allegation," *Jazini* v.

*Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998), or draw "argumentative inferences in the plaintiff's favor." *In re Terrorist Attacks*, 714 F.3d 659 at 673; *see also SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) ("[R]esolving all doubts in the plaintiff's favor is not the same as blindly crediting all allegations….").

## ARGUMENT

The claim against Manku should be dismissed for lack of personal jurisdiction, as the Complaint offers no basis for exercising either general or specific jurisdiction over him. Manku is not subject to the general jurisdiction of New York courts, which Plaintiffs appear to concede. As to specific jurisdiction, New York law supplies the only available statutory basis for asserting personal jurisdiction against Manku. Plaintiffs acknowledge that 15 U.S.C. § 22 applies only to corporations and further fail to allege essential elements for asserting jurisdiction under Rule 4(k)(2). The Complaint, however, fails to allege a basis for long-arm jurisdiction under New York law, let alone one that would be consistent with due process.

## I. Manku Is Not Subject to General Jurisdiction.

Plaintiffs do not allege that Manku is subject to general personal jurisdiction in New York. Nor could they. "General jurisdiction over an individual comports with due process in the forum where he is at home, meaning the place of domicile." *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (citation omitted). Here, Plaintiffs acknowledge that Manku resides in the United Kingdom. CAC ¶ 91. Because Manku is domiciled abroad, and Plaintiffs explicitly—and repeatedly— characterize him as a "London-based trader," *see, e.g., id.* ¶¶ 330, 331, 333-34, there is no basis for the Court to exercise general jurisdiction. *See Reich,* 858 F.3d at 63. (declining to exercise general jurisdiction over defendant who owned property and conducted business in New York, but was not domiciled here).

## II.     Manku Is Not Subject to Specific Jurisdiction.

In determining whether they may exercise personal jurisdiction, courts employ a two-step inquiry.   First, courts determine whether there is a "statutory basis for exercising personal jurisdiction."  *AmTrust Fin. Servs., Inc. v. Lacchini*, No. 16-cv-2575, 2017 WL 728262, at *5 (S.D.N.Y. Feb. 23, 2017).  In general, there are three potential statutory bases for jurisdiction: (i) state law, (ii) federal statute, or (iii) Federal Rule of Civil Procedure 4(k)(2) ("Rule 4(k)(2)"), which litigants may only invoke "[w]hen a claim arises under federal law and state law, through its long-arm statute, does not provide a statutory basis for jurisdiction."  *Id.*  If a statutory basis exists, courts then determine whether the exercise of personal jurisdiction over defendant is consistent with due process.  *Id.*

### A. New York Law Supplies the Only Available Statutory Basis for Exercising Specific Jurisdiction over Manku.

As to Manku, New York law supplies the only available statutory basis for exercising jurisdiction.  The Complaint does not invoke any federal statute that would supply a statutory basis for jurisdiction over Manku and other individual defendants.  *See* CAC ¶ 23 ("This Court has personal jurisdiction over ***various corporate Defendants*** pursuant to the nationwide contacts test provided for in 15 U.S.C. § 22….") (emphasis added).[3]  Nor do Plaintiffs allege the necessary conditions for the Court to exercise jurisdiction under Rule 4(k)(2), which requires that "(1) the claim must arise under federal law; (2) the defendant must not be 'subject to jurisdiction in any state's courts of general jurisdiction'; and (3) the exercise of jurisdiction must be 'consistent with the United States Constitution and laws.'"  *7 W. 57th St Realty,* 2015 WL 1514539, at *13 (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126-27 (2d Cir. 2008)).

---

[3] *See also World Skating Fed'n v. Int'l Skating Union*, 357 F. Supp. 2d 661, 664 (S.D.N.Y. 2005) (noting that 15 U.S.C. § 22 "applies only to corporations").

In accordance with its limited gap-filling purpose, Rule 4(k)(2) should only be invoked upon a plaintiff certifying that the defendant is not subject to jurisdiction in any particular state forum.  *See, e.g.*, *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 731 (S.D.N.Y. 2010) (denying attempt to base jurisdiction on Rule 4(k)(2) where "Plaintiffs have not certified that Defendants [who were not subject to jurisdiction in New York] are not subject to jurisdiction in any other state").  Plaintiffs have made no such certification here and in fact argue just the opposite, namely that Defendants are subject to jurisdiction under New York's long-arm statute.  *See* CAC ¶ 27 (alleging that the "Court has jurisdiction over Defendants pursuant to New York's C.P.L.R. § 302").  Plaintiffs, moreover, fail to allege facts to satisfy Rule 4(k)(2)'s third requirement that the exercise of jurisdiction not violate due process, as described in Section II(C) below.

