**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:

SSA BONDS ANTITRUST LITIGATION

*This Document Relates To All Actions*

1:16-cv-03711-VEC

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'**
**MOTION TO VACATE CERTAIN ORDERS AND THE PARTIAL FINAL JUDGMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND ...........................................................................................................4

ARGUMENT .................................................................................................................6

I.    Plaintiffs Fail to Show that Disqualification Was Required Under 28 U.S.C. § 455 .........6

II.   Even if Disqualification Was Required Under Section 455, Vacatur of the
      Judgment Is Not Warranted Under Rule 60(b) ....................................................8

III.  Having Failed to Satisfy Any of the *Liljeberg* Factors, Plaintiffs' Request for a
      "Fresh Look" Is Both Improper and Futile .......................................................13

CONCLUSION ............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Dep't of Revenue* v. *Manku*,
  2021 WL 3027170 (2d Cir. July 19, 2021)................................................................1, 6, 15

*Brock* v. *Zuckerberg*
  2022 WL 1231044 (2d Cir. Apr. 27, 2022) .......................................................................2, 9

*Camacho* v. *Autoridad de Telefonos de P.R.*,
  868 F.2d 482 (1st Cir. 1989)...................................................................................3, 4, 11, 12

*Chase Manhattan Bank* v. *Affiliated FM Ins. Co.*,
  343 F.3d 120 (2d Cir. 2003)................................................................................... *passim*

*Chesher* v. *3M Co.*,
  2022 WL 88328 (D.S.C. Jan. 6, 2022) ...........................................................................9

*DeWeerth* v. *Baldinger*,
  38 F.3d 1266 (2d Cir. 1994)...........................................................................................14

*Driscoll* v. *Metlife Ins.*,
  2021 WL 5323962 (S.D. Cal. Oct. 19, 2021) .................................................................13

*Elgalad* v. *N.Y. City Dep't of Educ.*,
  2019 WL 4805669 (S.D.N.Y. Sept. 30, 2019)..............................................................9

*Faulkner* v. *Nat'l Geographic Enters., Inc.*,
  409 F.3d 26 (2d Cir. 2005).................................................................................... *passim*

*Kendall* v. *Daily News Publ'g Co.*,
  716 F.3d 82 (3d Cir. 2013).......................................................................................3, 4, 11

*Liljeberg* v. *Health Servs. Acquisition Corp.*,
  486 U.S. 847 (1988)............................................................................................... *passim*

*Marcus* v. *Smith*,
  755 F. App'x 47 (2d Cir. 2018) .............................................................................2, 9, 11, 12

*Parker* v. *Connors Steel Co.*,
  855 F.2d 1510 (11th Cir. 1988) .....................................................................................12, 14

*Patterson* v. *Mobil Oil Corp.*,
  335 F.3d 476 (5th Cir. 2003) .........................................................................................3, 12

*U.S. ex rel. Pritsker* v. *Sodexho, Inc.*,
   493 F. App'x 309 (3d Cir. 2012) ............................................................................11

*Shell Oil Co.* v. *United States*,
   672 F.3d 1283 (Fed. Cir. 2012)...............................................................................13

*Smith* v. *Angelo*,
   2020 WL 5821720 (D. Del. Sept. 30, 2020)..........................................................11

*United States* v. *Amico*,
   486 F.3d 764 (2d Cir. 2007)......................................................................................8

*United States* v. *Lindsey*,
   556 F.3d 238 (4th Cir. 2009) ...................................................................................12

**Statutes**

28 U.S.C. § 455................................................................................................... *passim*

Defendants[1] respectfully submit this joint memorandum of law in opposition to Plaintiffs'

Motion to Vacate Certain Orders and the Partial Final Judgment (ECF No. 705).

## PRELIMINARY STATEMENT

In this putative antitrust class action, Plaintiffs attempted to plead that a handful of

traders located abroad orchestrated an impossibly broad conspiracy that, for seven years,

somehow manipulated the price of every transaction in the world involving U.S. dollar-

denominated supranational, sovereign, and agency bonds ("SSA Bonds"). After allowing three

rounds of amendments to the complaint (including amendments following the dismissal of

Plaintiffs' prior complaint in August 2018 (ECF No. 495)), in late 2019 and early 2020, Judge

Ramos issued a pair of well-reasoned decisions spanning more than 45 pages that dismissed the

operative complaint with prejudice on multiple grounds. (*See* ECF Nos. 627, 638.)

Plaintiffs timely appealed, and on July 19, 2021, a panel of the Second Circuit

unanimously affirmed Judge Ramos's dismissal following *de novo* review, concluding that "the

broad conspiracy alleged by plaintiffs is simply not plausible." *Alaska Dep't of Revenue* v.

*Manku*, No. 20-1759-cv, 2021 WL 3027170, at *4 (2d Cir. July 19, 2021). Plaintiffs thereafter

filed a petition for rehearing *en banc*, which was considered by all "active members of the

Court" and denied in an order dated September 2, 2021. *See Alaska Dep't of Revenue* v. *Manku*,

No. 20-1759-cv (2d Cir. Sept. 2, 2021), ECF No. 297.