### B. Plaintiffs Have Not Alleged Facts to Support Specific Jurisdiction Under New York Law.

Plaintiffs offer no valid basis for exercising long-arm jurisdiction under New York law, which should end the jurisdictional inquiry and result in the dismissal of the claim against Manku.  *See Biz2Credit, Inc. v. Kular*, No. 14-cv-8223, 2015 WL 2445076, at *3 (S.D.N.Y. May 21, 2015) (courts should proceed to due process inquiry "[i]f and only if the Court's exercise of personal jurisdiction is deemed appropriate according to New York law").

**1. Plaintiffs Fail to Allege That Manku Transacted Business in New York from Which Their Claim Arises (Section 302(a)(1)).**

To establish jurisdiction under Section 302(a)(1), Plaintiffs must show that Manku in person or via an agent "transact[ed] any business within the state" and that the cause of action "arise[s] from" the transaction. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 248 (2d Cir. 2007). The Complaint does not adequately allege either of Section 302(a)(1)'s requirements.

    a) <u>The Complaint Does Not Allege That Manku Engaged in the Sustained and Substantial Conduct of Business in New York</u>.

As to Manku, Plaintiffs make only conclusory, and therefore inadequate, allegations that he transacted business in New York. "[T]ransacting business" is defined as an act or acts "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 246. "More than limited contacts are required for purposeful activities sufficient to establish that [Manku] transacted business in New York." *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 376 (N.Y. 2014); *see also Beatie & Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 387 (S.D.N.Y. 2006) (observing that jurisdiction under Section 302(a)(1) cannot be founded upon "random," "fortuitous," or "attenuated" contacts). ██████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████ in New York. *Paterno*, 24 N.Y.3d at 377.

Plaintiffs also fail to adequately allege that Manku transacted business in New York through his purported agents. *See* CAC ¶ 27. ("[E]ach Defendant is an agent of the other Defendants."). To show an agency relationship under Section 302, Plaintiffs must allege that "the putative agent … acted in the state for the benefit of, and with the knowledge and consent of the non-resident principal," and that the non-resident principal exercised "control over the activities of the alleged agent." *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 402 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) (citation omitted). Absent such allegations, which are nowhere to be found in the Complaint as it relates to Manku, Section 302(a)(1) does not permit the exercise of personal jurisdiction for claims arising from business transacted through putative agents. *See King Cnty., Wash. v. IKB Deutsche Industriebank, AG*, 769 F. Supp. 2d 309, 320 (S.D.N.Y. 2011) (dismissing claims against individual officer of corporation subject to jurisdiction for fraud claims, because "even if [the individual officer] did receive compensation based in part on the [the corporation's] performance in New York, such an attenuated and generalized benefit is insufficient to support a theory of agency").

To the extent Plaintiffs seek to premise jurisdiction over Manku on the acts of alleged co-conspirators in New York, this theory of jurisdiction is not available under Section § 302(a)(1). *E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co.*, No. 00-cv-8670, 2003 WL 22064259, at *9 (S.D.N.Y. Sept. 5, 2003) (holding that "the 'conspiracy theory' jurisdiction [is] 'inapplicable' under section 302(a)(1)") (citing *Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc.*, 10 F.Supp.2d 334, 342 (S.D.N.Y. 1998)). Thus, even if one defendant is subject to jurisdiction under the conducting-business prong, Plaintiffs may not bootstrap all other co-defendants to that jurisdictional connection simply by alleging the existence of a conspiracy. *See id.*

b) <u>No Element of the Named Plaintiffs' Claim Arises from Manku's Tangential Contacts with New York</u>.

The Complaint also fails to allege a fundamental prerequisite to grounding jurisdiction under Section 302(a)(1), namely that the cause of action arises from business Manku transacted in New York. It is black-letter law that "[t]o establish personal jurisdiction under § 302(a)(1), the defendant must have transacted business within the state and ***the claim asserted must arise from that business activity***." *Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 67 (2d Cir. 2017) (emphasis added). Yet the Complaint does not allege a single trade involving the Named Plaintiffs and Manku, a "London-based trader," CAC ¶ 330, let alone a trade involving Manku bearing any connection to his purported business activities New York. *Id.* ¶ 331 (excluding Manku from list of Defendants that traded with the Named Plaintiffs). Because no element of the claim that the Named Plaintiffs assert against Manku has any plausibly alleged connection to New York, let alone any specific connection to business conducted by Manku in New York, Section 302(a)(1) cannot supply the statutory basis for jurisdiction. *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 803 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir. 2016) (affirming finding of no basis for jurisdiction under Section 302(a)(1) where "not a single element" of plaintiffs' claims arose from defendant's New York contacts); *see also In re Dental Supplies Antitrust Litig.*, No. 16-cv-0696, 2017 WL 4217115, at *6 (E.D.N.Y. Sept. 20, 2017) ("[Pl]aintiffs' claim cannot arise from [defendant's] sales to New York … because [defendant] did not make any sales to any named plaintiff in New York.").