More than four months later, on January 20, 2022, the Clerk of Court informed the parties

---

[1] "Defendants" are dealer defendants Barclays Bank PLC; Barclays Capital Inc.; Barclays Services Limited; Barclays Capital Securities Limited; BNP Paribas; BNP Paribas Securities Corp.; Citigroup Inc.; Citibank, N.A.; Citigroup Global Markets Inc.; Citigroup Global Markets Limited; Crédit Agricole Corporate & Investment Bank; Credit Suisse AG; Credit Suisse Securities (USA) LLC; Credit Suisse Securities (Europe) Ltd.; Credit Suisse International; Nomura Securities International, Inc.; Nomura International plc; Royal Bank of Canada; RBC Capital Markets, LLC; RBC Europe Limited; The Toronto-Dominion Bank; and TD Securities (USA) LLC, and individual defendants Bhardeep Heer, Gary McDonald and Shailen Pau. In responding to Plaintiffs' motion, Defendants reserve all defenses, including defenses relating to personal jurisdiction. Unless otherwise noted, all internal citations, alterations and quotation marks are omitted.

by letter that a "potential conflict" had been "brought to [Judge Ramos's] attention" arising from his "ownership of stock" in Citigroup and Credit Suisse, two of the more than twenty Defendants in this case, that "neither affected nor impacted [Judge Ramos's] decisions."  (ECF No. 693.) Six weeks after that disclosure, on March 3, Plaintiffs requested that the Clerk reassign this closed case to another district judge who, Plaintiffs argued, should "void the judgments against the non-settling Defendants," despite the Second Circuit's *de novo* review and unanimous affirmance. (ECF No. 694.)  On March 11, this case was reassigned to the Honorable Valerie E. Caproni, who that same day entered a schedule for Plaintiffs' motion to vacate.  (ECF No. 696.)

Plaintiffs now move to vacate Judge Ramos's orders and judgment under Rule 60(b), arguing that the "potential conflict" identified by the Clerk of Court "warrant[ed] mandatory recusal" under 28 U.S.C. § 455.  (Pls.' Mem. 1.)  In setting the briefing schedule on that motion, the Court directed the parties to address "whether the Second Circuit's *de novo* review of the pertinent decisions renders Plaintiffs' motion futile."  (ECF No. 696.)  There can be no serious dispute that the answer to the Court's question is "yes":  the Second Circuit's plenary review on appeal undeniably renders Plaintiffs' motion to vacate "futile"—a conclusion supported by myriad decisions of circuit courts across the country, including the Second Circuit.  *See*, *e.g.*, *Faulkner* v. *Nat'l Geographic Enters., Inc.*, 409 F.3d 26, 42 n.10 (2d Cir. 2005) ("Given our disposition of the Faulkner appellants' claims, Judge Kaplan's denial of the recusal motion was at most harmless error as to them."); *Brock* v. *Zuckerberg*, 2022 WL 1231044, at *4 (2d Cir. Apr. 27, 2022) (denying motion to vacate where the appellate court had already "review[ed] the question whether plaintiff has alleged a legally sufficient claim anew"); *Marcus* v. *Smith*, 755 F. App'x 47, 52 (2d Cir. 2018) ("[O]ur de novo review of the viability of the Second Amended Complaint alleviates any risk that the public's confidence in the judicial process will be

undermined by the alleged conflict."); *Kendall* v. *Daily News Publ'g Co.*, 716 F.3d 82, 97-98 (3d Cir. 2013) ("Plenary review allows us to find harmlessness because any bias which may have infected the district court's decision is fully remedied by our consideration of the motions."); *Patterson* v. *Mobil Oil Corp.*, 335 F.3d 476, 485-86 (5th Cir. 2003) ("Because we review a summary judgment ruling *de novo*, using the same standards as the district court, the parties are guaranteed a fair, impartial review of the merits of the ruling."); *Camacho* v. *Autoridad de Telefonos de P.R.*, 868 F.2d 482, 490 (1st Cir. 1989) ("Since we have independently confirmed the correctness of the lower court's decision," the "judge's refusal to recuse himself was, at worst, harmless error" and the "matter of disqualification is moot").  For this reason, and the reasons stated below, this Court should deny Plaintiffs' motion.

*First*, Plaintiffs fail to show that the "potential conflict" identified by the Clerk required disqualification under 28 U.S.C. § 455.  Plaintiffs do not dispute that Judge Ramos's stock ownership "neither affected nor impacted his decisions."  (ECF No. 693.)  Nor do Plaintiffs dispute that, at the time Judge Ramos presided over this case, he had *no actual knowledge* of any disqualifying stock ownership.  Accordingly, Plaintiffs concede that Judge Ramos did not violate Section 455(b)(4), which obligates a judge to disqualify himself only if he "*knows*" of a disqualifying financial interest.  28 U.S.C. § 455(b)(4) (emphasis added).  Plaintiffs are therefore left to argue that Judge Ramos ran afoul of Section 455(a), which requires disqualification where a judge's "impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  But in the Second Circuit, retroactive disqualification under Section 455(a) requires a showing that (i) "a reasonable person, knowing all the facts, would conclude that the judge had a disqualifying interest in a party under Section 455(b)(4)"; *and* (ii) "such a person would *also* conclude that the

judge *knew* of that interest *and yet heard the case*." *Chase Manhattan Bank* v. *Affiliated FM Ins. Co.*, 343 F.3d 120, 128 (2d Cir. 2003) (emphasis added).  Plaintiffs cannot make that showing.