The Complaint's allegations of Manku's sporadic contacts with New York serve only to underscore that the Named Plaintiffs' claim against him does not arise from the purported business he transacted in New York. First, Plaintiffs allege that Manku periodically visited New York. CAC ¶¶ 327-28. Yet the Complaint fails to specifically allege that Manku engaged in any

manipulative acts while located in New York, let alone a manipulative act related to a trade with the Named Plaintiffs. Second, without any supporting factual allegations, the Complaint alleges that Manku "undoubtedly" engaged in trades with counterparties with "substantial trading operations in New York." CAC ¶ 335. But even if this were so, there is no plausibly alleged connection between this hypothetical trading activity with unnamed New York counterparties and Manku's purported overseas misconduct causing damage to pension plans in Pennsylvania and California with which Manku is not even alleged to have transacted business. *Hood v. Ascent Med. Corp.*, 691 F. App'x 8, 11 (2d Cir. 2017) ("Whether or not defendants also sought to sell products in New York—one of many states where they sought to do so—is beside the point, and cannot serve as a basis for haling defendants into a federal court in New York on this complaint.").[4]

On these allegations, no "articulable nexus" exists between the Named Plaintiffs' claim and Manku's sporadic contacts with New York, irrespective of the extent of any efforts he directed to trading with other New York counterparties who have not brought suit. *Cf. Beach v. Citigroup Alternative Investments LLC*, No. 12-cv-7717, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014) ("In an action brought as a class action, personal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the named plaintiffs' causes of action."); *Selman v. Harvard Med. Sch.*, 494 F. Supp. 603, 613 (S.D.N.Y. 1980), *aff'd*, 636 F.2d 1204 (2d Cir. 1980) ("[T]he named class representative himself must satisfy all jurisdictional prerequisites before the action can go forward."); *see also Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*, 721

---

[4] *See also Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 340 (S.D.N.Y. 2016) (declining to exercise jurisdiction where "the alleged wrongdoing … is not tied to any New York presence or activity"); *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010) (finding Section 302(a)(1) not satisfied because "the center of gravity of the transaction at issue [among four foreign national defendants and a Delaware corporation headquartered in Florida] was indisputably outside New York").

F.3d 95, 112 (2d Cir. 2013) ("[T]here must be a named plaintiff sufficient to establish jurisdiction over each claim advanced.").  Because the Named Plaintiffs' claim "in no way arise[s] from" any contact of Manku's with New York, Section 302(a)(1) provides no basis for exercising jurisdiction.  *Hood,* 691 F. App'x at 11.

### 2. Plaintiffs Do Not Allege the Commission of a Tort Within New York (Section 302(a)(2)).

Section 302(a)(2) provides that a court may exercise long-arm jurisdiction over a non-domiciliary "who in person or through an agent . . . commits a tortious act within the state."  Section 302(a)(2).  The New York Court of Appeals "has construed this provision to require that the defendant was ***physically present in New York*** when he committed the tort."  *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 340 (S.D.N.Y. 2016) (emphasis added); *Bracken v. MH Pillars Inc.*, No. 15-cv-7302, 2016 WL 7496735, at *5 (S.D.N.Y. Dec. 29, 2016) (observing that Section 302(a)(2) requires commission of a tortious act while physically present in New York that has a "clear nexus to New York").  Here, there are no allegations that Manku "was physically present in New York when the scheme was hatched or when [an] alleged tort[] w[as] committed" against Named Plaintiffs.  *Biz2Credit, Inc. v. Kular*, No. 14-cv-8223, 2015 WL 2445076, at *7 (S.D.N.Y. May 21, 2015); *see also Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997) (injury in New York insufficient to ground jurisdiction under Section 302(a)(2)).

Nor may Plaintiffs ground jurisdiction over Manku based on a theory that his putative agents committed tortious acts while physically present in New York.  Plaintiffs do not specifically allege they were wronged by any tort committed by a defendant physically present in New York, let alone that Manku exercised control over or knowingly derived any personal benefit from the actions of any putative agent in New York.  *See, e.g., RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 402 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).