*Second*, even if Plaintiffs could show some Section 455 violation, Plaintiffs utterly fail to demonstrate that vacatur of the judgment is warranted under Rule 60(b), particularly where, as here, the Second Circuit's *de novo* review of Judge Ramos's decision has rendered any potential failure to recuse "at most harmless error."  *Faulkner*, 409 F.3d at 42 n.10; *see also Kendall*, 716 F.3d at 97-98 (same); *Camacho*, 868 F.2d at 490 (same).  In arguing that vacatur is required, Plaintiffs essentially take the position that a judgment automatically should be vacated under Rule 60(b) whenever Section 455 is violated.  (Pls' Mem. 5-9.)  But the law is not so draconian, as Plaintiffs' own cited authorities make clear.  *See Liljeberg* v. *Health Servs. Acquisition Corp.*, 486 U.S. 847, 862 (1988).

*Third*, having failed to identify any grounds for vacatur under Rule 60(b), Plaintiffs' unorthodox request that this Court somehow turn back the clock to 2019 and give this case "a fresh look" (Pls' Mem. 10) should be rejected as both improper and futile, particularly in light of the Second Circuit's plenary review and affirmance of Judge Ramos's decisions.  Plaintiffs cite no authority whatsoever to support their request for a "fresh look" in the face of an unquestionably impartial—and binding—appellate ruling that Plaintiffs' complaint failed to state a claim and was properly dismissed with prejudice.

## BACKGROUND

Plaintiffs filed this putative antitrust class action on May 18, 2016, and the case was assigned to Judge Ramos the next day.  (ECF No. 1.)  Plaintiffs' complaint alleged a sprawling conspiracy between various banks and their traders to manipulate the prices of *every* secondary-market transaction in SSA Bonds around the globe for years.  (*Id.*)  Following consolidation with other related cases (ECF No. 36), Plaintiffs filed an amended complaint in April 2017.  (ECF

No. 130.)  Defendants moved to dismiss that complaint (ECF No. 228), but rather than defend it, Plaintiffs opted to amend again.  (ECF Nos. 282, 305.)

In November 2017, Plaintiffs filed their third amended complaint containing allegations based on, among other things, chats between a handful of traders, which Plaintiffs received as cooperation from two groups of settling defendants—Bank of America and Deutsche Bank. (ECF No. 306.)  Defendants moved to dismiss that complaint on various grounds, including for failure to state a claim.  (ECF No. 342.)  In August 2018, Judge Ramos granted Defendants' motion under Rule 12(b)(6), concluding that Plaintiffs lacked antitrust standing because they had not plausibly alleged that any manipulation of prices of SSA bonds caused any "harm to *them*." (ECF No. 495, at 16 n.19.)  Judge Ramos, however, granted Plaintiffs leave to replead yet again.

In November 2018, Plaintiffs filed a further amended complaint—their *fourth* attempt to state a cognizable antitrust claim.[2]  (ECF No. 506.)  That complaint, like its predecessors, alleged that Defendants orchestrated a global conspiracy to manipulate each and every transaction in SSA Bonds over a seven-year period through an amorphous, overarching agreement "not to compete."  (*Id.* ¶¶ 32, 374, 561.)  In support of this far-reaching conspiracy claim, Plaintiffs cited sporadic bilateral chats among shifting subsets of traders employed by different dealer defendants, and a series of statistical "analyses" supposedly showing wider bid-ask spreads during the class period.  (*Id.* ¶¶ 362-74, 508-51.)  Defendants again moved to dismiss.

In a pair of decisions issued in September 2019 and March 2020, Judge Ramos granted Defendants' motions to dismiss on multiple grounds, including for lack of personal jurisdiction and improper venue as to certain foreign defendants and for failure to state a claim as to the remaining defendants.  (ECF Nos. 627, 638.)  Plaintiffs appealed, and after oral argument in May

---

[2]  Plaintiffs' amended complaint coincided with an announcement that they reached a settlement agreement with defendant HSBC.  (*See* ECF No. 553.)

2021, the Second Circuit affirmed in a unanimous decision on July 19, 2021. *See Alaska Dep't of Revenue*, 2021 WL 3027170, at \*4. The Second Circuit concluded that Plaintiffs' allegations about an unwieldly conspiracy "involving more than twenty entities in different countries as well as individual traders, conspiring every day, nearly all day, tainting every one of their trades for some seven years" were "simply not plausible." (*Id.*) On August 2, 2021, Plaintiffs filed a petition for panel rehearing and rehearing *en banc*. The Second Circuit denied that petition on September 2, 2021, without requesting opposition briefing. *Alaska Dep't of Revenue*, No. 20-1759-cv, ECF No. 297. Plaintiffs did not file a petition for certiorari to the U.S. Supreme Court.