Plaintiffs' allegations that the New York contacts of alleged co-conspirators vest the Court with jurisdiction over Manku are likewise insufficient. In general, as described below in Section II(C), the consistent rejection of conspiracy-based jurisdiction theories by courts post-*Walden* has cast doubt on whether a non-resident defendant's alleged participation in an alleged conspiracy can, by itself, establish jurisdiction. *In re Dental Supplies Antitrust Litig.*, No. 16-cv-0696, 2017 WL 4217115, at *7 (E.D.N.Y. Sept. 20, 2017) (recognizing "[t]here is no doctrinal support for 'conspiracy jurisdiction'" under New York's long-arm statute). In any event, it was widely recognized pre-*Walden* that "the bland assertion of conspiracy is insufficient to establish jurisdiction for the purposes of section 302(a)(2)." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 805 (S.D.N.Y. 2005). Rather, to establish jurisdiction under Section 302(a)(2) on the basis of an alleged conspiracy, Plaintiffs "must make a prima facie showing of conspiracy, allege specific facts warranting the inference that the defendant was a member of the conspiracy, and show that the defendant's co-conspirator committed a tort in [the forum]." *Id.* Plaintiffs have not done so here.

Not only does the Complaint fail to allege a plausible conspiracy to manipulate the market for SSA bonds, *see* Dealer Defendants' Merits Brief, it also fails to allege that any co-conspirator committed a tort against the Named Plaintiffs while physically present in New York. ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ ▌ The activities of Manku's alleged co-conspirators

_____

[5] ███████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████

thus cannot supply a basis for exercising jurisdiction under Section 302(a)(2). *Hood v. Ascent Med. Corp.*, No. 13-cv-628, 2016 WL 3453656, at *3 (S.D.N.Y. June 20, 2016), *aff'd*, 691 F. App'x 8 (2d Cir, 2017) ("Conclusory allegations that torts were committed in New York … without more, cannot be the basis for specific personal jurisdiction under C.P.L.R. § 302(a)(2)").[6]

### 3. Plaintiffs Do Not Allege the Commission of a Tortious Act Outside of New York That Caused Injury Within New York (Section 302(a)(3)).

Jurisdiction under Section 302(a)(3) must be predicated on five elements: "(1) [t]he defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; (5) the defendant derives substantial revenue from interstate or international commerce." *Indelible Media Corp. v. Meat & Potatoes, Inc.*, No. 12-cv-0978, 2012 WL 3893523, at *5 (S.D.N.Y. Sept. 7, 2012). Plaintiffs cannot satisfy these required elements.

In particular, Plaintiffs have failed to allege that Manku's purported tortious acts caused injury within New York. To determine whether out-of-state acts caused injury in New York, "courts apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.'" *Biz2Credit, Inc. v. Kular*, No. 14-cv-8223, 2015 WL 2445076, at *8 (S.D.N.Y. May 21, 2015). The situs of "a nonphysical commercial injury is the place where the critical events associated with the dispute took place and not where the resultant monetary loss occurred." *Id.*

---

[6] Even if the Complaint had alleged the commission of a tort within New York, Plaintiffs would still fail to meet the standard necessary to impute the New York contacts of other alleged co-conspirators to Manku. To satisfy this standard, Plaintiffs must (yet do not) allege, among other things, that "(a) [Manku] had an awareness of the effects in New York of [the conspiracy's] activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted 'at the direction or under the control' or 'at the request of or on behalf of' the out-of-state defendant." *7 W. 57th St Realty*, 2015 WL 1514539, at *12 (finding similar allegations insufficient because they were merely "conclusory" and "[t]hreadbare recitals of the elements of a cause of action").

Jurisdiction will not lie merely because of "the occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York where the underlying events took place outside New York." *Id.*; *see also Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 209 (2d Cir. 2001). Here, because all of the critical events associated with the alleged manipulation of SSA bonds occurred outside the United States*, see, e.g.*, CAC ¶ 330 ("The London-based traders and entities priced the trades, approved the trades, and had the power to cancel trades"), Plaintiffs cannot establish jurisdiction over Manku under Section 302(a)(3). *Penguin Group (USA) Inc. v. American Buddha*, 609 F.3d 30, 38 (2d Cir. 2010) ("It is settled New York law that the suffering of economic damages in New York is insufficient, alone, to establish a 'direct' injury….").

Having failed to offer this Court any basis over which it could assert specific personal jurisdiction over Manku under New York law, Plaintiffs cannot sustain their claims against him.

## C. Exercising Specific Jurisdiction Would Violate Due Process.

Even if Plaintiffs could establish a basis for jurisdiction under New York law (and they cannot), doing so would violate due process, as Manku lacks "sufficient minimum contacts with the forum (the 'minimum contacts' inquiry)" and exercising jurisdiction would not "comport with 'traditional notions of fair play and substantial justice' (the 'reasonableness' inquiry)." *AmTrust Fin. Servs., Inc. v. Lacchini*, No. 16-cv-2575, 2017 WL 728262, at *7 (S.D.N.Y. Feb. 23, 2017).