More than four months later, on January 20, 2022, the Clerk of Court informed the parties of Judge Ramos's "potential conflict." The letter states:

> Judge Ramos informed me that it has been brought to his attention that well after the case was filed but while he still presided over the case, he owned stock in Citigroup, the parent company of Citigroup Global Markets and Citibank, N.A. and Credit Suisse. His ownership of stock neither affected nor impacted his decisions in this case. However, his stock ownership would have required recusal under the Code of Conduct for United States Judges, and thus, Judge Ramos directed that I notify the parties of the potential conflict.

(ECF No. 693.) Six weeks later, on March 3, 2022, Plaintiffs filed a letter requesting that the closed case be assigned to a different district judge, who should, in Plaintiffs' view, "void" the judgment against the non-settling Defendants. (ECF No. 694.)

On March 11, 2022, the case was reassigned to this Court, which entered a briefing schedule for Plaintiffs' anticipated motion to vacate the judgment. (ECF No. 696.) On April 15, 2022, Plaintiffs filed the instant motion. (ECF No. 705.)

## ARGUMENT

## I.   Plaintiffs Fail to Show that Disqualification Was Required Under 28 U.S.C. § 455.

Plaintiffs' motion fails to demonstrate any violation of Section 455 that would require retroactive disqualification. For starters, Plaintiffs do not even try to argue that Judge Ramos

violated Section 455(b)(4), which requires a judge to disqualify himself when he "*knows* that he . . . has a financial interest in the subject matter in controversy or in a party to the proceeding." 28 U.S.C. § 455(b)(4) (emphasis added).  "Section 455(b)(4) embodies an actual knowledge test regarding disqualifying circumstances and provides a bright line as to disqualification based on a known financial interest in a party."  *Chase*, 343 F.3d at 127.  Plaintiffs do not dispute that, at the time Judge Ramos presided over the case, he had no "actual knowledge" of any purported disqualifying financial interest.  And without a showing of actual knowledge, Section 455(b)(4) does not apply.

Nor have Plaintiffs established any violation of Section 455(a), which requires disqualification where a judge's "impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  In the Second Circuit, retroactive disqualification under Section 455(a) is required only if (i) "a reasonable person, knowing all the facts, would conclude that the judge had a disqualifying interest in a party under Section 455(b)(4)," *and* (ii) "such a person would also conclude that the judge *knew of that interest and yet heard the case*."  *Chase*, 343 F.3d at 128 (emphasis added); *accord Liljeberg*, 486 U.S. at 860-61 (where judge "lacks actual knowledge" of the conflict, the test is whether a reasonable person, "knowing all the circumstances, would expect that the judge would have actual knowledge").  Plaintiffs' motion does not even *mention* this test, let alone attempt to satisfy it.[3]  Nor could it have, because the public record shows that Judge Ramos's financial interest was only recently "brought to his attention" (ECF No. 693), nearly *two years* after he issued his decisions dismissing the complaint.  Further, while Plaintiffs emphasize that the "Clerk's letter" identifying a potential conflict "follow[ed] the *Wall Street Journal* expose," Plaintiffs fail to mention that the *Journal*'s "expose" bringing potential judicial

---

[3] Plaintiffs' motion repeatedly cites the Second Circuit's decision in *Chase* (Pls' Mem. 8, 9), but curiously, Plaintiffs fail to address *Chase*'s test for assessing purported violations of Section 455(a).

conflicts to light was first published on September 28, 2021, more than a *year* after Judge Ramos issued his decisions dismissing the complaint, and more than *two months* after the Second Circuit affirmed the dismissal.  (Pls' Mem. 7-8.)  On those facts, Plaintiffs cannot show that a reasonable person, knowing all the facts, would conclude that Judge Ramos "knew of [the stockholding] and yet heard the case."  *Chase*, 343 F.3d at 128.  Thus, Plaintiffs' motion should be denied.

## II.  Even if Disqualification Was Required Under Section 455, Vacatur of the Judgment Is Not Warranted Under Rule 60(b).

Even if Plaintiffs could make out a potential Section 455(a) violation, there are no grounds for vacating the judgment.  Despite Plaintiffs' suggestions to the contrary, a judge's violation of Section 455(a) does *not* automatically result in vacatur of the conflicted judge's decisions.  On the contrary, the Supreme Court has cautioned that "there need not be a draconian remedy for every violation of § 455(a)" because "there is surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance."  *Liljeberg*, 486 U.S. at 862.  Thus, in determining whether to vacate a judgment under Rule 60(b) for failure to recuse, courts consider three factors: "(i) the risk of injustice to the parties in the particular case; (ii) the risk that the denial of relief will produce injustice in other cases, and (iii) the risk of undermining the public's confidence in the judicial process."  *United States* v. *Amico*, 486 F.3d 764, 777 (2d Cir. 2007) (citing *Liljeberg*, 486 U.S. at 863).  None of the *Liljeberg* factors counsels in favor of vacating the judgment.