### 1. Manku Lacks the Requisite Minimum Contacts with New York.

Plaintiffs fail to allege that any element of their claim arises from Manku's suit-related contacts with New York, and therefore fail to satisfy the minimum contacts inquiry. This inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 134 S. Ct. 1115 at 1121. To confer jurisdiction, Plaintiffs must allege "suit-related conduct [that] create[s] a substantial connection with the forum State," the connection "must arise out of contacts that the defendant *himself* creates with the forum State," and the contacts must be "with the forum State

itself, not … with persons who reside there." *Id.* at 1121-22 (emphasis in original). The exercise of specific jurisdiction, moreover, "depends on in-state activity that ***gave rise to the episode-in-suit***." *Waldman*, 835 F.3d at 331 (emphasis added). The forum must also be the "focal point" or "nucleus" of the underlying claim, *id.* at 340, and specific allegations must link the elements of Plaintiffs' claim to the forum. *See Sullivan*, 2017 WL 685570, at *45 (finding insufficient suit-related contacts where plaintiffs made no allegations linking the elements of their claim to defendant's conduct within the forum).

In analyzing a defendant's contacts with the forum state, courts may only look to "the very activity" out of which the "cause of action arises." *Keeton* v. *Hustler Magazine, Inc.*, 104 S. Ct. 1473, 1481 (1984). A defendant's contact with absent class members should not factor into the minimum contacts inquiry. *Bristol-Myers Squibb Co.* v. *Superior Court of California*, 137 S. Ct. 1773, 1781 (2017) ("The mere fact that *other* plaintiffs were prescribed, obtained, and ingested [drug] in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims."); *Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 (2d Cir. 2013) ("[T]here must be a named plaintiff sufficient to establish jurisdiction over each claim advanced."); *Beach* v. *Citigroup Alternative Investments LLC*, No. 12-cv-7717, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014) ("Contacts with unnamed class members may not be used as a jurisdictional basis …."); *Selman v. Harvard Med. Sch.*, 494 F. Supp. 603, 613 (S.D.N.Y. 1980), *aff'd*, 636 F.2d 1204 (2d Cir. 1980) ("[T]he named class representative himself must satisfy all jurisdictional prerequisites before the action can go forward."). Where, as here, no harm was "suffered in the forum, and all the conduct giving rise to the nonresidents' claims occurred elsewhere, the forum does not have specific

jurisdiction over the defendants. *Sae Han Sheet Co. v. Eastman Chem. Corp.*, No. 17-cv-2734, 2017 WL 4769394, at \*8 (S.D.N.Y. Oct. 19, 2017) (citing *Bristol-Myers*, 137 S.Ct. at 1782).

a) Manku Has No Suit-Related Contacts with New York.

The Complaint fails to allege that any in-state activity by Manku gave rise to the Named Plaintiffs' claim, let alone that this forum is the focal point or nucleus of the antitrust claim that the Named Plaintiffs assert against him. This alone compels dismissal. *See Waldman*, 835 F.3d at 340. The gravamen of Plaintiffs' claim is that Manku and other "London-based" SSA bond traders allegedly manipulated the price of SSA bonds. *See, e.g.*, CAC ¶ 330 ("The London-based traders and entities priced the trades, approved the trades, and had the power to cancel trades[.]"). The Complaint contains no specific allegation that Manku engaged in wrongful conduct in New York, much less wrongful conduct in connection with trading activity with the Named Plaintiffs, which themselves are not located in New York and do not allege that they have trading operations of any kind in New York. *See* CAC ¶¶ 28-29; *Laydon* v. *Bank of Tokyo-Mitsubishi UFJ, Ltd.* ("*Laydon VI*"), No. 12-cv-3419, 2017 WL 1113080, at \*4 (S.D.N.Y. Mar. 10, 2017) (finding no suit-related contacts even though defendant visited forum with alleged co-conspirator because no facts plausibly alleged that the purported market manipulation occurred during the trip).

████████████████████████████████████████████

███████████████████████████████████████████████

██ ████ ██ ██████ ███ ████ ██ ██ ████ ██████ ███

███████████████████████████████ Even assuming hypothetical allegations in this vein could be credited (and they should not be), Manku's alleged trades with New York counterparties cannot supply a basis for jurisdiction where, as here, no element of the Named Plaintiffs' claim against Manku has any connection to the forum, the alleged misconduct occurred overseas, and the alleged harm was sustained elsewhere. *SIBOR*, 2017 WL 3600425, at \*5–6

(dismissing for lack of personal jurisdiction where "the relevant conduct giving rise to plaintiffs' alleged injury occurred elsewhere" and observing that "[t]he fact that defendants may have engaged in non-suit related activity in [the forum] does not change this result"); *see also Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1781 (2017) (applying "settled principles regarding specific jurisdiction" that in the absence of a substantial connection "between the forum and the underlying controversy, … specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State"); *Beach* v. *Citigroup Alternative Investments LLC*, No. 12-cv-7717, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014) ("Contacts with unnamed class members may not be used as a jurisdictional basis ….").

        b) <u>Manku Did Not Purposefully Direct the Alleged Misconduct at New York</u>.