*No Risk of "Injustice" to the Parties*.  There is no risk of "injustice" to any party given that the Second Circuit has already independently reviewed Judge Ramos's orders of dismissal *de novo* and affirmed in an indisputably independent and unbiased appellate decision.  Plenary appellate review eliminates any potential "risk of injustice" here.  *See*, *e.g.*, *Faulkner*, 409 F.3d at 42 n.10 ("Given our disposition of the Faulkner appellants' claims, Judge Kaplan's denial of the

recusal motion was at most harmless error as to them."); *Marcus*, 755 F. App'x at 52 ("[T]he judgment was appropriately entered on the merits.  Thus, there is no risk of injustice to the parties in this case if relief is denied.").  Consistent with the Second Circuit's ruling this week regarding the same issues, "the first factor weighs heavily against vacatur" because Judge Ramos "dismissed [Plaintiffs'] claims as a matter of law under Rule 12(b)(6)" and the Second Circuit has already "review[ed] the question whether plaintiff[s] ha[ve] alleged a legally sufficient claim anew, without any deference to [Judge Ramos's] assessment."  *Brock*, 2022 WL 1231044, at *4.

In arguing otherwise, Plaintiffs emphasize their disagreement with the decisions dismissing their complaint.  (Pls' Mem. 5.)  But any litigant seeking to vacate a judgment could make such arguments.  And it is well-established that a party's disagreement with a court's decision does not amount to an injustice to the losing party.  *See*, *e.g.*, *Chesher* v. *3M Co.*, 2022 WL 88328, at *2 (D.S.C. Jan. 6, 2022) ("[W]hile Plaintiffs make[] clear that they disagree with Judge Norton's order, disagreement does not constitute 'injustice' under § 455(b)."); *Elgalad* v. *N.Y. City Dep't of Educ.*, 2019 WL 4805669, at *4 (S.D.N.Y. Sept. 30, 2019) ("Mere disagreement with this Court's interpretation and analysis of the facts pled is not an appropriate ground for reconsideration.").

Plaintiffs also argue that the "risk of unfairness" is "high" because Judge Ramos's decisions were "the result of a path the case should never have been taken," and Plaintiffs will never "know for sure whether things would have been different if the ethical rules had been followed."  (Pls' Mem. 5.)  But once again, those are arguments that any litigant could make when a potential conflict comes to light after a decision has been rendered.  And Plaintiffs cite no authority for the novel proposition that a party suffers "injustice" merely because the outcome of a motion could have "been different."  (*Id.*)

***No Risk of "Injustice" in Other Cases***.   There is similarly no risk that denial of the requested relief will produce injustice in other cases.   Plaintiffs suggest that vacating Judge Ramos's decision may encourage other judges to examine more carefully possible grounds for disqualification.   (Pls' Mem. 6.)   The record, however, does not suggest that Judge Ramos ignored warning signs of a conflict and chose to proceed with the case anyway.   *Cf. Chase*, 343 F.3d at 124-26.   Rather, as the *Wall Street Journal* has reported, Judge Ramos's inadvertent failure to identify the potential conflict here was one of dozens of similar incidents across the federal courts,[4] which has led Congress and the federal judiciary to re-evaluate conflict-checking policies and procedures.[5]   Vacating Judge Ramos's decision—and dozens of others like it based on Plaintiffs' proposed automatic-vacatur rule—would only add to the federal judiciary's burdens by requiring each case, irrespective of its procedural posture, to be re-litigated from scratch.   Far from eliminating a risk of injustice in other cases, automatically vacating dozens of judgments without consideration of the harmless error standard would prejudice the reliance interests of parties in cases in which rulings already have been entered and appeals decided. Adopting an automatic-vacatur rule would not only conflict with *Liljeberg*'s harmless error approach but also create a far greater risk of injustice than denying the instant motion.[6]

---

[4] James V. Grimaldi *et al.*, *131 Federal Judges Broke the Law by Hearing Cases Where They Had a Financial Interest*, WALL ST. J. (Sept. 28, 2021), https://www.wsj.com/articles/131-federal-judges-broke-the-law-by-hearing-cases-where-they-had-a-financial-interest-11632834421.

[5] *See* Courthouse Ethics and Transparency Act, S. 3059, 117th Cong. (passed Senate Feb. 17, 2022; passed House Apr. 27, 2022); C.J. John G. Roberts, Jr., 2021 Year-End Report on the Federal Judiciary (2021), at 3-4, https://www.supremecourt.gov/publicinfo/year-end/2021year-endreport.pdf.

[6] Plaintiffs also argue that there is a risk of "injustice" in other cases because litigants have cited Judge Ramos's decisions as persuasive authority.   (Pls' Mem. 7.)   That argument should be rejected out of hand.   There is absolutely no evidence of any actual bias that would have impacted the substance of Judge Ramos's decisions.   On the contrary, Plaintiffs do not dispute that the "potential conflict" "neither affected nor impacted [Judge Ramos's] decisions."   (ECF No. 693.)   In any event, the Second Circuit's ruling *affirming* Judge Ramos's dismissal shows that Judge Ramos's decisions are, in fact, good law.