Unable to allege that Manku purposefully availed himself of the forum, Plaintiffs instead rely on the allegedly foreseeable effects of the purported conspiracy to ground specific jurisdiction. Plaintiffs, however, cannot establish the required substantial connection between any of Manku's alleged wrongful activity and this forum based solely on the contention that SSA bonds are traded globally, including in New York.

Where, as here, the alleged wrongful conduct occurred outside the forum, Plaintiffs must plausibly allege that "the defendant took 'intentional, and allegedly tortious, actions … expressly aimed' at the forum" and that the claim arises from those actions in order to confer jurisdiction. *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) (quoting *Calder* v. *Jones*, 465 U.S. 783, 789 (1984)); *see also Licci ex rel. Licci* v. *Lebanese Canadian Bank*, 732 F.3d 161, 173 (2d Cir. 2013) (holding that due process requires the defendant to have expressly aimed conduct at the forum). It is not enough to allege injury in the relevant forum (which the Named Plaintiffs have not done); given the paucity of Manku's contacts with the forum, Plaintiffs must plausibly allege that Manku's suit-related forum contacts were not only the "but for," but

also the proximate cause of their claimed injury.  *See LIBOR IV*, 2015 WL 6243526, at *28; *Chew*

v. *Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998).

The Complaint fails in each of these respects.  The Complaint's "sweeping and conclusory

allegations" that Manku and other London-based SSA bond traders purportedly manipulated

discrete trades, from which Plaintiffs implausibly extrapolate that the price of every transaction

was affected, *see* CAC ¶¶ 303-09, is plainly insufficient to tie Manku to New York.  *In re Braskem*

*S.A. Sec. Litig.*, 246 F. Supp. 2d 731, 769 (S.D.N.Y. 2017) (rejecting similarly broad and

conclusory allegations as the basis for personal jurisdiction).  More fundamentally, the Named

Plaintiffs assert no injury suffered in New York, let alone injury caused by Manku's alleged

activities directed at New York, either on a proximate or "but for" basis.  *LIBOR IV*, 2015 WL

6243526, at *28 (noting the minimum requirement of "a 'but for' connection between the

defendant's forum-directed activities and the claim[.]").

Even if Plaintiffs' allegations of a global conspiracy and widespread injury were plausible

and adequately pleaded (and they are not, *see* Dealer Defendants' Merits Brief), the Complaint

would still not make out a *prima facie* case for jurisdiction over Manku.  "Due process requires

that a defendant be haled into court in a forum State based on his own affiliation with the State,

not based on the random, fortuitous, or attenuated contacts [the defendant] makes by interacting

with other persons affiliated with the State."  *Walden,* 134 S. Ct. 1115 at 1123.  The Complaint,

which makes only generic and legally insufficient allegations of a global conspiracy, fails to meet

this basic requirement.  *See, e.g.*, *In re LIBOR-Based Financial Instruments Antitrust Litig.*

("*LIBOR VI*"), No. 11-mdl-2262, 2016 WL 7378980 at * 11 (S.D.N.Y. Dec. 20, 2016) ("[I]t is

black-letter law that harm experienced in a forum is not sufficient to establish specific personal

jurisdiction").

As the Second Circuit explained in *Waldman*, due process is not satisfied where plaintiffs allege wrongful conduct outside the United States that appears to target "people from all over the world," because even if the alleged misconduct "continuously hit Americans," it could not be said that "the [forum was] the focal point of the torts alleged." 835 F.3d at 337-40. Nor can plaintiff-focused contacts—including that the Named Plaintiffs chose to transact in SSA bonds after placing inquiries with certain Defendants' U.S.-based salespeople, *see, e.g.*, CAC ¶ 28. ███████████████ ██████████████████████████████████████████████████████ *See Walden*, 134 S. Ct. at 1122 ("[P]laintiff[s] cannot be the only link between the defendant and the forum."); *Waldman,* 835 F.3d 317 at 338 ("[D]efendant's mere knowledge that a plaintiff resides in a specific jurisdiction [is] insufficient to subject a defendant to specific jurisdiction in that jurisdiction ***if the defendant does nothing in connection with the tort in that jurisdiction***.") (emphasis added). For these reasons, judges in this district have routinely rejected attempts to premise specific jurisdiction on the foreseeable effect of overseas price manipulation of the kind alleged here.[7]