***No Risk of Undermining Public Confidence****.*  There is also no risk of undermining the public's confidence in the judiciary because the Second Circuit already has conducted an impartial *de novo* review of Judge Ramos's decisions dismissing the case.  In response, Plaintiffs argue that vacatur should be required "[g]iven the widespread news of the *Wall Street Journal* investigation."  (Pls' Mem. 7-8.)  But that argument, if accepted, would require vacatur of the judgments in all of the cases that are the subject of the *Wall Street Journal*'s reporting.  The Supreme Court has counseled against such "draconian remed[ies]."  *Liljeberg*, 486 U.S. at 862.

The Second Circuit's *de novo* review of Judge Ramos's decisions already has "alleviate[d] any risk that the public's confidence in the judicial process will be undermined by the alleged conflict."  *Marcus*, 755 F. App'x at 52.[7]  Indeed, numerous courts, including the Second Circuit, have recognized that, where an appellate court exercises plenary review and independently concludes that a district court's decision was correct as a matter of law, a district judge's failure to recuse himself is "at most harmless error."  *Faulkner*, 409 F.3d at 42 n.10; *Camacho*, 868 F.2d at 490 ("judge's refusal to recuse himself was, at worst, harmless error" where court of appeals "independently confirmed the correctness of the lower court's decision"); *Kendall*, 716 F.3d at 97-98 (failure to recuse was "harmless[]" because "any bias which may have infected the district court's decision is fully remedied by [court of appeals'] consideration of the motions"); *U.S. ex rel. Pritsker* v. *Sodexho, Inc.*, 493 F. App'x 309, 312 (3d Cir. 2012) ("[A]ny purported violation of § 455(a) was harmless because we had affirmed on de novo review Judge Schiller's legal determinations to grant the defendants' motion to dismiss on the merits."); *Smith* v. *Angelo*, 2020 WL 5821720, at *3 (D. Del. Sept. 30, 2020) ("[A]ny purported

---

[7] Plaintiffs' attempt to distinguish *Marcus* on the grounds that the Second Circuit knew a conflict had been alleged (Pls' Mem. 11) is unavailing because nothing in Second Circuit's reasoning suggests that the decision turned on that awareness.  Moreover, such awareness has no relevance to a *de novo* review.

violation of § 455(a) was harmless because the [Third Circuit] affirmed on appeal Judge Sleet's
legal determination to grant Defendants' motion for summary judgment on the merits.").

That line of authority applies with equal force here.  Judge Ramos "performed no
factfinding and exercised no discretion."  *Camacho*, 868 F.2d at 490.[8]  "He determined as a
matter of law that plaintiffs' complaint was insufficient.  [The Second Circuit] review[ed] such
determinations de novo.  Since [the Second Circuit] independently confirmed the correctness of
[Judge Ramos's] decision . . . the judge's [failure] to recuse himself was, at worst, harmless error
[and] the matter of disqualification is moot."  *Id.*  Under those circumstances, there is no basis to
vacate Judge Ramos's decisions.  Indeed, "the public may be more inclined to lose faith in the
system if this court were to mindlessly vacate [Judge Ramos's] rulings."  *Patterson*, 335 F.3d at
486; *see also Parker* v. *Connors Steel Co.*, 855 F.2d 1510, 1526 (11th Cir. 1988) ("It would . . .
be ridiculous to remand this case and reassign it to another judge after we have already exercised
plenary review.").  Where, as here, the Second Circuit's plenary review has already rendered
Judge Ramos's failure to recuse "at most harmless error," there is no risk of undermining the
public's confidence in the judiciary, and vacatur of the judgment should be denied.  *Faulkner*,
409 F.3d at 42 n.10; *Marcus*, 755 F. App'x at 52.

Plaintiffs' cited authorities (Pls' Mem. 8-9) are easily distinguishable.  None of those
cases involved a potential conflict that arose *after* an appellate court's plenary review under Rule
12(b)(6).  And they are distinguishable on their facts.  For example, in *Chase*, after presiding
over a *bench trial* and entering judgment in the plaintiffs' favor, the trial judge disclosed that he
owned stock in Chase Manhattan Bank, which had merged with one of the plaintiffs—Chemical

---

[8] For this reason, Plaintiffs' reliance on *United States* v. *Lindsey*, 556 F.3d 238 (4th Cir. 2009) is misplaced.  (Pls'
Mem. 8-9.)  *Lindsey* involved a motion to reduce a sentence under 18 U.S.C. § 3582(c)(2)—a discretionary decision.
*Id.* at 239, 246-47.  Here, in contrast, Judge Ramos's decisions on the motions to dismiss involved no discretionary
determinations and were subject to plenary review on appeal.  Moreover, in *Lindsey*, all parties *agreed* that the
decision should be vacated, *id.* at 246-47, and thus the court did not even reference the *Liljeberg* factors.