---

[7] *See, e.g.*, *SIBOR*, 2017 WL 3600425, at *7 (no personal jurisdiction where "[t]he consequences of the Foreign Defendants' conduct were global, and [plaintiffs made] no allegations that the Foreign Defendants singled out the United States as their target"); *In re Platinum & Palladium Antitrust Litig.*, No. 14-cv-9391, 2017 WL 1169626, at *45 (S.D.N.Y. Mar. 28, 2017) ("[G]eneral allegations of price manipulation abroad alone do not establish that a foreign defendant expressly aimed its conduct at the U.S."); *Sullivan*, 2017 WL 685570, at *45 (finding no basis for personal jurisdiction where plaintiffs failed to adequately allege that the "existence, causation or intent to manipulate the Euribor on the part of [defendant] had its 'nucleus' or 'focal point' in the United States"); *LIBOR IV*, 2015 WL 6243526, at *20 ("[M]ere foreseeability does not confer personal jurisdiction."); *7 W. 57th St. Realty*, 2015 WL 1514539, at *11 ("[T]he fact that harm [from alleged LIBOR manipulation] in [New York] is foreseeable . . . . is insufficient for the purpose of establishing specific personal jurisdiction over a defendant."); *Laydon V*, 2015 WL 1515358, at *2 ("[F]oreseeability is not the standard for recognizing personal jurisdiction; the actions must instead be 'expressly aimed . . . at [the forum].'"); *see also AmTrust Fin. Servs., Inc. v. Lacchini*, No. 16-cv-2575, 2017 WL 728262, at *11 (S.D.N.Y. Feb. 23, 2017) ("quintessential" foreign conduct is insufficient to establish personal jurisdiction unless that defendant "schemed to cause effects in the United States or in a United States market").

The exercise of jurisdiction under Federal Rule of Civil Procedure 4(k)(2) (focusing on Manku's contacts with the United States) would similarly violate due process for the same reasons described

Plaintiffs attempt to cure these obvious deficiencies by offering conclusory allegations that New York was the focal point of Manku's alleged misconduct. As an initial matter, Plaintiffs wrongly contend that SSA bonds are primarily marketed to U.S. investors, CAC ¶ 102, an allegation that ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████ Moreover, even if New York were the focal point of the purported misconduct, jurisdiction would nonetheless be inappropriate with respect to Manku, as the Named Plaintiffs assert no injury suffered in New York caused by Manku's alleged activities directed at New York.[8]

### c) Contacts of Other Defendants May Not Be Imputed to Manku.

Plaintiffs also cannot establish the requisite minimum contacts by imputing to Manku the jurisdictional contacts of in-forum defendants based on an alleged conspiracy (a theory of jurisdiction at least one court has termed "vicarious conspiracy jurisdiction"). *Martin* v. *Eide Bailly LLP*, No. 15-cv-1202, 2016 WL 4496570, at *3 (S.D. Ind. Aug. 26, 2016). Indeed,

---

herein, as Manku not only lacks the requisite suit-related contacts with New York, but also with the United States as a whole.

[8] Judge Stein's recent decision in *Sonterra Capital Master Fund Ltd.* v. *Credit Suisse Group AG*, an action concerning alleged manipulation of Swiss Franc LIBOR, does not support a different result. *See Sonterra Capital Master Fund Ltd.* v. *Credit Suisse Group AG,* 2017 WL 4250480 (S.D.N.Y. Sept. 25, 2017). In *Sonterra*, the court distinguished the several other recent decisions which concluded that misconduct occurring abroad did not give rise to specific jurisdiction in New York because plaintiffs alleged, among other things, "injury in the forum," *id*. at *52, along with far more detailed jurisdictional allegations than Plaintiffs assert here.

Plaintiffs' failure to advance specific factual allegations concerning acts taken in furtherance of the purported conspiracy in New York forecloses this option. *See, e.g., SIBOR,* 2017 WL 3600425, at *8; *LIBOR VI,* 2016 WL 7378980, at *12.

Moreover, even if Plaintiffs had advanced specific allegations of conspiratorial activity in New York, due process still would not permit jurisdiction to lie as to Manku. As several courts have acknowledged in the wake of *Walden*, participation in a conspiracy, without more, cannot establish jurisdiction over a nonresident defendant. *See, e.g., Laydon VI*, 2017 WL 1113080, at *6 (rejecting argument that plaintiffs had established jurisdiction over all members of the alleged conspiracy by alleging that at least one member engaged in wrongful conduct in the [forum] or directed the conduct to the [forum] in furtherance of the conspiracy). To the contrary, a co-conspirator's conduct may be attributed to Manku only if, consistent with traditional agency principles, he directed and controlled the agent's in-forum tortious conduct and knew about and benefitted from such contacts. *See, e.g., In re Shulman Transport Enterprises Inc.*, 744 F.2d 293, 295 (2d Cir. 1984) ("An essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control."). Requiring a showing that each defendant engaged in suit-related conduct in the forum—whether personally or through an agent under its control—sufficient to purposefully avail itself of the forum is the only approach consistent with *Walden,* 134 S. Ct. 1115 at 1122 (noting that it is the "contacts that the defendant *himself* creates with the forum State" that matter) (emphasis in original); *see also In re Aluminum Warehousing Antitrust Litig.,* 90 F. Supp. 3d 219, 227 (S.D.N.Y 2015) ("The rules and doctrines applicable to personal jurisdiction are sufficient without the extension of the law to a separate and certainly nebulous 'conspiracy jurisdiction' doctrine.").