Bank.  343 F.3d at 124.  Despite the judge's statement that he had been unaware of the Chase-Chemical Bank merger, *id.* at 130, the Second Circuit vacated the judgment because of conflicting facts in the record, including motion papers expressly noting the merger and trial testimony about the merger.  *Id.* at 125.  By contrast, the record here is devoid of any suggestion that Judge Ramos knew about any potentially disqualifying stockholding when he was considering Defendants' motion to dismiss.

Plaintiffs' reliance on *Driscoll* and *Shell Oil* is similarly misplaced.  In *Driscoll*, no timely appeal was taken, and the challenged decision was therefore never reviewed *de novo* by an impartial panel of judges.  *Driscoll* v. *Metlife Ins.*, 2021 WL 5323962, at *1 (S.D. Cal. Oct. 19, 2021).  Further, the conflicted judge there (unlike here) failed to disqualify herself "as soon as she discovered the disqualifying conflict."  *Id.  Shell Oil* is distinguishable on similar grounds.  There, the conflicted judge had *actual knowledge* of the conflict, but continued to preside over the case for six months after disclosing the potential conflict to the parties*.  See Shell Oil Co.* v. *United States*, 672 F.3d 1283, 1286-88 (Fed. Cir. 2012).  Here, in contrast, the potential conflict was not brought to Judge Ramos's attention until well *after* the appeal was decided *de novo* and the case was closed.  Accordingly, there are no grounds to vacate the judgment under Rule 60(b).

### III.    Having Failed to Satisfy Any of the *Liljeberg* Factors, Plaintiffs' Request for a "Fresh Look" Is Both Improper and Futile.

Having failed to identify any "injustice" or any meaningful risk that "public confidence" in the judiciary will be "undermin[ed]" such that Rule 60(b) relief is warranted, *Liljeberg*, 486 U.S. at 862, Plaintiffs, in the final pages of their brief, instead invite this Court to simply second guess the Second Circuit's rulings and the judicial process itself.  (Pls' Mem. 11-15.)  Without citing any authority whatsoever, Plaintiffs assert that this Court should turn back the clock to 2019 and ignore past proceedings in this litigation because "no two judges are the same" and

"things . . . could have gone differently under the guidance of a different [district court] judge" or "a different appellate panel." (Pls' Mem. 12.) This is all dangerous nonsense. It would undermine public confidence in the judicial process if this Court were to grant Plaintiffs' motion based on the idea that Plaintiffs are entitled to benefit from some kind of "luck of the draw" (*id.*) amongst judges that might get them a different outcome. *Cf. Parker*, 855 F.2d at 1527 (finding that a conflict was harmless error and that vacatur of a summary judgment decision that was affirmed on appeal after *de novo* review would cause the public to "lose faith in our system of justice"). Indeed, it would be even worse if this Court were to take up Plaintiffs' invitation to apply an unprecedented presumption that any error by Judge Ramos would have tainted the Second Circuit's plenary review of the motion to dismiss, and the Second Circuit's consideration of Plaintiffs' petition for rehearing, such that both decisions are "fruit of the poisonous tree." (Pls' Mem. 1, 12.) "Judicial decisions based on such technical arguments not relevant to the merits contribute to the public's distrust in our system of justice." *Parker*, 855 F.2d at 1527. In any event, there is no need for the "fresh look" that Plaintiffs seek, given that the Second Circuit has already undertaken that exercise by reviewing Judge Ramos's decision *de novo* and concluding that the complaint was properly dismissed with prejudice.

As to the merits of their complaint, Plaintiffs do nothing but rehash arguments from their failed petition for rehearing without regard to the fact that the Second Circuit's denial of Plaintiffs' petition must be "construed as a comprehensive rejection on the merits of every argument presented." *DeWeerth* v. *Baldinger*, 38 F.3d 1266, 1271 (2d Cir. 1994) (citing *Fine* v. *Bellefonte Underwriters Ins. Co.*, 758 F.2d 50, 53 (2d Cir. 1985)). Once again, Plaintiffs insist that their complaint must be strong enough to survive a motion to dismiss because it quotes "chat evidence" and contains statistical studies supposedly based on "1.8 million data points."

(*Compare* Pls' Mem. 13, *with* Pls' Pet. for Reh'g, *Alaska Dep't of Revenue* v. *Manku*, No. 20-1759 (2d Cir. Aug. 2, 2021), ECF No. 291, at 1.)   But, as the Second Circuit previously concluded, these arguments about the sheer quantity of things Plaintiffs jammed into their complaint are irrelevant.   The complaint still fails to state a plausible antitrust claim.