Plaintiffs have not only failed to allege a plausible conspiracy, *see* Dealer Defendants' Merits Brief, but also that Manku directed or controlled the allegedly tortious conduct of any alleged co-conspirator in New York (or anywhere else). Nor do they allege that Manku knew of and benefitted from such contacts. Absent such allegations, due process does not permit Plaintiffs to impute another defendant's contacts to Manku. *See, e.g.*, *In re Dental Supplies Antitrust Litig.*, No. 16-cv-0696, 2017 WL 4217115, at *7 (E.D.N.Y. Sept. 20, 2017) ("there is no doctrinal support for 'conspiracy jurisdiction'" and "it is highly unlikely that any concept of conspiracy jurisdiction survived the Supreme Court's ruling in *Walden*"); *In re N. Sea Brent Crude Oil Futures Litig.*, No. 13-md-02475, 2017 WL 2535731, at *9 (S.D.N.Y. June 8, 2017) ("an agency relationship is required to uphold jurisdiction based on a conspiracy theory").

### 2. Considerations of Fair Play and Substantial Justice Support Dismissal.

Exercising jurisdiction over Manku would also violate traditional notions of fair play and substantial justice. *Metro Life Ins. Co.* v. *Robertson-Ceco Corp.,* 84 F. 3d 560, 575 (2d Cir. 1996). Relevant factors for this test include: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; and (3) plaintiffs' interest in obtaining convenient and effective relief. *Licci ex rel. Licci* v. *Lebanese Canadian Bank*, 732 F.3d 161, 170 (2d Cir. 2013). In applying these factors, the Supreme Court has instructed that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Industry Co., Ltd.*, 480 U.S. 102, 115 (1987). Further, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over our national borders." *Id.* at 114.

These concerns apply with particular force to Manku, a foreign national who will incur a heavy burden defending himself for alleged conduct that occurred completely outside of, and not

specifically aimed at, the forum. *King Cnty., Wash. v. IKB Deutsche Industriebank, AG*, 769 F. Supp. 2d 309, 321 (S.D.N.Y. 2011) (subjecting German defendants "to personal jurisdiction in the United States would impose upon him an undue burden in terms of travel, expense, and time"); *see also* Comment to Fed R. Civ. P. 4(k) ("The district court should be especially scrupulous to protect aliens who reside in a foreign country from forum selections so onerous that injustice could result" (citing *Asahi*, 480 U.S at 115 (1987)). Subjecting Manku to jurisdiction based on such attenuated contacts would not "merely be inconvenient," it "would violate our basic sense of fair play and substantial justice – and deprive the defendant[] of the due process guaranteed by the Constitution." *Metro Life Ins. Co.*, 84 F. 3d at 575.

## III.     Plaintiffs' Claim Should Be Dismissed with Prejudice.

Plaintiffs should not be given a third opportunity to amend or obtain jurisdictional discovery. Plaintiffs have been afforded more than ample time and three opportunities to fashion plausible allegations to ground jurisdiction over Manku, but have again failed to make out a *prima facie* case that Manku is subject to jurisdiction. Under these circumstances, the claims against Manku should be dismissed with prejudice. *Ehrenfield v. Bin Mahfouz*, No. 04-cv-9641, 2006 WL 1096816, at *6 (S.D.N.Y. Apr. 26, 2006) (denying request for jurisdictional discovery against foreign individual defendant where plaintiffs failed to make prima facie case) (citing *Jazini* v. *Nissan Motor Co.*, 148 F.3d 181, 185-86 (2d Cir. 1998); *Sullivan*, 2017 WL 685570, at *49 (same).

### CONCLUSION

For the reasons set forth above, the claim Plaintiffs assert against Amandeep Singh Manku should be dismissed with prejudice.

Dated: December 12, 2017
New York, New York

KOBRE & KIM LLP

By: _____
David McGill
Clinton J. Dockery
800 Third Avenue
New York, New York 10022
(212) 488-1200
david.mcgill@kobrekim.com
clinton.dockery@kobrekim.com

Roger A. Burlingame
Tower 42
25 Old Broad Street
London, EC2N 1HQ, United Kingdom
roger.burlingame@kobrekim.com

*Attorneys for Amandeep Singh Manku*