The Second Circuit correctly found that the gravamen of Plaintiffs' allegations—their core theory of liability—was implausible and unsupported by the allegations in the complaint. *Alaska Dep't of Revenue*, 2021 WL 3027170, at *4.   Given the allegedly "decentralized, opaque, and frenetic nature" of the secondary market for SSA Bonds, the Second Circuit found that it was "simply not plausible" that "more than twenty entities in different countries as well as individual traders" managed to somehow function as a "super-desk" and "taint[] every one of their trades for some seven years."   (*Id.*)   Although Plaintiffs boast that their complaint is "one of the strongest [they] have ever filed" (Pls' Mem. 13), Plaintiffs do nothing to explain why this Court should even suspect that the Second Circuit erred when it held that Plaintiffs simply pled themselves out of Court by "cast[ing] a net so wide that the claimed antitrust conspiracy is implausible as alleged." *Alaska Dep't of Revenue*, 2021 WL 3027170, at *4.   Nothing about that conclusion required consideration of any judicial reasoning developed by Judge Ramos.

Ultimately, Plaintiffs should not be permitted to retroactively decision-shop under the guise of honoring "the purposes of the ethical rules."   (Pls' Mem. 12.)   Rewarding such a maneuver would only undermine public confidence in the judicial process and lead to the kinds of problems the *Liljeberg* Court sought to avoid creating when it held there is "surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance."   486 U.S. at 862.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to vacate should be denied.

Dated:  April 29, 2022
New York, New York


/s/ *Carmine D. Boccuzzi Jr.*
Carmine D. Boccuzzi Jr.
CLEARY GOTTLIEB STEEN & HAMILTON
LLP
One Liberty Plaza
New York, NY 10006
Telephone:  (212) 225- 2508
Fax: (212) 225-3999
cboccuzzi@cgsh.com

*Attorneys for Defendant BNP Paribas and BNP
Paribas Securities Corp.*


/s/ *Jay B. Kasner*
Jay B. Kasner
Karen M. Lent
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Fax: (212) 735-2000
jay.kasner@skadden.com
karen.lent@skadden.com

*Attorneys for Defendants Citigroup Inc.,
Citibank N.A., Citigroup Global Markets Inc.,
and Citigroup Global Markets Limited*


/s/ *Lisa J. Fried*
Lisa J. Fried
HERBERT SMITH FREEHILLS NEW YORK
LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (917) 542-7600
Fax: (917) 542-7601
lisa.fried@hsf.com

*Attorneys for Defendant Crédit Agricole
Corporate & Investment Bank*


/s/ *David G. Januszewski*
Herbert S. Washer
David G. Januszewski
Elai Katz
Sheila C. Ramesh
Adam S. Mintz
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY  10005
Telephone: (212) 701-3000
Fax: (212) 269-5420
hwasher@cahill.com
djanuszewski@cahill.com
ekatz@cahill.com
sramesh@cahill.com
amintz@cahill.com

*Attorneys for Defendants Credit Suisse AG,
Credit Suisse Securities (USA) LLC, Credit
Suisse Securities (Europe) Ltd., and Credit
Suisse International*

-16-

/s/ *John D. Buretta*
John D. Buretta
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Fax:  (212) 474-3700
jburetta@cravath.com

*Attorneys for Defendant Nomura
International plc*

/s/ *Aidan Synnott*
Aidan Synnott
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3213
Fax: (212) 492-0213
asynnott@paulweiss.com

*Attorneys for Defendant Nomura Securities
International, Inc.*

/s/ *Barry G. Sher*
Barry G. Sher
Kevin Broughel
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Fax: (212) 230-7716
barrysher@paulhastings.com
kevinbroughel@paulhastings.com

*Attorneys for Defendants Barclays Bank PLC,
Barclays Capital Inc., Barclays Services
Limited, and Barclays Capital Securities
Limited*

/s/ *Alexander J. Willscher*
Alexander J. Willscher
Matthew J. Porpora
Stephen H. O. Clarke
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Fax: (212) 558-3588
willschera@sullcrom.com
porporam@sullcrom.com
clarkest@sullcrom.com

*Attorneys for Defendants Royal Bank of
Canada, RBC Capital Markets, LLC and RBC
Europe Limited*

/s/ *Paul S. Mishkin*
Paul S. Mishkin
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Fax: (212) 701-5800
paul.mishkin@davispolk.com

*Attorneys for Defendants The Toronto-Dominion Bank and TD Securities (USA) LLC*

/s/ *Derek A. Cohen*
Derek A. Cohen
WALDEN MACHT & HARAN LLP
250 Vesey Street, 27th Floor
New York, NY 10281
Telephone: (212) 335-2049
Fax: (212) 335-2040
derek.cohen@wmhlaw.com

*Attorney for Defendant Bhardeep Singh Heer*

/s/ *Adam J. Hunt*
Adam J. Hunt
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Fax: (212) 468-7900
adamhunt@mofo.com

Bradley S. Lui
2100 L Street, NW
Washington, DC  20037
Telephone:  (202) 887-1500
Fax:  (202) 887-0763
blui@mofo.com

*Attorneys for Defendant Gary McDonald*

/s/ *Richard F. Albert*
Richard F. Albert
Christopher B. Harwood
Nicole L. Buseman
MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.
565 Fifth Avenue
New York, NY 10017
Telephone: (212) 856-9600
Fax: (212) 856-9494
ralbert@maglaw.com
charwood@maglaw.com
nbuseman@maglaw.com

*Attorneys for Defendant Shailen Pau*